# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                      :
WENDELL HARP and ARCHITECTS
ENVIRONMENTAL COLLABORATIVE          :
INTERNATIONAL, P.C.,

                                      :
                 Plaintiffs,
                                      :   Civil Action No.:
        vs.                               303CV00977 CFD
                                      :
JOHN DeSTEFANO, CITY OF NEW
HAVEN and NEW HAVEN BOARD OF          :
EDUCATION,
                 Defendants.  :

- - - - - - - - - - - - - - - - x

                Deposition of WENDELL HARP, taken

        pursuant to the Federal Rules of Civil

        Procedure, at the law offices of Brenner,

        Saltzman & Wallman, LLP, 271 Whitney Avenue,

        New Haven, Connecticut, before Dawn DeNardis,

        a Notary Public in and for the State of

        Connecticut, on Friday, May 27, 2005, at

        10:36 a.m.

1          A.    I'd say briefly reviewed some of the

2     documents.

3          Q.    The documents, not some notes?

4          A.    Well, some notes that I had given my

5     attorney.

6          Q.    Some notes that you'd given your attorney.

7                And were those notes that you had prepared to

8     give to your attorney, or were those notes that you had

9     taken in the course of the events that are the subject

10    of your Complaint?

11         A.    Notes that I prepared to give my attorney.

12         Q.    Okay.  And the documents that you reviewed

13    you've brought here today?

14         A.    Yes, I did.

15         Q.    And I will ask you to -- and we will mark the

16    documents that you brought here today.  And when we go

17    through each document, if you can tell me if that's a

18    document you reviewed to prepare for today's

19    deposition.  Can you -- you will do that?

20         A.    Yes.

21                MS. KONE:  Okay.  So, first, I want to

22           mark the Notice of Deposition, the Amended

23           Notice of Deposition.

24                (Amended Notice of Deposition marked

25           Defendants' Exhibit 1 for identification)

8

1      Q.    And that's for your attorney.

2            If you could look at what's been marked as

3      Defendants' 1.  First of all, have you seen this

4      document before, Mr. Harp?

5      A.    No.

6      Q.    You haven't?

7      A.    I don't think I saw the Amended Notice -- I

8      didn't see an Amended Notice of Deposition.

9      Q.    Did you bring the Notice of Deposition with

10     you today?

11     A.    Let's see.

12           MS. ENGSTROM:  Well, I don't think he

13           did, no.  He didn't bring one.

14     A.    That's the attorney's copy.

15     Q.    Okay.  Mr. Harp, when you said you went

16     through a list of documents that I had requested that

17     you bring today, do you have that list with you today?

18     A.    I didn't go through -- I went through a

19     series of documents that I had.  Yes, I brought the

20     documents.

21     Q.    Did you bring the list with you?

22     A.    No.  There was no list.  I went through the

23     series of documents that you had asked for.

24     Q.    And how did you know what documents I'd asked

25     for?

1      A.    Because you had a list of them.

2      Q.    And do you have that list?

3      A.    The list was your list.

4      Q.    Yes, do you have that list?

5      A.    No, it's in your deposition.

6      Q.    Okay.  In order to assemble the documents,

7   you went through a list, there was a list that I had

8   given to you.

9      A.    Right.

10     Q.    And that, where is that list that you went

11  through?

12     A.    It's in the deposition.  It's in your

13  deposition.

14          MS. ENGSTROM:  You mean the Notice?

15     A.    The Notice of Deposition.

16     Q.    And where is that Notice of Deposition?  Do

17  you have that today with you?

18     A.    No, I don't have it with me.  No.

19     Q.    Did you leave it in your office?

20     A.    Yes, I did, the deposition.

21     Q.    The Deposition Notice you left in your

22  office?

23     A.    Right.

24     Q.    And that's what you used to assemble the --

25     A.    Either that or I left it with -- I mean, I

SCRIBES, INC.

1  went over it with the attorney, so I don't know if I

2  took a copy back to my office, if it is still in the

3  office, but it is essentially what was in the

4  deposition.

5      Q.   And it was the Notice of Deposition as

6  opposed to the Amended Notice of Deposition?

7      A.   As far as I know.

8          MS. KONE:   Okay.   What I'll do is

9          either -- I'll just take a break.   I just

10         want to make the Notice of Deposition an

11         exhibit, and I will be right back.

12         (Recess taken from 10:43 a.m. to 10:47

13         a.m.

14         (Notice of Deposition dated April 18,

15         2005 marked Defendants' Exhibit 2 for

16         identification)

17     Q.   Mr. Harp, can I show you what's been marked

18  as Defendants' Exhibit 2.

19         Have you seen that document before?

20     A.   Yes.

21     Q.   And is that the document that you used, the

22  Schedule A on that document, when you compiled the

23  documents to bring here today?

24     A.   Yes, it is.

25     Q.   But you did not use Defendants' Number 1, the

1   Amended Notice of Deposition, when you compiled the

2   documents --

3       A.   That's -- I have not seen this.

4       Q.   -- before?

5       A.   That's correct.

6       Q.   So, to the extent that there are additional

7   items on Defendants' Exhibit 1, Schedule A, that are

8   not on Defendants' 2, those documents haven't been

9   brought here today?

10      A.   That's correct.

11      Q.   Okay.  So, let's go through the document

12  schedule that you have on Defendants' Exhibit 2.  And

13  turning to Page Five of Defendants' Exhibit 2, Item

14  Number One is a certificate of incorporation for AECI

15  and any amendments or modifications thereof.

16          Now, have you brought that today?

17      A.   No, but, you know -- excuse me, you know, my

18  attorney did file a protective order, so I think it

19  lists things that I brought and things that I didn't

20  bring, so if you want to --

21      Q.   Okay.  So you'll tell me on each of these

22  items.

23          Now, the certificate of incorporation for

24  AECI, that's for -- when I say "AECI," I'm referring to

25  the Architects Environmental Collaborative

1    A.    I don't know for a fact, but I believe that

2    they were done, but I don't know for a fact.

3    Q.    And if AECI did have bylaws, would you have

4    possession of them?

5    A.    Yes, I would, if they did.

6    Q.    Does -- Item Number Three is the minute book

7    for AECI.  Did you bring that here today?

8    A.    No, I didn't.

9    Q.    And does AECI have a minute book?

10    A.    I -- I don't know.  I think that there might

11    be -- I think there might be annual, like, consent of

12    shareholders or something.  But I'm not sure if that's

13    the same as a minute book.

14    Q.    Do you know what the contents of the AECI

15    minute book would be, if it had a minute book?

16    A.    If so, it would be covered by a protective

17    order.

18    Q.    Well, there's been no protective order

19    entered at the moment.  I know this is the subject of

20    your protective order, but -- and the production is

21    what's the subject, but I'm just trying to figure out

22    what the contents of the AECI minute book is.

23    And let me ask my question a little bit

24    differently.  It is my understanding that you do not

25    know if AECI has a minute book; is that correct?

1      A.    That's correct.

2      Q.    Okay.  And so therefore, you do not know what

3    the contents of that minute book would be; is that

4    correct?

5      A.    That's also correct.

6      Q.    Number Four, "All minutes of AECI Board of

7    Directors Meetings at which the New Haven Prince-Welch

8    School was mentioned or discussed."

9           Did you bring any documents responsive to

10   that request today?

11     A.    None exist, to my knowledge.  I don't believe

12   so.

13     Q.    Does AECI have directors?

14     A.    It has myself.

15     Q.    You're the sole director?

16     A.    Yes.

17     Q.    And does AECI director -- do you have

18   meetings, board of director meetings?

19     A.    Do I have meetings?

20     Q.    In the capacity as a director.

21     A.    If there are requirements for performing

22   certain annual corporate filings, then yes, that would

23   be the case.  For instance, filing for an annual

24   report, or maybe biannual, would be done by me as a

25   director.

1    included within here.

2        Q.    Okay.  So it's all with -- the documents

3    requested in Item 8-B are contained in Defendants'

4    Exhibit 6 that you have?

5        A.    Yes.

6        Q.    And I'm referring to 8-B of Defendants' 2.

7            Okay.  Turning to 8-C of Defendants' 2, have

8    you brought those documents today?

9        A.    Yes, I have.

10       Q.    And where are those documents?

11       A.    They'd be reflected right here, under the tab

12   that says "Minutes."

13       Q.    And you're referring to the tab that says

14   "Minutes" as part of Defendants' Exhibit 6?

15       A.    That's correct.

16       Q.    And 8-D, did you bring any newspaper or

17   magazine articles and/or editorials concerning the New

18   Prince-Welch School?

19       A.    Those that I have, which are identified as

20   8-D.

21       Q.    And we will mark -- by that, you mean there's

22   an orange Post-It on one, two, three -- six pages with

23   an orange Post-It on it, is that 8-D?

24       A.    Yes.

25            MS. KONE:  And that will become

1    Defendants' 3 and Defendants' 7 --

2    A.    Yes.

3    Q.    -- is that correct?

4    A.    It's correct.

5    Q.    Okay.  Eight-E, which is "All drawings,

6    reports, presentation boards and studies, including

7    drafts of such documents of the New Prince-Welch

8    School, including without limitation Educational

9    Specification Studies, Site Options Analyses, Building

10   Programs preliminary schematic designs, schematic

11   designs, design documents and construction documents."

12        Now, my understanding is that you have not

13   brought those today, but they are available for my

14   review in your office, and copying at my expense; is

15   that correct?

16   A.    That's correct.

17   Q.    And I will make an appointment through your

18   counsel, between this deposition and our continued

19   session, to look at those.

20   A.    Okay.

21   Q.    F --

22   A.    The Board of Education does have copies.

23   Q.    And they also have copies.  Okay.

24        Exhibit 8-F, which is, "All contracts" -- I

25   mean Item 8-F on Defendants' Exhibit 2, "All contracts

1    with consultants retained by AECI for the New

2    Prince-Welch School, and all correspondence or

3    documents relating to communications with such

4    consultants."

5         Have you brought any of those documents?

6      A.    Yes, I have.

7      Q.    And are they contained within one of the

8    exhibits that you've already given me?

9      A.    Yes, it's marked "Consultant Contracts,"

10   under Exhibit --

11     Q.    So it's Exhibit 6, right?

12          MS. WEISSELBERG:    We have Six here.

13     Q.    And there's a tab that indicates "Consultant

14   Contracts --"

15     A.    Yes.

16     Q.    -- is that correct.

17          And those documents are responsive to Item

18   8-F of Defendants' 2; is that correct?

19     A.    That's correct.

20     Q.    Okay, G, "All staffing plans of AECI for the

21   New Prince-Welch School."  Did you bring any documents

22   responsive to that request today?

23     A.    They would be identified in there also in --

24   they would be identified in Exhibit 6 also, under "Our

25   Contract," you know, the contract that lists personnel.

1    Defendants' 4, that would show the staffing of AECI for

2    the Prince-Welch School project for the whole period

3    that you were involved in the project?

4        A.    Nothing, other than what's in there.

5        Q.    That page you showed me?

6        A.    That's correct.  That's essentially what we

7    used to administer, to design the school.  That's our

8    staffing.

9        Q.    That's your staffing?

10       A.    Correct.

11       Q.    With respect to Exhibit H -- I'm sorry, with

12   respect to Item 8-H on Exhibit 2, which is "All

13   appointment books, calendars, Palm Pilot entries,

14   concerning any meetings and/or telephone calls

15   concerning the New Prince-Welch School project," did

16   you bring any of those documents today with you?  Oh, I

17   -- you did?

18       A.    No.  Whatever appointments there are were

19   reflected in the minutes and there would either be a

20   notice from Mr. Watt to myself, or some representation

21   from SBBAC, stating when meetings would occur.

22       Q.    And that would be in Exhibit 6; is that

23   correct?

24       A.    That would be in Exhibit 6, that's correct.

25   Okay.

 1        Q.    And those would be all the documents you
 2   would have that would be responsive to 8-H?
 3        A.    That's correct.  I don't have a Palm Pilot.
 4        Q.    And the appointment books or calendars?
 5        A.    Again, they would be reflected within that.
 6   I mean, typically --
 7        Q.    Within Six?
 8        A.    Within Six, yes.
 9        Q.    I'm sorry, I cut you off.
10        A.    If there's a telephone communication, then we
11   would -- Claude or I would typically record a
12   conversation, and then just fax one another back for
13   clarification of it or confirmation of it.
14        Q.    And that would be in Defendants' Exhibit 6?
15        A.    That's correct.
16        Q.    Okay.  And Item Number Nine on Defendants' 2,
17   'All documents concerning any real or personal property
18   taxes owed by Plaintiff or any entity affiliated with
19   Plaintiff,' and I won't continue reading that item.
20             Did you bring any documents responsive to
21   that item?
22        A.    No, I didn't.
23        Q.    And that -- that's also mentioned in your
24   Motion for Protective Order?
25        A.    Yes.

1    yet.

2        Q.    What positions would they have held, you

3    know --

4        A.    They would have both been architects.

5        Q.    And would they have also devoted 20 to 25

6    percent of their time?

7        A.    No.  Their time would be much more intense.

8    It would be -- one certainly would be full time.

9    Probably both would be full time, you know.

10       Q.    So the only period of time that I'm just not

11    sure was the working drawings, just trying to figure

12    out during that five-month period approximately how

13    much time you personally might have spent doing that.

14       A.    Well, I thought I told you about 25 percent.

15            MS. KONE:  Okay.  We should eat, right?

16            Take a break and eat.  Everyone's sort of

17            fading.

18            (Recess taken from 1:17 p.m. to 1:54

19            p.m.)

20       Q.    Mr. Harp, what kinds of financial reports

21    since 1997 has AEIC generated?

22       A.    What do you mean?

23       Q.    Do you -- do they do general ledger, do you

24    do cash flow statements?

25       A.    We just do our tax returns, no.

1    Q.    And do you have any way of telling or

2    segregating by project, AECI, what the income and

3    expenses are for a particular project?

4    A.    I mean, we can do it by simply going through

5    and segregating out costs, to the extent that the

6    records exist for that period of time.

7    Q.    Have you ever done it for the Prince-Welch

8    School, segregated out the costs --

9    A.    No.

10    Q.    -- and compared it to the income?

11    A.    No.

12    Q.    And where are the records of the costs kept,

13    how do you keep those records?

14    A.    We really don't keep them like that.  I mean,

15    typically, we just do our tax statements, so we don't

16    segregate out the cost by project, per se.

17    Q.    So the tax statement would show the overall

18    costs for the AECI firm for a particular year?

19    A.    Right.  That's -- just shows income and

20    expenses.

21    Q.    Do you have any idea on the work that you did

22    do on the Prince-Welch School what your profit was on

23    that work?

24    A.    Not off the top of my head.

25    Q.    Could you figure that out?

SCRIBES, INC.

C E R T I F I C A T E

       I hereby certify that I am a Notary Public, in and for the State of Connecticut, duly commissioned and qualified to administer oaths.

       I further certify that the deponent named in the forgoing deposition was by me duly sworn, and thereupon testified as appears in the forgoing deposition; that said deposition was taken by me stenographically in the presence of counsel and reduced to typewriting under my direction, and the forgoing is true and accurate transcript of the testimony.

       I further certify that I am neither of counsel nor attorney to either of the parties to said suit, nor am I an employee of either party to said suit, nor of either counsel in said suit, nor am I interested in the outcome of said cause.

       Witness my hand and seal as Notary Public this _____ day of _____, 2005.

Dawn DeNardis
Notary Public

My Commission expires:
July 31, 2006
License #00075

# EXHIBIT E

# Brenner, Saltzman & Wallman LLP

*ATTORNEYS AT LAW*

NEWTON D. BRENNER, P.C.
STEPHEN L. SALTZMAN, P.C.
MARC A. WALLMAN, P.C.
DAVID R. SCHAEFER, P.C.
DONALD W. ANDERSON, P.C.
SAMUEL M. HURWITZ, P.C.
WAYNE A. MARTINO, P.C.
JOHN R. BASHAW
MITCHELL S. JAFFE, P.C.
ALICE J. MICK, P.C.
KENNETH ROSENTHAL
CAROLYN W. KONE
BRIAN P. DANIELS
GEORGE BRENCHER IV, P.C.
JENNIFER DOWD DEAKIN, P.C.

DANIEL L. GOTTFRIED
VICTORIA P. HACKETT
ROWENA A. MOFFETT

OF COUNSEL:
SHARON KOWAL FREILICH

Carolyn W. Kone
ckone@bswlaw.com
Fax:  203.772.4008

June 2, 2005

John R. Williams, Esq.
Law Offices of John Williams & Associates
51 Elm St., Ste. 409
New Haven, CT  06510

Re:    <u>Harp, et al. v. John DeStefano, et al.</u>

Dear John:

Enclosed please find a Notice of Continued Deposition. Please note that items 19 through 29 on Schedule A were not produced by Mr. Harp at his prior deposition because according to Mr. Harp, he never saw such requests. Such requests were included on Defendants' Amended Notice of Deposition dated April 22, 2005. Also, it took a great deal of time at the deposition for Mr. Harp to identify which documents were being produced in response to particular items. Because your office is insisting that we stay within the time limits for depositions under the federal rules, I again request that I be provided with the documents in advance of the deposition, so that the deposition time can be used as efficiently as possible.

Thank you.

Very truly yours,

*Cawp*

Carolyn W. Kone

CWK:jmc
Enclosure
cc:  Susan Weisselberg

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

WENDELL HARP and
ARCHITECTS ENVIRONMENTAL
COLLABORATIVE INTERNATIONAL, P.C.,     :

      Plaintiffs,                :       CASE NO: 3:03CV977(CFD)

      v.                      :

JOHN DeSTEFANO,
CITY OF NEW HAVEN and
NEW HAVEN BOARD OF EDUCATION     :

      Defendants.          :       June 2, 2005

## NOTICE OF CONTINUED DEPOSITION

Please take notice that pursuant to Rule 30(b) of the Federal Rules of Civil Procedure,

Defendants will continue the deposition upon oral examination and before proper authority on

June 21, 2005 beginning at 10:00 a.m. of Plaintiff Wendell Harp, individually and as

representative of Architects Environmental Collaborative International, P.C., at the offices of

Brenner, Saltzman LLP, 271 Whitney Avenue, New Haven, CT 06511. Said deponent is to

produce at the deposition for inspection, copying and other reproduction the documents listed in

Schedule A attached hereto and incorporated herein by reference.

Testimony in the deposition will continue, if necessary, from day to day until completed.

DEFENDANTS,
JOHN DeSTEFANO, CITY OF NEW
HAVEN and NEW HAVEN BOARD OF
EDUCATION

By: _____

Carolyn W. Kone (ct 06207)
BRENNER, SALTZMAN & WALLMAN LLP
Their Attorneys
271 Whitney Avenue
New Haven, CT  06511
Tel. (203) 772-2600
Fax (203) 772-4008
Email:  ckone@bswlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the original of the foregoing was served this 2nd day of June, 2005,

by U.S. first class mail, postage prepaid, upon:


John R. Williams
Law Offices of John Williams & Associates
51 Elm St., Ste. 409
New Haven, CT  06510


and that a true and accurate copy of the foregoing was served this 2nd day of June, 2005, by U.S.

first class mail, postage prepaid, upon:


Martin S. Echter
Office of Corporation Counsel
City of New Haven
165 Church St.
New Haven, CT  06510

Rodger W. Lehr
Deputy Corporation Counsel
City of New Haven
165 Church Street
New Haven, CT  06510

Carolyn W. Kone, Esq. (ct06207)

## SCHEDULE A

DEFINITIONS

1.      All terms shall be defined and construed as set forth in Local Rules 26(c) and 26(d) of the United States District Court, District of Connecticut, which read, in pertinent part:

(c)  The following definitions apply to all discovery requests:

(1)      *Communication.*  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(2)      *Document.*  The term "document" is defined to be synonymous in meaning and equal in scope to usage of this term in Federal Rule of Civil Procedure 34(a).  A draft or non-identical copy is a separate document within the meaning of this term.

(5).      For purposes of Local Rule 26(c)(5), the term Architects Environmental Collaborative International, P.C. or AECI means Architects Environmental Collaborative International, P.C., its officers, directors, employees, corporate parent, subsidiaries or affiliates.

(6)      *Person.*  The term "person" is defined as any natural person or any business, legal or governmental entity or association.

(7)      *Concerning.*  The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(d)  The following rules of construction apply to all discovery requests:

(1)      *All/Each.*  The terms "all" and "each" shall both be construed as all and each.

(2)      *And/Or.*  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

(3)      *Number.*  The use of the singular form of any word includes the plural and vice versa.

2.      The term "New Prince-Welch School" refers to the project for the design of the new Prince-Welch School referred to in paragraph 7 of the Plaintiffs' Complaint.

DOCUMENTS REQUESTED

1.    The certificate of incorporation for AECI and any amendments or modifications thereof.

2.    The bylaws for AECI and any amendments or modifications thereof.

3.    The minute book for AECI.

4.    All minutes of AECI Board of Directors Meetings at which the New Prince-Welch School was mentioned or discussed.

5.    All documents concerning plaintiff Wendell Harp's public announcement of his support for the candidacy of Sherri Killins for Mayor of New Haven as alleged in paragraph 9 of Plaintiffs' Complaint, including without limitation published statements, newspaper articles, press releases, letters to the editor, audiotapes, videotapes, and any notes concerning such announcement.

6.    All contracts between AECI and the New Haven Board of Education for the design of the New Prince-Welch School and all amendments and modifications to such contracts.

7.    All documents concerning the agreement between Plaintiffs and Defendants alleged in paragraph 8 of Plaintiffs' Complaint under which according to Plaintiffs, Defendants agreed that Plaintiffs would continue to perform extensive services pursuant to the contract between AECI and the New Haven Board of Education for the design of the New Prince-Welch School, which services would address proposals by the Defendants to change their original specifications for the school, including without limitation emails and notes regarding any telephone calls or meetings regarding such alleged agreement.

8.    All documents concerning the New Prince-Welch School in Plaintiffs' custody or control, including without limitation:

a.    all documents, including e-mails, notes of meetings or telephone calls, minutes of meetings, letters concerning any communication between (i) either or both Plaintiffs and (ii) any of the Defendants;

b.    all documents, including e-mails, notes of meetings or telephone calls, minutes of meetings, letters concerning any communication between (i) either or both Plaintiffs and (ii) any of the following:

1.    the New Haven Public School District
2.    Any agent of any of the Defendants
3.    the City Wide School Building Committee
4.    the School Based Building Advisory Committee for the New Prince-Welch School
5.    the principal of the Welch School
6.    any teacher at the Welch School
7.    the principal of the Prince School

8.    any teacher at the Prince School
9.    Gilbane Building Co. and/or its employees
10.   Giordano Construction Co. and/or its employees
11.   Abidas Rodriquez
12.   Robin Bona
13.   Claude Watts
14.   Susan Weisselberg
15.   Thayer Baldwin
16.   Thomas Ude
17.   Dr. Reginald Mayo
18.   Samuel Foster
19.   Vivian Baker
20.   Robert Lynn
21.   Paul Guidone
22.   Thomas Roger
23.   Parshuran Joglekar
24.   Donna Chance Dowdie
25.   William Versace
26.   Dr. Edia Reyes
27.   Gina Wells
28.   Dr. Charles Warner
29.   Susan Whetstone
30.   Leida Pacini
31.   John Prokop
32.   David Alvardo
33.   Ram Joglekar
34.   Ron Markiewicz
35.   Ann-Marie DeGraffenreidt
36.   New Haven Preservation Trust
37.   City of New Haven Historic District Commission

c.    any emails, minutes or notes regarding meetings or telephone conversations concerning the New Prince-Welch School;

d.    any newspaper or magazine articles and/or editorials concerning the New Prince-Welch School;

e.    all drawings, reports, presentation boards, and studies, including drafts of such documents, of the New Prince-Welch School, including without limitation Educational Specification Studies, Site Options Analyses, Building Programs preliminary schematic designs, schematic designs, design documents, and construction documents;

f.    all contracts with consultants retained by AECI for the New Prince-Welch School and all correspondence or documents relating to communications with such consultants;

g.    all staffing plans of AECI for the New Prince-Welch School project;



h.      all appointment books, calendars, and Palm Pilot entries concerning any meetings and/or telephone calls concerning the New Prince-Welch School Project.

9.      All documents concerning any real or personal property taxes owed by either Plaintiff or any entity affiliated with either or both Plaintiffs or owned or controlled by Plaintiff Wendell Harp to Defendant City of New Haven during the period 1997-2003, including without limitation taxes assessed with respect to any properties located on Lake Place, Dixwell Avenue, Whalley Avenue and/or Conrad Drive, any repayment agreement(s) with the City of New Haven and any default(s) under such payment agreement.

10.      All documents concerning any litigation, other than the above captioned matter and other than materials protected by the attorney-client privilege or the attorney work product privilege, brought against any of the Defendants by either or both Plaintiffs, any affiliate or parent of AECI or any entity controlled or owned by Plaintiff Wendell Harp.

11.      All documents provided to either Plaintiff from the Defendant New Haven Board of Education or the New Haven Board of Education School Construction Project regarding the design process and/or requirements for the building and/or renovation of New Haven public schools.

12.      All documents regarding any hearings held by the Select Committee on Housing of the Connecticut Legislature on April 1, 2003.

13.      All documents that support Plaintiffs' claim in paragraph 11 of their Complaint that they are suffering and in the future will suffer substantial economic loss.

14.      All documents that support Plaintiffs' claims for compensatory and/or punitive damages and/or attorneys' fees.

15.      AECI's tax returns for the years 1997 – present and all documents that were used in the preparation of such tax returns.

16.      Wendell Harp's tax returns for the years 1997 – present and all documents that were used in the preparation of such tax returns.

17.      All reports of experts retained by Plaintiffs in connection with the above-captioned action.

18.      All statements given by any witness to the events alleged in Plaintiff's complaint.

19.      All contracts for architectural services for any New Haven School entered into by either Plaintiff.

20.      All contracts for architectural services for any school entered into by either Plaintiff from February 1997 – present.

21.    All records of costs incurred by either Plaintiff with respect to the provision of architectural services for the New Prince-Welch School, including without limitation invoices from subcontractors and time sheets of employees who provided services for such school.

22.    All documents that show any profit earned by AECI with respect to architectural services provided for the New Prince-Welch School.

23.    All records that show costs incurred by either Plaintiff for each New Haven public school for which either Plaintiff provided architectural services, including without limitation invoices from subcontractors and time sheets of employees who provided services for such school.

24.    All records that show income received by either Plaintiff in connection with any New Haven public school for which either Plaintiff provided architectural services.

25.    All records that show profits earned by either Plaintiff in connection with each New Haven public school for which either Plaintiff provided architectural services.

26.    All records that show costs incurred by either Plaintiff for each school for which either Plaintiff provided architectural services since January 1, 1997, including without limitation invoices from subcontractors and time sheets of employees who worked on each school.

27.    All records that show income received by either Plaintiff in connection with each school for which either Plaintiff provided architectural services since January 1, 1997.

28.    All records that show profits earned by either Plaintiff in connection with each school for which either Plaintiff provided architectural services since January 1, 1997.

29.    All budgets and financial statements of AECI, including without limitation Balance Sheets, Cash Flow Statements and Income Statements for the years 1997-present.

**EXHIBIT F**

■ B r e n n e r,  S a l t z m a n  &  W a l l m a n  LLP

*ATTORNEYS AT LAW*

NEWTON D. BRENNER, P.C.
STEPHEN L. SALTZMAN, P.C.
MARC A. WALLMAN, P.C.
DAVID R. SCHAEFER, P.C.
DONALD W. ANDERSON, P.C.
SAMUEL M. HURWITZ, P.C.
WAYNE A. MARTINO, P.C.
JOHN R. BASHAW
MITCHELL S. JAFFE, P.C.
ALICE J. MICK, P.C.
KENNETH ROSENTHAL
CAROLYN W. KONE
BRIAN P. DANIELS
GEORGE BRENCHER IV, P.C.
JENNIFER DOWD DEAKIN, P.C.

DANIEL L. GOTTFRIED
VICTORIA P. HACKETT
ROWENA A. MOFFETT

OF COUNSEL:
SHARON KOWAL FREILICH

Carolyn W. Kone
ckone@bswlaw.com
Direct Fax: (203) 772-4008

June 24, 2005

*VIA EMAIL: KEngstrom@johnrwilliams.com*

Kit Engstrom
Law Offices of John Williams & Associates
51 Elm St., Ste. 409
New Haven, CT  06510

Re:   Harp v. DeStefano

Dear Kit:

The following confirms our recent agreements in connection with the above referenced matter.

1.   The continued deposition of Wendell Harp will take place on July 14, 2005, beginning at 10:00 a.m. at my office.  Attached is the Notice of Continued Deposition.

2.   You agreed to provide me with the documents responsive to Document Requests 19-29 set forth in the Amended Notice of Deposition dated April 22, 2005 in advance of Mr. Harp's continued deposition.  Please let me know when you will be providing these documents.

3.   With respect to Document Request 8(e), requesting, *inter alia*, all drawings and studies of the New Prince-Welch School, Attorney Williams wrote to me that these documents are available for review at Mr. Harp's office.  However, there are two sets of documents about which Mr. Harp testified during his initial deposition that I wish to review with him at his continued deposition—drawings that incorporated the use of brick for the school (Dep. at 110-115) and the site studies that the Mayor directed that Mr. Harp perform (Dep. at 117-118).  Please produce these documents to me with the other documents that you will be providing in advance of Mr. Harp's continued deposition.  Also, please provide me with dates upon which I may visit Mr. Harp's office during July to review the rest of the responsive documents.

4.   You agreed during Mr. Harp's deposition to prepare a list of Mr. Harp's staff for each of the years since 1997.  See Harp. Dep. at 75.  Please provide this information with the other documents that you will be producing in advance of Mr. Harp's continued deposition.

5.   John Williams initially agreed to extend the discovery deadline in this matter to November 1, 2005.  This extension is necessary to provide sufficient time to complete fact and expert discovery.  Attached is a draft Motion on Consent to Amend

Kit Engstrom
June 24, 2005
Page Two

        Scheduling Deadlines. Please advise as soon as possible whether Plaintiffs consent to the granting of this motion. As you know, the current discovery deadline is July 1st, so I would like to file this motion as soon as possible.

6.      Mr. Watt's deposition will go forward on July 19, 2005. I am still working on scheduling the depositions of the Mayor and Dr. Mayo during the dates you provided.

        Please let me know when you will be providing the documents referenced above. I would appreciate receiving them by no later than Monday, July 11th, so that I have enough time to review the documents and so that the deposition will proceed more expeditiously.

        Additionally, please let me know when you will be providing the documents that were the subject of your Motion for Protective Order. Pursuant to Local Rule 37, they would be due within 10 days of the Court's order denying your Motion, or by July 5, 2005.

        Sincerely,

*Carolyn W. Kone/pam*

Carolyn W. Kone

CWK:jmc

# EXHIBIT G

**Kone, Carolyn**

| | |
|---|---|
| **From:** | John R. Williams [jrw@johnrwilliams.com] |
| **Sent:** | Wednesday, May 25, 2005 8:19 PM |
| **To:** | Kone, Carolyn |
| **Subject:** | Re: Wendell Harp' s deposition |

Motion for
'rotective Order.pd..

            I will check with Wendell tomorrow if I can about dates.   Don't understand
how I could have screwed up the attachment, but here's another try.
----- Original Message -----
From: "Kone, Carolyn" <ckone@BSWLAW.com>
To: "'John R. Williams'" <jrw@johnrwilliams.com>
Sent: Wednesday, May 25, 2005 7:26 PM
Subject: RE: Wendell Harp' s deposition


> John - attached were two copies of a letter from you to me and no motion
> for
> protective order. Could you please resend the motion for protective order.
> Also let me know about the continued date for the deposition. Thank you.
> Carolyn
>
> -----Original Message-----
> From: John R. Williams [mailto:jrw@johnrwilliams.com]
> Sent: Wednesday, May 25, 2005 6:58 PM
> To: Kone, Carolyn
> Cc: Rodger Lehr
> Subject: Re: Wendell Harp' s deposition
>
>
> Please see attached.
> ----- Original Message -----
> From: "Kone, Carolyn" <ckone@BSWLAW.com>
> To: "'John R. Williams'" <jrw@johnrwilliams.com>
> Sent: Wednesday, May 25, 2005 5:49 PM
> Subject: RE: Wendell Harp' s deposition
>
>
>> John - Thank you for being accommodating about Memorial Day. Before I
>> call
>> the court reporter off, can you please give me the date that you and
>> Wendell
>> are available in June, and I will renotice the deposition for then. With
>> respect to the documents, I am not sure that I have all of them and don't
>> want any surprises. Please have Wendell produce the documents requested
>> even
>> if he thinks that I might have them. Also, I need the tax returns because
>> they are relevant to the issue of damages. I will certainly agree to a
>> reasonable protective order. Carolyn
>>
>> -----Original Message-----
>> From: John R. Williams [mailto:jrw@johnrwilliams.com]
>> Sent: Wednesday, May 25, 2005 2:21 PM
>> To: Kone, Carolyn
>> Subject: Re: Wendell Harp' s deposition
>>
>>
>> I spoke to Wendell about the documents.  He says you have almost all of
>> them.  There a few, like tax returns, that we will not produce

1

```
>> voluntarily.
>> ----- Original Message -----
>> From: "Kone, Carolyn" <ckone@BSWLAW.com>
>> To: "'John R. Williams'" <jrw@johnrwilliams.com>
>> Sent: Tuesday, May 24, 2005 12:01 PM
>> Subject: RE: Wendell Harp' s deposition
>>
>>
>>>I don't know if I can get a court reporter for Monday. I will check. What
>>> about the documents? Carolyn
>>>
>>> -----Original Message-----
>>> From: John R. Williams [mailto:jrw@johnrwilliams.com]
>>> Sent: Monday, May 23, 2005 5:42 PM
>>> To: Kone, Carolyn
>>> Subject: Re: Wendell Harp' s deposition
>>>
>>>
>>> You told me you were scheduling the deposition for Friday and MONDAY.
>>> We
>>> are not available on Tuesday, which is the first court day of the week.
>>> We
>>> WILL be available Monday if you don't finish on Friday.
>>> ----- Original Message -----
>>> From: "Kone, Carolyn" <ckone@BSWLAW.com>
>>> To: "John R. Williams (E-mail)" <jrw@johnrwilliams.com>
>>> Sent: Monday, May 23, 2005 3:14 PM
>>> Subject: Wendell Harp' s deposition
>>>
>>>
>>>>I am just writing to confirm that Wendell Harp's deposition will go
>>>>forward
>>>> this Friday, May 27th and Tuesday, May 31st as noticed. Also, it would
>>>> probably make the deposition go a lot faster if I could look at the
>>>> materials requested in his notice of deposition before Friday. Please
>>>> let
>>>> me
>>>> know. Thank you. Carolyn
>>>>
>>>> Carolyn Kone
>>>>
>>>> Brenner,Saltzman & Wallman LLP
>>>> 271 Whitney Ave.
>>>> New Haven, Connecticut 06511
>>>>
>>>>
>>>> Email....: CKone@BSWLAW.Com
>>>> Telephone: (203)772-2600
>>>> Facsimile: (203)562-2098
>>>>
>>>>
>>>> The information contained in this communication may be confidential, is
>>>> intended only for the use of the recipient named above, and may be
>>>> legally
>>>> privileged.  If you are not the intended recipient, you are hereby
>>>> notified
>>>> that any dissemination, distribution, or copying of this communication,
>>>> or
>>>> any of its contents, is strictly prohibited.  Nothing in this
>>>> communication
>>>> is intended to constitute a waiver of any privilege or the
>>>> confidentiality
>>>> of this message.  If you have received this communication in error,
>>>> please
>>>> notify the sender immediately by return e-mail or telephone and delete
>>>> the
>>>> original message and any copy of it from your computer system.
```

```
>>>> Thank you.
>>>>
>>>>
>>>>
>>>
>>
>
```

# EXHIBIT H

*AIA Document B141/CMa*

# Standard Form of Agreement Between Owner and Architect

*Where the Construction Manager is NOT a Constructor*

(A00-0481)

### 1992 CONSTRUCTION MANAGER-ADVISER EDITION

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES: CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION.*

*This document is intended to be used in conjunction with the 1992 editions of AIA Documents B801/CMa, A101/CMa and A201/CMa.*

## AGREEMENT

made as of the          27th          day of  *March*          in the year of  2000
*(In words, indicate day, month and year)*

(THIS AGREEMENT SUPERCEDES AND REPLACES AGREEMENT DATED FEBRUARY 10, 1997)

**BETWEEN** the Owner:  NEW HAVEN SCHOOL DISTRICT
*(Name and address)*          54 Meadow Street
New Haven, Connecticut 06519

and the Architect:  ARCHITECTURAL ENVIRONMENTAL COLLABORATIVE INTERNATIONAL, P.C.
*(Name and address)*          300 Whalley Avenue
New Haven, Connecticut  06511

for the following Project:
*(Include detailed description of Project, location, address and scope.)*

PRINCE / WELCH SCHOOL PROJECT — See Exhibit 'D'
Attached hereto and made a part thereof...

The Construction Manager is:
*(Name and address)*
(To Be Determined)

**FILE COPY**

The Owner and Architect agree as set forth below.

Copyright 1975, 1980, ©1992 by The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C. 20006-5292. Reproduction of the material herein or substantial quotation of its provisions without the written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.



**AIA DOCUMENT B141/CMa** • OWNER-ARCHITECT AGREEMENT • CONSTRUCTION MANAGER-ADVISER EDITION • 1992 EDITION • AIA® • ©1992 THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292 • **WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.**

**B141/CMa-1992   1**

hereof for the stipulated sum **Listed In Exhibit 'I'**. Payment for such drawings shall be made by the Owner within thirty (30) days of completion and delivery of such drawings to the Owner and the Owner's approval of same which shall not be unreasonably withheld."

44.    Article 3, Subparagraph 3.4.23: The following new Subparagraph 3.4.23 shall be added immediately after Subparagraph 3.4.22:

"The education specification as prepared by Architect for Prince Welch School project under the Agreement between the Owner and the Architect dated February 10, 1997, shall be incorporated as part of this revised Agreement for the new Prince Welch School Pre-K through 8th grade project. No additional compensation shall be due the Architect for referenced educational specification."

45.    Article 3, Subparagraph 3.4.23.1: The following new Subparagraph 3.4.23.1 shall be added immediately after Subparagraph 3.4.23:

"The Architect shall amend the educational specification referenced in Subparagraph 3.4.23 for the project to include a new building program that will satisfy the requirements of Exhibit 'A' attached hereto and made a part of hereto for stipulated sum **Listed In Exhibit 'I'**. At the conclusion of Schematic Design and Design Development, Architect shall provide a reconciliation of the status of the design with the amended program requirements. Modification of the program requirements in the final design must be approved by Owner. Architect shall make reasonable modifications to the completed educational specification as requested by owner."

Architect for Project completed this work under the previous Agreement between the Owner and the Architect dated February 10, 1997. This work shall be incorporated as part of this revised Agreement for the new Prince Welch School Pre-K through 8th grade project. Compensation for the revision of the education specification shall be paid for under previous the Agreement.

46.    Article 3, Subparagraph 3.4.24: The following new Subparagraph 3.4.24 shall be added immediately after Subparagraph 3.4.23:

"The Architect may request the approval of the Owner to engage certain consultants. Upon the written authorization from the Owner, the Owner shall make the following allowances available to the Architect for the services of the designated consultants and Architect may engage the services of such consultants, provided, however, that such consultants and the terms of the contracts with such consultants shall be acceptable to the Owner in its sole discretion:

(1) telecommunication specialist - **Listed In Exhibit 'I'** aggregate allowance.

(2) security consultant - **Listed In Exhibit 'I'** aggregate allowance.

(3) site survey (existing site and topographic) - **Listed In Exhibit 'I'** aggregate allowance.

(4) lighting consultant - **Listed In Exhibit 'I'** aggregate allowance.

(5) acoustical consultant- **Listed In Exhibit 'I'** aggregate allowance.

(6) audio visual consultant - **Listed In Exhibit 'I'** aggregate allowance.

(7) food service / kitchen design consultant - **Listed In Exhibit 'I'** aggregate allowance.

(8) code consultant - **Listed In Exhibit 'I'** aggregate allowance.

(9) design and specification of fixtures, furnishings and equipment - **Listed In Exhibit 'I'** aggregate allowance.

(10) Geotechnical consultant - **Listed In Exhibit 'I'** aggregate allowance.

(11) traffic study - **Listed In Exhibit 'I'** aggregate allowance.

47.    Article 3, Subparagraph 3.4.25: The following new Subparagraph 3.4.25 shall be added immediately after Subparagraph 3.4.24:

"The Architect shall assist the Owner in investigating various options for the site of the project, providing cost data for various sites for the Project; and assessing design program criteria for the Project as described on the Exhibit J attached hereto and made a part thereof.

This work completed by Architect for Project under the Agreement between the Owner and the Architect dated February 10, 1997, shall be incorporated as part of this revised Agreement for the new Prince Welch School Pre-K through 8th grade project. No additional compensation shall be due the Architect for site investigation and selection."

48.    Article 3, Subparagraph 3.4.26: The following new Subparagraph 3.4.26 shall be added immediately after Subparagraph 3.4.25:

"Unless otherwise specifically set forth herein or unless a stipulated sum is otherwise agreed to by the parties in writing, the Architect shall be compensated for Additional Services provided in accordance with this Agreement at the hourly rates set forth on Exhibit F attached hereto and made a part hereof. Upon the written authorization from the Owner, the Owner shall make an aggregate allowance of up to **Listed In Exhibit 'I'** available to the Architect for Additional Services."