UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WENDELL HARP and<br>ARCHITECTS ENVIRONMENTAL<br>COLLABORATIVE INTERNATIONAL, P.C.,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN DeSTEFANO,<br>CITY OF NEW HAVEN and<br>NEW HAVEN BOARD OF EDUCATION,<br><br>Defendants. | CASE NO: 3:03CV977(CFD)<br><br><br><br><br><br><br><br><br><br>JANUARY 16, 2006 |

## DECLARATION OF THOMAS H. ROGÉR

I, THOMAS H. ROGÉR, state under the pains and penalties of perjury as follows:

1. I am over the age of eighteen (18) and understand my obligation when making a statement to this Court under the pains and penalties of perjury.

2. I am an employee of the Gilbane Building Company ("Gilbane"). With respect to the School Construction Program, I am the Program Director, Head of School Construction and Claude Watt's ("Watt's) supervisor.

3. At a meeting in August 2000, both Watt and I expressed to Wendell Harp ("Harp") our concern that Architects Environmental Collaborative International, P.C. ("AECI") was not involving the appropriate consultants, such as the site surveyor, geotechnical consultant and code consultant, in the initial design work.

4. On May 20, 2002, I wrote to Guidone and others, including Mayor DeStefano, Mayo, Watt and Weisselberg, stating that there was a possibility that the

school would have to be redesigned because a parcel of land belonging to a church might not be available for purchase. I suggested that if the school were to be redesigned in view of AECI's "poor performance . . . on meeting its' contractual responsibilities and a serious concern (i.e. based on their performance on previous project assignments) that AECI will be unable to produce a complete and coordinated set of documents in a timely manner" that the Board of Education consider retaining AECI as a designer only to perform schematic designs for the redesigned school and that another firm be retained to be the architect of record and to produce the design development and construction documents and to perform construction administration. Attached hereto as Exhibit A is a copy of my May 20, 2002 memorandum.

5. In May 2002, I contacted two other architectural firms – Davis Brody Bond, a minority owned firm located in New York, and Ken Borenson – and requested that they submit proposals to do the redesign work for the Prince Welch School.

6. In late 2002 to early 2003, I advocated changing the architect for the Prince Welch School.

7. On March 5, 2003, I called Davis Brody Bond to talk to them about taking over as architects for the Prince Welch School.

The foregoing statements were made under the pains and penalties of perjury.

_____          1/16/06
Thomas H. Rogér                          Date
Program Director, School Construction Program

**EXHIBIT A**

nckm OFC / PW

MEMORANDUM

To:         Paul Guidone, Chief Operating Officer

From:     Tom Roger, Program Director

Date:      Monday, May 20, 2002

Re:        Prince / Welch School Project
           SDE# 093-306 / City Project No.: 99-100-03

cc:        Mayor DeStefano, Dr. Mayo, Claude Watt, Susan Weisselberg, Joann Lombardo

School Construction Program
**Kids First**
New Haven Public Schools
REBUILDING OUR SCHOOLS

---

The Prince Welch School project has proven to be a most challenging project because of an ever-changing array of variables. The most recent of these is the possibility that the targeted parcel that is home to the Shekinah Glory Church may not be available for purchase.

Our architect (AECI) has just completed the design development phase as part of its basic services. If the City is unable to acquire the church's parcel of land, the current design must be substantially changed. Since this is a change in the basic site plan available for the building, this will be a change to the design contract and will result in increased fees and will delay design completion for 4-6 months. Assuming that the church will not move, and there is the required redesign effort, we should take the opportunity to improve the current design and address the recent criticisms from the New Haven Historic District Commission and others. Specifically, redesign should address the following:

1. It should reflect an entirely new land use plan that more efficiently uses the available land with the church as a neighbor. This will probably require that the Ward Street elevation assume a minor role with the primary emphasis on Congress Avenue. The goal would be to maintain the bus drop off, recreational fields, playgrounds and off-street parking.

2. Specific criticisms received about the current design that need to be addressed are as follows:
   a. The facility has a sprawling layout over the site and needs to be "urbanized".
   b. The travel distance within the facility and from bus drop-off and parking areas is an inconvenience to the public, staff and student users.
   c. Decentralized common functions within the building contribute to the excessive travel distance within the facility.
   d. Varying the heights of the building in context with the building heights within the existing neighborhood including the Old Welch School (i.e. now the APT Foundation).

3. The wide varieties of materials being used on the exterior of facility appear chaotic and inappropriate. Specifically, the white block and colored, reflective glass that appear to

Prince-Welch School (Pre-K8) 02/07/01

give the building a commercial or industrial "look" rather than that of a neighborhood school.

4. Any redesign should include regular submissions and consultations with the Historic District Commission in an advisory capacity. These submissions are to obtain their review of the building design in the context of its urban setting.

Another issue that should be addressed in the event of a major redesign effort and the necessity to renegotiate AECI's contract, is the poor performance that we have seen from AECI to date on meeting its' contractual responsibilities and a serious concern (i.e. based on their performance on previous project assignments) that AECI will be unable to produce a complete and coordinated set of documents in a timely manner. Unless this situation is remedied, it is likely to increase the prospect of further delays during design completion and cost overruns during construction.

Our recommendation is that we proceed under a revised approach. This new approach would have AECI offered the opportunity to continue under a revised contract as the "designer" of the facility with a contract that has responsibilities only through completion of a revised schematic design (i.e. 2 months to accomplish). At this point, we would have under contract the services of a proven and capable architectural firm with adequate staff to execute the design development, construction document (i.e.~6 months), and construction administration phases and serve as the architect of record. This would save both money and time and reduce the risk of future claims as compared with merely revising AECI's contract and retaining all of the design and construction administration services. This recommended approach is not uncommon and was utilized successfully by the BOE and school construction office on the Dwight school addition with Michael Haverland as designer and TAMS as the architect of record.

After reviewing the above please advise as to how to proceed.