## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WENDELL HARP and<br>ARCHITECTS ENVIRONMENTAL<br>COLLABORATIVE INTERNATIONAL, P.C., | : <br> : <br> : | |
| | : | CASE NO: 3:03CV977(CFD) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN DeSTEFANO,<br>CITY OF NEW HAVEN and<br>NEW HAVEN BOARD OF EDUCATION, | : <br> : <br> : | |
| | : | |
| Defendants. | : | |
| | : | JANUARY 17, 2006 |

## DECLARATION OF CLAUDE WATT

I, CLAUDE WATT, state under the pains and penalties of perjury as follows:

1.      I am over the age of eighteen (18) and understand my obligation when making a statement to this Court under the pains and penalties of perjury.

2.      I am employed by Gilbane Building Company ("Gilbane") as a Program Manager for the School Construction Program of the New Haven Board of Education (the "Board of Education"). Attached hereto as Exhibit A is a letter of introduction that I sent to Architectural Environmental Collaborative International, P.C. ("AECI") on April 8, 1998.

3.      In March 1998, Gilbane Building was hired by the Board of Education and I was assigned to be the Program Manager for the new Prince Welch School. The School Construction Program is the program of the Board of Education that oversees the construction and renovation of the New Haven public schools. Attached hereto as Exhibit B is a Memorandum dated March 19, 1998, giving formal notification that

Gilbane Building Company has been hired by the Board of Education as the overall Program Manager for the School Construction Program.

4.     From 1997-March 2000, little progress was made on the actual design of the Prince Welch School. I understand from my files that education specifications, which are a list of the requirements for the new school, were developed by AECI and delivered to the Board of Education in February 1998. Attached hereto as Exhibit C is a copy of the transmittal memorandum from AECI forwarding to the Board of Education the Education Specifications.

5.     On August 17, 1999, I directed AECI to revise the educational specifications for the school to reflect that the school would now be a pre-kindergarten through eighth grade school rather than a pre-kindergarten though fifth grade school, as originally planned, and to proceed with site analysis and planning. Attached hereto as Exhibit D is a copy of my letter to Wendell Harp dated August 17, 1999.

6.     The School Based Building Advisory Committee for the new Prince Welch School (the "SBBAC") is a committee of the principals of the schools, teachers, parents, the Alderman for the ward in which the school is located, and representatives from neighboring institutions. The role of the SBBAC is to advise the School Construction Program about the plans for the new school. In 1999, the SBBAC expressed concern about the lack of progress in the design and construction of the new school.

7.     On March 27, 2000, the Board of Education and AECI entered into a new contract for the design of the Prince Welch School (the "2000 Contract"). The Board of Education desired a replacement contract with AECI in order to make AECI's contract more similar to those of other architects with whom the Board of Education had contracted and to make other changes.

8.     On March 31, 2000, I provided AECI with a notice to proceed on the Schematic Design Phase of the project. Attached hereto as Exhibit E is a copy of the Notice to Proceed.

9.     On August 2, 2000, I met with Wendell Harp ("Harp"), the principal of AECI, and Gina Wells ("Wells"), the principal of the Welch Annex School, to discuss a written critique of the preliminary schematic design document delivered by AECI in June and July 2000. Attached hereto as Exhibit F is a copy of the schematic design critique.

10.    Harp and I were unable to discuss the critique and Wells left the meeting and reported her distress to the Superintendent of Schools, Dr Reginald Mayo ("Mayo").

11.    Tom Roger ("Roger"), my supervisor, was required to intervene. Both Roger and I expressed to Harp our concern that AECI was not involving the appropriate consultants, such as a site surveyor, geotechnical consultant and code consultant in the initial design work. Attached hereto as Exhibit G is a Memorandum dated August 3, 2000 which I wrote to Paul Guidone ("Guidone"), Chief Operating Officer of the Board of Education, about this meeting. I provided this Memorandum to John Prokop ("Prokop"), the Chair of the Board of Education's Administration/Finance Committee and a Member of the Board of Education in May 2003 in connection with the Board's consideration of the termination of the 2000 Contract.

12.    I was also concerned that AECI was not properly staffed to provide the services required for the Project, and I requested on several occasions that AECI provide me with information about which AECI employees would be working on the project.

13.    On August 7, 2000, I wrote to AECI stating that it was imperative to find a solution to the recurring challenge of my being unable to contact AECI. Attached hereto as Exhibit H is a copy of my August 7, 2000 letter to AECI.

14.    On that day, I also wrote to AECI with a list of meetings with various City agencies, a description of the role of the SBBAC in the design process and a "special note" stating that no drawings were to be submitted to any groups or individuals without providing them to me two days prior to any presentation. Attached hereto as Exhibit I is a copy of my fax memorandum dated August 7, 2000.

15.    A community meeting to present the early design of the school and the site to residents of the neighborhood was held on August 30, 2000. Susan Weisselberg ("Weisselberg"), the Program Coordinator for the School Construction Program, and I attended the meeting at which Harp presented the preliminary design plans. The plans were difficult for the audience to see.

16.    On August 31, 2000, I wrote to AECI stating that AECI'S presentation at the community meeting "did not demonstrate the level of professionalism or progress that reflects effort, value or respect." The letter further stated "[t]he community and the Owner deserved better" and that although AECI was instructed not to present the June 2000 schematic design at the community meeting and to provide the school construction staff with the drawings that would be presented at the meeting prior to the meeting, AECI had failed to abide by either of these instructions. Finally, my letter listed the documents that AECI that had been requested to produce to me but had failed to deliver to the School Construction Program. I stated that the School Construction Program had no idea when the design would be completed and therefore could not assign its staff for scheduling and estimating. Attached hereto as Exhibit J is a copy of my August 31, 2000 letter to AECI. I provided a copy of this letter to Prokop in connection with the Board of Education's consideration of the termination of AECI's contract.

17.    Subsequently, two SBBAC meetings to review AECI's educational specifications and/or schematic drawings scheduled for September 13, 2000 and September 27, 2000 had to be cancelled because Harp either showed up late for the meetings or did not show up at all. Attached hereto as Exhibit K are my notes on the bottom of the September 13, 2000 meeting Agenda about Harp's failure to attend the meeting. Attached hereto as Exhibit L is my fax to Wells regarding Harp's failure to attend the September 27, 2000 SBBAC meeting.

18.    Additionally, Harp did not attend the November 21, 2000 SBBAC meeting to review schematic design drawings. Attached hereto as Exhibit M is my fax to Harp dated November 27, 2000 regarding Harp's failure to attend the November 21, 2000 meeting.

19.    A the same time, the Trust, the New Haven Historic District Commission and the City Plan Department expressed concern that AECI's proposed design for the school, which called for a modern one and two story above ground structure, did not contribute to the urban streetscape where it was to be located. Attached hereto as Exhibit N is a letter from me to AECI dated October 27, 2000 describing these concerns and a letter to DeStefano from the New Haven Historic District Commission dated January 16, 2001.

20.    On October 27, 2000, I provided AECI with a written critique of AECI's October 24, 2000 schematic design plans, noting the sprawling nature of the first floor plan and the use of skylights and a flat roof, which were inconsistent with the Board of Education's wishes. Attached hereto as Exhibit O is a copy of my design critique.

9G2003.DOC                    5

21.    I believe that in response to prior comments from the SBBAC about AECI's drawings, AECI made only minor changes and then only when Harp felt that the SBBAC's comments had merit.

22.    On November 30, 2000, I prepared a written critique of the schematic design drawings which had been submitted to date. The critique included comments by the SBBAC from the November 21, 2000 meeting which Harp did not attend. Attached hereto as Exhibit P is a copy of my November 30, 2000 Schematic Design Critique.

23.    On December 3, 2000, Harp and I met to discuss my November 30, 2000 Schematic Design Critique. I perceived that Harp initially rejected my comments as intrusive and inappropriate.

24.    Following the meeting, I wrote a memo about the meeting to Guidone stating that in comparison with other architectural firms, "the quality of services received to date is not commensurate with payments", "the quality of services has been more reactive than proactive," and "[t]he actual conditions reflect a foot dragging reluctance on the part of the design team, where it appears that the needs of the client have become secondary to the designer's vision." Attached hereto as Exhibit Q is a copy of my memo to Guidone dated December 12, 2000. I provided Prokop with a copy of this memo in connection with the Board of Education's consideration of the termination of AECI's contract in May 2003.

25.    On January 3, 2001, Harp presented AECI's design response to my November critique. I believe that in its response, AECI only addressed one item of the critique and did not make any other changes requested, including relocating the major functions of the school. Attached hereto as Exhibit R is a copy of my email to Wells describing my meeting with Harp.

26.    I thereafter wrote to Guidone expressing my concern that AECI had ignored the concerns raised by the School Construction Program and the SBBAC, including concerns about the use of different exterior wall systems, flat roofs and skylights. Attached hereto as Exhibit S is a copy of my memorandum to Guidone dated January 26, 2001.

27.    On February 7, 2001, I wrote to Guidone outlining my concerns about the design of the building and AECI's apparent failure to employ the necessary outside consultants. Attached hereto as Exhibit T is a copy of my memorandum to Guidone dated February 7, 2001.

28.    On August 2, 2001, I gave AECI a written notice to proceed with the Design Development phase of the Project. The Notice to Proceed noted that two independent cost estimates based upon the schematic design documents for the project had been prepared which indicated that the costs of the project would significantly exceed the budget and that AECI had rejected these estimates. The Notice to Proceed also stipulated that AECI upon receipt of the Notice was required to provide the Board of Education with a schedule of the completion of design documents. Attached hereto as Exhibit U is a copy of the Notice to Proceed dated August 2, 2001.

29.    On September 20, 2001, I wrote to AECI stating that there had been no progress on the Design Development Documents, AECI had failed to submit a schedule for completion of the documents as requested and that there would be "severe programmatic and financial impacts" if the project were delayed any further. Attached hereto as Exhibit V is a copy of my September 20, 2001 letter to AECI.

30.    On September 25, 2001, I wrote to AECI directing AECI to provide letters from AECI's consultants certifying that they had fully executed agreements with AECI,

invoices that reflected the services outlined in the 2000 Contract, a listing of the amount of consultants' contracts by phase, and a list of the contents of the Design Development documents to be delivered over a four month schedule. The letter also stated that the SBBAC would meet monthly to review comments on design and refine the space program, AECI would be required to provide validation that the cost of the school was within the budget and I would attend weekly progress meetings in AECI's office. Attached hereto as Exhibit W is a copy of my September 25, 2001 letter to AECI.

31.    On October 15, 2001, I sent an e-mail to Roger stating that AECI had failed to submit the requested certifications from its consultants. I was concerned that AECI had not engaged the required consultants, which would result in "a marginal quality of services" and have "an adverse impact on the delivery of a buildable set of construction documents." I also noted that AECI had not forwarded a schedule of when it would be submitting design development documents, had rejected my request that AECI meet with the SBBAC for input on design, and had rejected my request that I meet with AECI at its office weekly to review progress on the Design Development Documents. The email also stated that AECI had refused to submit copies of consultant agreements, rejected the estimates prepared by Gilbane and Giordano Construction Company ("Giordano"), the construction manager and had not submitted information about how AECI intended to reduce cost overruns. I made a number of recommendations to Roger including that payments not be released to AECI until consultant information was provided and that the scope of services that AECI was to provide for the School be reduced. Attached hereto as Exhibit X is a copy of my October 15, 2001 email to Roger and his response that he agreed.

32.     On November 20, 2001, I also wrote to AECI stating that AECI had not
fully complied with my requests for information, that the SBBAC had not been given the
opportunity to comment on the Design Development Documents and that I had not been
given the opportunity to attend weekly progress meetings. I wrote that AECI had put me
"in a position of reporting to the Owner that there exists no substantive evidence that the
Architect is preceding with the design development phase or is in compliance with the
requirements of its Agreement with the Owner." Attached hereto as Exhibit Y is a copy
of my November 20, 2001 letter to AECI.

33.     On November 20, 2001, I wrote to Guidone that AECI "has not
demonstrated the required due diligence to complete the design phase of the project in a
timely manner." Attached hereto as Exhibit Z is a copy of my November 20, 2001 letter
to Guidone.

34.     In a letter dated November 26, 2001, I wrote to AECI that, "[a]s the
assigned Architect, you appear to have chosen to ignore the Owner's stipulation that there
shall be Owner, User and Public input into the design solution and development. . . .
Even though, I respect your desire to produce an edifice that reflects your creative
inspiration. It must also satisfy the Owners programmatic intentions, the User's
operational activities, serve the community and be constructed within the available
budget." Attached hereto as Exhibit AA is a copy of my November 26, 2001 letter to
AECI. I provided a copy of this letter to Prokop in May 2003 in connection with the
Board's consideration of the termination of AECI's contract.

35.     On or about December 3, 2001, AECI submitted to the School
Construction Program a set of Design Development Documents so that the costs of
construction of the school could be estimated. Ram Joglekar ("Joglekar"), the estimator

for Gilbane, wrote to me on December 17, 2001 stating that the documents submitted by

AECI on or about December 3, 2001 were not adequate for estimating purposes and that

"very little progress (if any) has been made in the last one year." Attached hereto as

Exhibit BB is a copy of Joglekar's memo to me dated December 17, 2001.

36.     On January 28, 2002, a meeting was held with Mayo about the quality of

the design documents and service to date. Attached hereto as Exhibit CC is a copy of the

Agenda for the January 28, 2002 meeting.

37.     On January 31, 2002, AECI presented a new set of Design Development

Documents. Attached hereto as Exhibit DD is a copy of a Prince Welch document

chronology.

38.     Joglekar began to review the documents in order to provide an estimate of

the cost of constructing the school. He determined that they were "inadequate, incomplete

and far short of the requirements to complete this task." Attached hereto as Exhibit EE is

a copy of an email to Joglekar dated February 1, 2002 and a memo from Joglekar to me

dated February 1, 2002.

39.     The Design Development Documents were returned to AECI for revision.

40.     AECI submitted revised drawings on February 20, 2002.

41.     Both Joklegar and Giordano requested information about items that

needed more detail or were missing information. Attached hereto as Exhibit FF is a

request for information from Giordano.

42.     In early April 2002, Joglekar and I met with AECI and its consultants

about the lack of information in the drawings. Harp stated that revised drawings would be

provided after May 1, 2002 but would not commit to a date. Attached hereto as

Exhibit GG is an email from Joglekar to me dated April 4, 2002 about this meeting.

43.     In mid May 2002, AECI submitted revised Design Development Documents which it characterized as 25% Construction Documents, a characterization that I rejected. Because information was still missing, Jolegkar's estimate included allowances to cover the unanswered questions. Attached hereto as Exhibit HH is my letter to Harp dated May 23, 2002 stating that the drawings were being received as Design Development Documents only.

44.     On May 8, 2002, the Historic District Commission met. There were a number of negative comments about the design of the school, particularly its modern suburban look, its white brick façade and long windows. The Historic District Commission again requested that AECI provide drawings of the school in the context of the neighborhood.

45.     On June 4, 2002, I requested that AECI provide a proposal for the redesign work, which would address some of the criticisms of the Historic District Commission. Attached hereto as Exhibit II is my letter dated June 4, 2002 to AECI.

46.     On June 19, 2002, I amended my prior letter in view of news that the Church property would be able to be purchased. I requested that AECI provide two proposals - a proposal to redesign the school and a proposal to provide the design work for the schematic design and the design development phases only with the construction document phase work and the construction administration work being awarded to another architectural firm. Attached hereto as Exhibit JJ is my letter dated June 19, 2002 to AECI.

47.     On July 3, 2002, I notified AECI that its design efforts would be put on hold until further notice. Attached hereto as Exhibit KK is my letter dated July 3, 2002 to AECI.

48.     From December 2002 – March 2003, Mayo, the School Construction Program, and Mayor DeStefano ("DeStefano") considered various options concerning the new Prince Welch School, including altering the site configuration, redesigning the school and proceeding with a new architect. Attached hereto as Exhibit LL is a memorandum dated February 7, 2003 that I prepared showing these options.

49.     In February-March 2003, I advocated changing the architect. I prepared a draft memorandum which explained the need for a change in architect. Attached hereto as Exhibit MM is a copy of my memorandum.

50.     In late March, early April 2003, I was told that Dr. Mayo would be negotiating with AECI for a contract to redesign the Prince Welch School. At Dr. Mayo's request, on April 2, 2003, I provided him with information concerning the redesign criteria that the School Construction Program wanted AECI to use. Attached hereto as Exhibit NN is a copy of my memorandum to Dr. Mayo dated April 2, 2003.

51.     On April 8, 2003, I sent AECI a letter directing it to restart the design phase. Attached hereto as Exhibit OO is a copy of my April 8, 2003 letter to AECI.

52.     On April 8, 2003, AECI submitted a cost proposal for the redesign of the school. Attached hereto as Exhibit PP is a copy of this proposal.

53.     On April 24, 2003, I sent AECI a new form of Architect's agreement which was to replace and supersede the 2000 Agreement for the redesign work. Attached hereto as Exhibit QQ is a copy of my transmittal memorandum and the new form of contract.

54.     On April 25, 2003, AECI wrote to me asking if it should proceed or wait until the Corporation Counsel acted on the new contract and asked that I let AECI know or send a notice to proceed. Attached hereto as Exhibit RR is a copy of AECI's facsimile

9G2003.DOC                    12

dated April 25, 2003. On April 28, 2003, I verbally confirmed to Harp that AECI could proceed with the land use studies. Attached behind Exhibit RR is a copy of AECI's facsimile confirming the verbal Notice to Proceed.

55.    On May 1, 1003, I drafted a Notice to Proceed with Land Use Concept Study to be sent to AECI. Mayo became upset with me for doing so and told me not to send it to AECI. Attached hereto as Exhibit SS is a copy of the draft Notice to Proceed dated May 1, 2003.

56.    On May 1, 2003, I left a message with AECI that no work was to be performed until further notice. Attached hereto as Exhibit TT is a copy of my email dated May 5, 2003 to Weisselberg and Roger stating that I had left this message on May 1, 2003.

57.    I spoke to Harp on May 6, 2003 and reconfirmed that AECI was not to proceed with the project. Attached hereto as Exhibit UU is a copy of Harp's fax transmission confirming this conversation dated May 8, 2003.

58.    Thereafter, Mayo instructed me to draft a set of design criteria that would reflect the concerns of the historic preservation community about AECI's design and to draft a written set of expectations and time lines. With Susan Weisselbeg's assistance, I drafted an exhibit to the Architect Agreement entitled "Supplemental Conditions for the Redesign" which provided that the school would be three floors above grade, incorporate the use of red brick and individual modular windows (discreet punched window openings for repetitive glass sizes of neutrally tinted glass), the building would not have undifferentiated long ribbon windows and spandrels, the setback would be compatible with the pattern of adjacent blocks, and the schematic design would "rely heavily on rectilinear forms" (the "Supplemental Conditions"). The Supplemental Conditions also

included time frames for performance, including that the conceptual designs be provided by AECI by July 23, 2003, schematic drawings be completed by October 9, 2003, and design development documents be completed by October 22, 2003. Attached hereto as Exhibit VV is a copy of the Supplemental Conditions dated May 9, 2003.

59.    I was present at a Special Meeting of the Administration/Finance Committee of the Board of Education held on May 23, 2003 to consider the termination of AECI's contract. There was a discussion about AECI's performance under the contract. At that meeting, John Prokop, chair of the Administration/Finance Committee, ("Prokop") requested that I send him documents regarding AECI's performance problems at Prince Welch, which I did on May 27, 2003. As stated above, included in the items sent to Prokop were my memo to Guidone dated December 12, 2000, my memo to Guidone dated August 3, 2000, my letter to AECI dated August 31, 2000, and my letter to AECI dated November 26, 2001. Attached hereto is Exhibit WW is a copy of my transmittal to Prokop dated May 27, 2003.

The foregoing statements were made under the pains and penalties of perjury.

_____     1/17/06
              Claude Watt                              Date