**EXHIBIT K**

# AGENDA

## Prince Welch School Project
## School Based Building Advisory Committee Meeting

## Location @ Welch Annex School

## Wednesday, September 13, 2000, 3:00pm

**Purpose of Meeting**
Meeting called to review and discuss proposed program and schematic design for the new Pre-K through 8th grade school as prepared by AEIC, Architect.

**Introduction of meeting participants**

**Overview By Program Manger**
- Review the revised building program;
- Review the schematic design;
- Discuss Schedule
  1. Education Specification compilation and completion;
  2. Approval of Schematic Design by SBBAC and NHPS;
  3. Frequency of meetings

**General Discussion**

**Schedule Future Meetings** ( 9/27/00

MEETING CANCELED DUE to ARCHITECT NOT DRAWING until 3:50 pm, ~~ERROR in~~

**EXHIBIT L**

## FAX MEMORANDUM

School Construction Program

New Haven Public Schools
REBUILDING OUR SCHOOLS

To:      Gina Wells, Principal – Welch Annex
Tel:     (203)946-8414
Fax:     (203)946-6621

From:    Claude E. Watt , Program Manager
Tel:     (203) 946-6808
Fax:     (203) 946-8920

Date:    Thursday, September 28, 2000

Re:      Prince / Welch School Project,

         SDE#093-306/City Project No.: 99-100-03

Number of pages, including cover sheet: One (1) each

---

Please accept my apologies on behalf of the School Construction Program staff.  It is our intent that the design process be conducted in an orderly and professional manner. Lately conditions have been anything but that. I want to assure you, the staffs of both the Prince and Welch Annex schools and SBBAC members that steps are being taken ensure that the process going forward reflects a respect for the time and commitment you've made to date.

Your input and contribution as always are both welcomed and important to the design process. We want you realize that we've appreciated your insight thus far.  We look forward to continuing the relationship and teamwork through out the remainder of this project.

Cc:     Paul Guidone
        Thomas Roger
        Susan Weisselberg
        Leida Picini – Director of Instruction
        Dr. Edia Reyes, Principal – Prince School
        Wendall Harp, Architect – AECI, PC

**EXHIBIT M**

NAPS / COR / PW

## FAX / COVER SHEET

School Construction Program

To: WENDELL HARP

Company: AECI

Fax #: 777-9891

# of Pages including cover ( )

From: CLAUDE WATT, PM

Phone: 946-6008

Fax: 203-946-8920

New Haven Public Schools
REBUILDING OUR SCHOOLS

54 Meadow Street
New Haven, Connecticut

Date: 11/27/00

Re: PRINCE WELCH SBRAC

On November 21, 2000 @ 3:00 pm an SBRAC mtg was convened at the WELCH Annex School. Approximately 6 individual were in attendance. We waited until 3:10 pm. the Architect had not shown up. The program manager reviewed with those in attendance the comments and INFORMATION received to date, ~~to the Absent~~ It was decided that the ~~#~~ PM. would convey those comments & changes to the Architect. you will receive these comments by end of this Business day 11/27/00. ~~###~~

**EXHIBIT N**

**New Haven Public Schools**
**School Construction Program**



**54 Meadow Street**
**New Haven, Connecticut 06519**

**REBUILDING OUR SCHOOLS**

October 27, 2000

Sent Via Fax and First Class Mail

Mr. Wendell Harp, Principal
Architects Environmental Collaborative International, PC
300 Whalley Avenue
New Haven, CT 06511

Re.:     Prince Welch School Project
         (SDE#093-306, City No. 99-100-03)

Dear Wendell

As mentioned in earlier communications both City Plan and the New Haven Historic District Commission have made certain requests relative to the design of the new Prince Welch School facility.  They have asked that the school's design be responsive to the urban streetscape along Congress Avenue.  It was noted that the introduction of parking along this location creates undesirable gaps in the urban scheme.

The Historic District Commission also asked that consideration be given to utilizing the building façade of the property at 619-635 Congress Avenue as part of the school façade.

I am requesting that you prepare and present concept schemes that examine the incorporation of these requests into the design for the new school.  This presentation is to include both site plans and elevations.

The Historic District Commission has a meeting scheduled for November 8, 2000, at 7:00pm.  You will be expected to make a presentation at that time.  Please contact me by Tuesday, October 31, 2000, with any questions.  Also, forward a copy of the documents you will be presenting to me by November 2, 2000.

As always your cooperation and assistance will be appreciated.

Sincerely yours,

Claude E. Watt Jr.
Program Manager

Cc:     Dr. Reginald Mayo,
        Paul Guidone ,
        Thomas Roger,
        Susan Weisselberg,
        Leida Pacini
        Gina Wells

File: 2445PrinceLtr27                                                                    1

*FILE* tun
Hist. Comm / Corr.



# NEW HAVEN HISTORIC DISTRICT COMMISSION

*(Established by the City of New Haven – June 11, 1970)*

165 Church Street, 5th Floor
R E C E I V   New Haven, CT 06510

January 16, 2001

JAN 2 3 200

New Haven School
Construction Program

The Honorable John DeStefano, Jr.
Mayor
Chairman, City wide School Building Committee
Office of the Mayor
165 Church Street
New Haven, CT 06510


RE:    Commission comments on the design of the proposed Prince-Welch School


Dear Mayor DeStefano,

Over the last few months, the Historic District Commission has been working closely with New Haven Public Schools School Construction Program to advise them on aspects of their major upcoming projects that affect the historic resources of our city. Outside our local historic districts, we view the Commission's purview to cover two issues: first, offering advice on existing historic structures on the proposed sites, consideration of their architecturally sensitive adaptation and reuse for the school program, where appropriate, and for other structures, consideration of their relocation to other sites where economical; and second, for new schools or major additions to existing schools in historic settings, consideration of the impact of the proposed design on the surrounding neighborhoods. We are conducting our overview at our regular meetings to allow for the opportunity for public comment on projects at an early time such that those comments have possibility of being considered and reflected in the final building.

It is within this context that the Commission had the opportunity to review the preliminary design for the Prince-Welch School at our January meeting on the 10th. We offer you these observations and recommendations for your consideration during your review.

**Site Development / Plan**
1.    There has been some public concern expressed as to the proposed demolition of three apartment buildings at 619-635 Congress Avenue (1897 Brown and VanBeren). We are particularly sensitive to such concerns given last year's controversies over the Arts Magnet School. The project's architect has documented reasons which seem fairly reasonable as to why these structures could not be adapted to school use. An objective look at the site development proposed, however, leads to the question of whether it is necessary to acquire this portion of the site at all. Specifically, it would be worth investigating how the school

program would fit if the area to the south west of Baldwin Street was deleted from the site and the street remained open. Certainly, if this were possible, it would reduce the impact on the neighborhood and reduce acquisition costs. As a matter of due diligence, if such a study proved a reduced site was not adequate, future challenges raised by defenders of these buildings might be avoided.

2. The building is organized to front Congress and Ward Streets. This is a good decision as it completes the definition of the streets by buildings so necessary to good neighborhoods. We cannot tell if the building setbacks are appropriate (see next point).

3. We were not able to determine what relationship the building's plan has to the surrounding neighborhood. (The architect was asked as early as mid November and as recently as the week prior to the meeting to show neighboring existing structures on the surrounding lots and blocks in his drawings but failed to do so. Architects for other schools have provided comparable information in their presentations.) We have doubts that the building which appears to be free floating in an open field will relate positively to any of its neighbors. We suggest context is essential to understanding the appropriateness of this building and must be shown on the drawings and we would appreciate another opportunity to comment once this information is included.

4. The site faces two streets, Congress and Ward, and thus has two front yards. The proposed design incorporates the service entry, where truck delivery and garbage disposal will occur daily, in one of these front yards along Ward Street. This location we believe is inappropriate; the service entry should be relocated to the interior of the block.

5. The building appears to have at least five major entrances but no "front door". We would suggest that many of our historic and recent schools benefit from having one clearly identifiable main entrance. (For examples consider Fair Haven Middle School, Truman School, Edgewood School, Lincoln Bassett School, Vincent Mauro School, Hillhouse High School and Wilbur Cross High School. Resolving the conflict of entry from parking / play fields vs. the street has been particularly well solved at the Lincoln-Bassett School.)

**Building Design / Elevations**

6. As with (3.) (above), the commission was hampered by the paucity of information provided by the architect, consisting of a single elevation at a small scale showing only the existing former Welch School as context. As a minimum the presentation should have included two elevations, Congress and Ward Streets, drawn at a minimum of 1/8" = 1'-0", with at least a block of context buildings drawn to scale to either side. Additional elevations showing the playground side would also have been appropriate at this point in the project. Given this, we had very grave doubts that the proposed building would fit within, and be an asset to, its neighborhood. While the elevation presented shows a low horizontally emphasized stretched building articulated (perhaps overly) with a wide variety of forms, the commission felt a more proportioned two or three story building would more complement the neighborhood and form the central focus implied by a public building of the stature of a community school. The Commission would again appreciate an opportunity to advise you after reviewing a presentation that more fully describes the project and includes a sufficient amount of its surroundings to be comprehensible.

7. We felt the building vocabulary of undifferentiated long ribbon windows and spandrels was completely unrelated to the neighborhood. Significantly, recent projects at Wilbur Cross High

School and Hillhouse High School have removed similar once trendy, now dated, designs and replaced them with much more comprehensible compositions based on the use of traditional, discreet vertical windows. We believe that such designs have a much greater likelihood of being valued for many generations in the future.

8.  We question whether the materials proposed, white concrete block and rose colored glass are at all appropriate. Not only are our historic public schools built of brick, but our most successful recent schools, Edgewood, Lincoln-Bassett, the facade renovations of Wilbur Cross and Hillhouse adopt this material and are an asset to their neighborhoods. From a slightly earlier period, the Vincent Mauro School likewise uses brick as a way to integrate a new building successfully into the streetscape of Sylvan Avenue. The context of Congress Avenue is defined mostly by brick buildings from substantial and public buildings like those of the Yale Medical School, the Boyer Center, Psychiatric Institute, Hope, Lauder, and the new research labs, through the Welch School, to two and three story commercial buildings along the remainder of the street. Concrete block fits into a different context. It has a connotation of being appropriate for strip commercial, often transitory buildings. Pep Boys in Hamden and the back of Shaw's on Whalley Avenue are examples, but even on Shaw's it was recognized that brick was the appropriate material for the front. (Illustrative of the lack of value placed in a utilitarian material like concrete block is the case of Church Street South Housing. A 1969 building complex designed by a nationally notable architect, it has never been loved part of the reason being the perceived shoddiness of the primary materials with which it was built.) We recommend that a building as central and public as a neighborhood school deserves a material as substantive and symbolic of permanence and importance as brick. As for the choice of rose glass, it seemed to the Commission to be peculiar with nothing in particular to recommend it; clear glass would be far more appropriate.

The process of the Commission's consultation with the School Construction Program has been constructive with all parties feeling that our unique input has resulted in additional options for improvement of our new and renovated schools. We look forward to continued work with them to make our schools the best they can be and assets that are unifying centers for our neighborhoods, buildings that 22nd century citizens of this city will fight to preserve. We appreciate this opportunity to offer you our observations and advice on this most important component of your initiative for fully modernizing our schools.

Very truly yours,

Robert W. Grzywacz
Chairman

cc:    Dr. Reginad Mayo, Superintendent of Scools
       Susan Weisselberg, School Construction Program
       Karyn Gilvarg, City Plan Department

**EXHIBIT O**

**New Haven Public Schools**
**School Construction Program**

54 Meadow Street
New Haven, Connecticut 06519

REBUILDING OUR SCHOOLS

October 27, 2000                                    Sent Via Fax and First Class Mail

Mr. Wendell Harp, Principal
Architects Environmental Collaborative International, PC
300 Whalley Avenue
New Haven, CT 06511

Re.:       Prince Welch School Project
           (SDE#093-306, City No. 99-100-03)


Dear Wendell

The following is submitted as review comments on your October 24, 2000, schematic design presentation:

1.  The site plan reflected a sprawling first floor plan. This significantly diminished the available site area for development of a multipurpose recreational sports field. Your are to revise the space allocation on the first floor so as to reduce the building foot print, and provide for a uniform and contiguous rectangular sports field.

2.  I reviewed the use of skylights in the facility. Such applications are counter to the desires of the Owner. At this time the application as presented are not approve, and not to be incorporated into the design.

3.  The issue of using a flat roof in this design is still under consideration. Flat roof systems are counter to the Owners wishes. The final decision regarding this item will be based on your demonstration that the flat versus the pitched roof system will alleviate the Owners concerns.

4.  The bus drop off, parking, and service access to building require additional study. The site plan as presented does not reflect adjustments to these items as impacted by the relocation of the building along Congress Avenue.

5.  No building elevations or sections available for review and comment.

6.  Drop off area along the Congress Avenue indicates diagonal parking. Brain McGrath of the City Department and parking requested that this be parallel parking. Please modify to reflect or provide an explanation as to the other option.

7.  I have not received a response to my critique of the designs presented in July 2000. Please forward your response.

Please review and incorporate comments as part of the schematic design process. As always your cooperation and assistance will be appreciated.

Sincerely yours,

Claude E. Watt Jr.
Program Manager


Cc:        Dr. Reginald Mayo, Paul Guidone , Thomas Roger, Susan Weisselberg, Leida Pacini, Gina Wells

**EXHIBIT P**

## Schematic Design Critique

Project:        PRINCE WELCH Pre-K 8  School


Architect:      Architects Environmental Collaborative Incorporated
Contact:        Wendell C. Harp, Principal


Reviewer:       Claude E. Watt Jr., Program Manager
Date:           November 30, 2000

Critique base on Program Managers review of the preliminary schematic design
documents presented by Architect as of November 17, 2000, and subsequent comments
from the SBBAC and various City / New Haven Public School Departments.

### Overview:

The assigned Architect has been commissioned to provide professional architectural /
engineering services for the design and development of a new Pre-K8 School.  The school
will house 600 pupils.

The site selected by the Owner is an 8.2-acre tract of land bounded by the rear boundary
of the properties along Davenport Avenue and Kossuth Street with street frontage along
Congress Avenue and Ward Street.  This site requires the closure of two city streets
(Baldwin Street and Asylum Avenue).

The Owner's objective is to develop an educational facility that supports an academic
environment for the grades Pre-Kindergarten through Eighth.  The community shall be
afforded access to the facility for activities and community functions.  This facility shall
support a variety of indoor and outdoor recreational activities.  The design of the facility
must allow for regulating movement through out the facility.

The parking must be adequate enough to support staff and visitors.  The Owner prefers
that no parking occurs in areas not clearly visible from the street.  The travel lanes and
drop off area for buses shall be separated from other traffic.

This review is not intended to cover all areas of design scope or to relieve the Architect of
it responsibility to evaluate its design and make improvements.

### CRITIQUE COMMENTS

| No. | Observation | Comment | Action Code |
|-----|-------------|---------|-------------|
| 1 | **Schematic Document Preparation** | | |
| 2 | A2 Survey | In progress | |
| 3 | Energy Study & Life Cycle Cost | Not Started | |

| | | | |
|---|---|---|---|
| | Analysis | | |
| 4 | Program Development | In progress | |
| 5 | Approved Design Phase Narrative | Incomplete | |
| 6 | Geotechnical Survey | Not Started | |
| 7 | Outline Specification | Not submitted | |
| 8 | Description of Building Envelop | Under study | |
| 9 | Schedule of interiors | Status unknown | |
| 10 | Description of finishes per room | Status unknown | |
| 11 | Review of Cabling and Telecom Program | Not Started | |
| 12 | Description of Handicap Requirements inside & outside Bldg | Status unknown | |
| 13 | Security Issues narrative for design | | |
| 14 | FF&E Program Description and Budget | Status Unknown | |
| 15 | Drawings: | Not Started | |
| 16 | Site Plan | | |
| 17 | Typical floor plan clearly indicating program use | Under Study | |
| 18 | Typical floor plan showing smoke & fire partition | In progress | |
| 19 | Roof plan indicating type of design | Not submitted | |
| 20 | Elevations of all sides | Not submitted | |
| 21 | Diagrammatic sections of building | Partial submitted | |
| 22 | Equipment & Furnishing drawing | Not submitted | |
| 23 | Preliminary perspective or model | Not submitted | |
| 24 | | Not submitted | |
| 25 | **Site Development and Land-Use** | | |
| 26 | Building form (Compliment or Contrast local vernacular) | 1 | |
| 27 | Building placement on site | | |
| 28 | Road frontage use and development | 2 | |
| 29 | Site Access | 3 | |
| 30 | Onsite Access roads buses | 4 | |
| 31 | Onsite access roads service | 4 | |
| 32 | Onsite access roads parking | 4 | |
| 34 | Onsite access roads student drop-off Lane | 4 | |
| 36 | Parking staff / visitors | 4 | |
| 37 | Parking service | 4 | |
| 38 | Parking buses | 4 | |
| 39 | Sidewalks & Curb Cuts | 4 | |
| | | 13 | |

| 40 | Multi-Purpose Recreation Field | 4 | |
| 41 | Primary & intermediate play area | 13 | |
| 42 | Buffer zone at adjacent properties | 4 | |
| 43 | Preservation of mature trees | 13 | |
| 43 | General Landscaping | 13 | |
| 44 | Easements | 13 | |
| 45 | Erosion control | 13 | |
| 46 | Site drainage | 13 | |
| 47 | Utility access | 13 | |
| 48 | Set backs | 15 | |
| 49 | Site lighting | 13 | |
| 50 | Onsite Movement patterns (Vehicular / Pedestrians) | 3 & 13 | |
| 51 | Fencing | 13 | |
| 52 | Earth Berm | NA | |
| | | | |
| | | | |
| | **Program Implementation** | | |
| 53 | Primary Classrooms (Pre-K to 2nd) | 4 | |
| 54 | Intermediate Classrooms (3rd to 4th) | 4 | |
| 55 | Middle School Classrooms (5th to 8th) | 4 | |
| 56 | Media Center | 4 & 13 | |
| 57 | Food Service / Cafeteria | 4 & 13 | |
| 58 | Gym / Auditorium | 4 & 13 | |
| 59 | Administration | 4 & 13 | |
| 60 | Student Support | 13 | |
| 61 | Medical | 13 | |
| | | | |
| | **Design Issues** | | |
| 62 | Scale of building | 4 & 13 | |
| 63 | Corridors | 20 | |
| 64 | Windows | 4 & 13 | |
| 65 | Lighting | 13 | |
| 66 | Noise control Security | 13 | |
| 67 | Security | 13 | |
| 68 | Path of travel | Open | |
| 69 | Adjacencies | 4 | |
| 70 | Lockers | 13 | |
| 71 | Storage | 13 | |
| 72 | Mechanicals areas | 13 | |
| 73 | Roofing | 21 | |
| 74 | Skylights | 22 | |
| 75 | Stairways | Open | |

## COMMENTS:

1. The design as presented makes no attempt to integrate or compliment existing architecture. This is not necessarily a negative response to a site. The City is a Certified Local Government, CLG, this factor and the fact that the selected site requires the demolition of several properties on the historic survey may cause the state to impose special stipulations on the new building relative to exterior design and finishes.

2. Building placement options are limited. Design appears to be sprawling in its layout on the site. This condition adversely impacts service access, placement of recreational fields, parking and bus drop off.
   Recommendations: Incorporate changes as indicated on the enclosed drawings.

3. The drive entrance off of Congress allows for off street drops as requested by Traffic and Parking.

4. See comments on the attached drawings.

5. Not used.

6. Not Used.

7. Not Used.

8. Not Used.

9. Not Used.

10. Not Used.

11. Not Used.

12. Not Used.

13. Insufficient information to comment at this time.

14. Not Used.

15. Architect to comply with the regulatory guidelines unless a waiver is issued.

16. Not Used.

17. Not Used.

18. Not Used.

19. Simplify interior wall layout so as clear view of all areas of corridors.

20. Sight line needs to clear from each end.

21. The designer proposes use of both flat and sloped roof systems. This contradicts the desires of NHPS due to concerns about damage and water infiltration.

22. NHPS prefers not to employ the use of skylights due to concerns about water infiltration, maintenance and liability risk.

**EXHIBIT Q**

*FILE*

Prince Welch
Inter Office

## MEMORANDUM

School Construction Program

**New Haven Public Schools
REBUILDING OUR SCHOOLS**

| | |
|---|---|
| To: | Paul Guidone, Chief Operating Officer |
| From: | Claude E. Watt Jr., Program Manager / Facilitator |
| Date: | Tuesday, December 12, 2000 |
| Re: | Prince / Welch School Project
SDE# 093-306City Project No.: 99-100-03 |
| cc: | Thomas Roger |

Project Update:

The SBBAC has set up biweekly meetings in order to move the design process along. To date the Architect has been consistently late for these meetings and was a no show for the November 21, 2000, meeting.

The Architects has expressed his displeasure in and perception of the SBBAC process, as well as, other information and feedback gathering sessions as wasteful. He has stated that he prefers to present his design after he is satisfied that it works. I do not disagree with this concept, but in practice it leaves little room for input. The Architect scoffed at early recommendations that he prepare a minimal of three conceptual designs that reflected both site and program development. He opted instead to present a single idea, which was presented to the SBBAC in August, September, October and November. Each presentation reflected minor changes in response to those comments that the Architect felt had merit.

In August 2000, in an attempted to move things along I prepared a formal written critique of the design based on feedback from NHPS staff and other inter city agencies.

In November 2000, the SBBAC was given copies of the design for review and comment. The November 21, 2000, SBBAC meeting was intended to give the Architect our final overview of the design. As stated above, the Architect was a no show. Those members of SBBAC that were in attendance and the program manager did review the comments and recommendations collected by the program manager.

On November 30, 2000, I submitted to the Architect another written critique of the design. On December 3, 2000, I contacted the Architect, and requested we meet to discuss the critique comments. The Architect agreed to meet that day. He initially rejected the critique as intrusive into services he'd been contracted to perform and inappropriate coming from Gilbane. After some discussion, he did agreed to respond to the critique, and where appropriate he'd adjust the design to reflect those comments, which had merit. I requested that we set a date to review his response. He stated he would get back to me with a date.

Prince-Welch School (Pre-K8)                                                12/12/00

I informed Architect, that I wanted to wrap up this phase of design. He was in agreement. My goal is to be in a position to go before the CSBC in February 2001. This assumes that the design meets with SBBAC approval in early January 2001.

To date the following items are outstanding:
Preliminary Geotechnical Survey
Finalizing the Space Program

**PM Overview:**
The Architect has been working on the design since April 2000. The design phase stalled during the summer due to the unavailability of the SBBAC. The design efforts were restarted in earnest in August 2000. To date 75% of the schematic design phase fee has been authorized for payment. In comparison to other firms providing the same services, the quality of service received to date is not commensurate with payments.

The quality of services has been more reactive than proactive. This has caused the school construction staff to invest more time than usual to this phase of design. The Architect claims that the frequent critiques by the Owner, SBBAC, and others have been a delaying factor in the design process. The actual conditions reflect a foot dragging reluctance on the part of the design team, where as it appears that the needs of the client have become secondary to the designer's vision.

**EXHIBIT R**

SBBAC / PW

## Watt Jr., Claude E.

| | |
|---|---|
| To: | Gina Wells (E-mail) |
| :: | Roger, Thomas; Susan Weisselberg (E-mail); Leida Pacini (E-mail); welch@new-haven.k12.ct.us |
| Subject: | Prince Welch School Project |

Project Update:

Happy New, and I hope you had a great holiday.

- November 16, 2000 -- Met with Bob Grzywacz, Chairman of the New Haven Historic District Commission. we discussed the impact of the new school on historic properties.
- November 17, 2000 -- Architect presented schematic design proposal to city plan and city engineering staff.
- November 21, 2000 -- SBBAC meeting was held at Welch Annex School. Architect did not attend. Program Manager reviewed the November 17, 2000 design as submitted by Architect. All comments are to be submitted to the Architect in the form of a written critique.
- November 22, 2000 -- School Construction staff met with chairman of the New Haven Preservation Trust. We discussed disposition and conservation of historic properties located within the project site.
- November 30, 2000 -- I provided Architect (Wendell Harp) with a written critique of his November 17, 2000 design proposal.
- December 5, 2000 -- Met with Wendell Harp to review critique comments. Architect indicated he would take critique comments under advisement.
- January 03, 2001 -- Architect presented his design response to the critique comments. Attending the presentation were members of the school construction staff and chairman of the New Haven Historic District Commission. **The Architect has opted to not address the majority items within the critique. The exception is the changing the location of the parking lots. All other comments regarding the relocation of certain major functions have not been included within his design concept.**
  January 10, 2001 -- Architect presented his design concept to the New Haven Historic Commission.

Anticipated schedule of upcoming activities:
- January 12, 2001 -- Architect to present his design concept to the city plan and city engineering staff;
- Presentation of design concept to Mayor;
- Presentation of schematic design concept and program to SBBAC for approval;
- Presentation of schematic design to Citywide School Building Committee, CSBC.

**My goal is to get the design before the CSBC by the Thursday, February 8, 2001. This will be dependent on Architect providing sufficient information to allow those viewing his design to understand his intentions.**

**EXHIBIT S**

*INTER OFC / PW*

# *FILE*

## MEMORANDUM

School Construction Program

To:         Paul Guidone, Chief Operating Officer

From:       Claude E. Watt Jr., Program Manager / Facilitator

New Haven Public Schools
REBUILDING OUR SCHOOLS

Date:       Friday, January 26, 2001

Re:         Prince / Welch School Project
            SDE# 093-306 / City Project No.: 99-100-03

cc:         Thomas Roger,  Susan Weisselberg, Wendell Harp

---

Project Update:

In November 2000, the Architect was issued a critique of his work. He has opted to incorporate some of the suggestions provided. He has also opted to ignore several of the programmatic concerns raised by this office on behalf of the SBBAC, other city agencies and the Owner.

The current design as presented in January to both the Historic District Commission and the City Plan Department gives cause for me to express my concerns. It is important to note that I have specifically omitted comments regarding the aesthetic merit of or the value added to the urban setting by this design. I shall defer to the opinion of the SBBAC and CSBC on design aesthetics.

Mr. Harp proposes to utilize building elements similar to those incorporated in the Career High School design. This includes but is not limited to white split face masonry, metal panels and an exterior insulated finish system (EFIS) on the exterior of building. The design as presented also indicates the use of a flat roof system with skylights.

There are three areas of concern created by this assemblage of building systems:
1. Water infiltration at the interface of the different exterior wall systems due to failure of the glazing (caulking) system;
2. Damage to the flat roof system due to traffic by maintenance personnel;
3. Water infiltration due to damage to the flat roof system and the failure of the seals around the skylights.

Concern no. 1:
Caulking joints in an exterior wall have a relatively short life span. This is especially true when dissimilar building systems are combined into the same building elevation. Each system has unique movement patterns, which create very active joints. This condition, along with the influence of the New England climate, will result in the fatigue of the joints within as little as five to ten years. The impact of moisture infiltration to building's substrate can take another five years to become apparent, but if the migration leaches to the interior spaces the damage can be seen within one year at the interior walls and ceilings. Surprisingly, the damage to interior finishes is more unsightly than costly, but there is a cost associated with making repairs.

Prince-Welch School (Pre-K8)                                    1/26/01

The real problem is the impact of the moisture on the substrate at the exterior walls. These areas are unseen until the damage begins to affect the integrity of the wall system. This can often result in deterioration of the insulation values in the wall, mold and mildew forming in the wall cavity, rusting relieving angles above windows, efflorescence forming on masonry, face of masonry cracking and falling, and lateral wall ties at masonry rusting and failing. These repairs are substantially more costly.

There are industry remedies for these types of conditions, which include the specification, detailing and fabrication of an appropriate weep system at exterior masonry walls and the incorporation of an internal weep system for curtain wall assemblies.

Another affect of the joint system at the metal panels is tendency for streaking as the moisture drains off the surface of the metal panels onto materials below. This can be remedied with a yearly maintenance program, which includes washing down the exterior walls. The NHPS District must include this cost in its annual maintenance budget.

Concern no. 2:
Leaking flat roof systems are a plague to every building owner, and the roof warranty is only as good as the measures employed to minimize access and traffic on the roof. The drains will clog and freeze. The roof will pond and flood. Eventually the system will allow water to infiltrate the building. Flat roof leaks are unique because of the level of damage that can result over a large area from a single penetration in the roof system. Repairs to a roof can exceed hundreds of thousands of dollars over the life of a building. This does not include the cost of repairs to the interior space.

Concern no. 3:
Skylights are wonderful architectural elements. They provide the owner with inexpensive lighting for the interior areas of a building, but the introduction of skylights into the proposed roof system increases the risk of water infiltration. Skylight assemblies are also a source of risk for the Owner. In consideration of potential liabilities, these assemblies can be considered an attractive nuisance when installed in accessible roof areas.

In conclusion, all of the above represent concerns that have the potential to impact the life cycle cost of the proposed facility. If the NHPS is comfortable with the potential financial risk, the Architect will be advised to continue along his current the design path. If it is felt that these concerns are valid and require alternate design solutions, the Architect will be directed to make adjustments to his design. Please advise this office as to which action should be taken.

**EXHIBIT T**

# MEMORANDUM

**School Construction Program**

**New Haven Public Schools**
**REBUILDING OUR SCHOOLS**

To:         Paul Guidone, Chief Operating Officer

From:       Claude E. Watt Jr., Program Manager / Facilitator

Date:       Wednesday, February 07, 2001

Re:         Prince / Welch School Project
            SDE# 093-306 / City Project No.: 99-100-03

cc:         Thomas Roger, Susan Weisselberg, Wendell Harp

The following are the minimal considerations I feel should incorporated into the design as being prepared Architectural Environmental Collaborative International:

1. AECI has opted to complete the landscape planning in house. I strongly recommend that AECI employ the services of a professional Civil Engineer / Landscape Architect for the development of site.

2. If a flat roof system is allowed, the system should include modified slopes to prevent ponds and flooding, 25-year warranty, protected walk surfaces from roof access to equipment and provide roof drains with protection against freezing and clogging.

3. Provide curtain wall assemblies with provisions for internal weeping to remove water to exterior of building as glazing joints fail.

4. Exterior masonry is to be provided with weep system that prevents obstruction of the weep holes and protects the sub-straight.

5. The current layout does compliment the NHPS, SBBAC and BOE request that the facility have provisions for being partitioned off. The design scatters major public functions throughout facility, such that multiple points of control will be required to manage after hour's traffic within the facility. No solution short of re-arranging / clustering the Media Center, Gymnasium / Auditorium, Cafeteria / Food service, and Administration into a specific area of building.

6. Current location of the Cafeteria / Food Service space places the service/delivery yard and dumpster location along Ward Street. This arrangement places a group of unsightly activities in a front yard area. This space should be relocated.

7. AEIC has opted to push parking tight against the fence of the properties along Davenport. This condition limits the cushion between properties and Owner's options for the future expansion of the parking area. I recommend that parking be pulled back and traffic lanes adjusted to preserve a deep green buffer zone between Davenport Residences and school parking.

**EXHIBIT U**

New Haven Public Schools
School Construction Program

54 Meadow Street
New Haven, Connecticut 06519



REBUILDING OUR SCHOOLS

August 2, 2001                                    Sent Via Fax and First Class Mail

Mr. Wendell Harp, Principal
Architects Environmental Collaborative International, PC
300 Whalley Avenue
New Haven, CT 06511

Re.:     Prince Welch School Project
         (SDE#093-306, City No. 99-100-03)

Subj.:   **NOTICE TO PROCEED**

In the meeting held on July 25, 200, an oral directive was given to the Architect proceed with the design development phase of the Prince Welch Pre-K8 School project. This letter is issued to confirm that directive and the stipulations contained therein. These stipulations are as follows and considered by the Owner as terms and conditions of this notice to proceed, which are to be accepted by the Architect as its responsibility:

1.   Two independent construction cost estimates were prepared using the schematic design documents as presented by AECI. Each estimate indicated that projected cost of construction significantly exceeded the established budget. The Architect has rejected these findings. The Architect by proceeding with the design development and in accordance with the terms of its Agreement accepts that it shall develop an approved design, which is does not exceed the budget listed below.

2.   The Construction Manager, CM, will assist Owner in monitoring the progress relative to construct ability and cost during the design development phase. At some point the CM shall prepare another comprehensive cost estimate using the design development documents as prepared by AECI.

3.   If the value of the Project as indicated by the estimate exceeds the budget, the Architect shall assist in the 'Value Engineering' of the Project to bring the cost in line with the budget. This will be done at no additional cost to Owner.

4.   The Architect shall upon receipt of this written notice to proceed provide the Owner with a schedule outlining its anticipated progress of work from beginning to completion of design development phase. The Owner will request period updates of schedules.

The following budget has been adjustment to reflect our experience on recently constructed schools and to include a 3% escalation for start of construction one year from now.

|     | CONSTRUCTION | Adjusted Budget |
|-----|--------------|-----------------|
| a.  | Base Construction Cost | $16,418,000 |
| b.  | Less Insurance Cost | -615,675 |
| c.  | Construction Contingency @ 5% | 790,116 |
|     | **Total Cost** | **$16,592,411** |

The base construction cost (fixed limit of construction) is $16,418,000. The Architect is not to exceed this value.

File: 2445PrinceLtr 37                                                      1

AECI, August 2, 2001, Page 2

CM shall prepare its estimates with the cost of insurance included. During the actual bidding these values are to be adjusted to exclude the cost of insurance (OCIP).

The value of the construction contingency is in addition to the limit of construction cost, such that, the total funds available to the CM to construct are not to exceed the total cost of construction at $16,592,441. Included in the cost of construction is the trade / vendor cost, general requirements, and P&P / M&L Bonds. Excluded from this value is the CM Fee (Pre-construction Services, General Conditions, and 3% CM profit). The Contingency is an allowance and is not referred to as a component of the cost of construction, but it is available to the CM to offset the cost of construction under certain circumstances.

The cost for demolition by the CM trades is a separate budget, which is not shown. There are several other discretionary budgets, which are apart of the overall program budget. The scopes of work as related to these budgets are already supported within the Architect's Agreement. These budget values shall become apart of the cost of construction, as they are included within the CM scope of work.

Other Discretionary of Construction budgets are as follows:

| | Descriptions of Work | Budget |
|---|---|---|
| 1. | Food service Equipment | 150,000 |
| 2. | FF&E (Cafe, Gym, Classrooms, Admin, Offices, Media Center, etc.) | 600,000 |
| 3. | Interior /exterior signage | 30,000 |
| 4. | Auditorium Seating | 65,000 |
| 5. | Auditorium (Audio Visual & lighting) | 40,000 |
| 6. | A/V equip.(TV, TV Mounting Brackets, Video Cameras & Tripods) | 32,700 |
| 7. | Telephone equip./wiring | 37,000 |
| 8. | Communications cabling Systems (voice, data, video) | 180,000 |
| 9. | Integrated Communications System | 110,000 |
| 10. | Playground Equipment | 100,000 |
| | Total Discretionary of Construction budgets | $1,344,700 |

The above is provided so that all parties are clear as to the available funding for this project. These values are subject to change, but the values listed represent the best available information. As you proceed with design be ever vigilant your efforts to control cost. The CM is a team member and resource available to assist you in this effort.

Thank you in advance for your cooperation and assistance.

Sincerely yours,

Claude E. Watt Jr.
Program Manager

Cc: Paul Guidone
Thomas Roger
Susan Weisselberg
Michael Giordano
Ram Joglekar
Ron Markiewicz
Ann-Marie DeGraffenreidt

**EXHIBIT V**



**New Haven Public Schools**
**School Construction Program**

**54 Meadow Street**
**New Haven, Connecticut 06519**

REBUILDING OUR SCHOOLS

September 20, 2001                    Sent Via Fax and First Class Mail

Mr. Wendell Harp, Principal
Architects Environmental Collaborative International, PC
300 Whalley Avenue
New Haven, CT 06511

Re.:    Prince Welch School Project
        (SDE#093-306, City No. 99-100-03)

Dear Mr. Harp:
This letter is submitted to follow up on our telephone conversation dated
September 14, 2001.

There has been no substantive communications from your office since the
meeting of July 25, 2001 or the issuance of the written 'Notice to Proceed' with
the Design Development Phase, which was forwarded to you on August 02,
2001. We are concerned about the apparent lack of progress with the design
development phase.

The written notice to proceed directed AECI to submit of a schedule outlining the
anticipated progress of the design phase work. To date this item has not been
received. Please forward this information immediately.

The New Haven Board of Education is subject to severe programmatic and
financial impacts if this project is delayed any further. The following reflects
target dates that would allow the start of construction by July 2002:

| Description | Start | Completion |
|---|---|---|
| Design Development Phase | August 02, 2001 | November 02, 2001 |
| DD review and Estimate | October 19, 2001 @ 80% DD | November 09, 2001 |
| Notice to Proceed with CD | * November 16, 2001 | |
| Construction Document Phase | November 16, 2001 | February 15, 2002 |
| CD review and Estimate | January 24, 2002 @ 80% CD | February 24, 2002 |
| CSBC   approval of ED042 | * March 14, 2001 | |
| A&F approval of ED042 | * March 04, 2002 | |
| BOE approval of ED042 | * March 11, 2002 | |
| SFU / PCT | * March 18 or 19, 2002 (dates not scheduled) | |

AECI, September 20, 2001, Page 2 of 2

| SFU review and approval | March 26, 2002 | May 27, 2002 |
|---|---|---|
| Architect release CD for Bid | * May 28, 2002 | |
| CM to Advertise and Bid | June 02, 2002 | June 28, 2002 |
| A&F Review and Approve Amendment to CM Agreement | * July 15, 2002 | |
| BOE Review & Approve Amendment to CM Agreement | * July 22, 2002 | |

We would welcome your comments and recommendations regarding the above-suggested schedule. Our objective is to develop a strategic plan that will assure the completion of this project.

Thank you in advance for your cooperation and assistance.

Sincerely yours,

Claude E. Watt Jr.
Program Manager

Cc:      Paul Guidone
         Thomas Roger
         Susan Weisselberg
         Michael Giordano
         Ram Joglekar
         Ron Markiewicz
         Ann-Marie DeGraffenreidt

**EXHIBIT W**

**New Haven Public Schools**
**School Construction Program**

54 Meadow Street
New Haven, Connecticut 06519



REBUILDING OUR SCHOOLS

Tuesday, September 25, 2001                    Sent Via Fax and First Class Mail

Mr. Wendell Harp
Architects Environmental Collaborative International, PC
300 Whalley Avenue
New Haven, CT 06511

Re.:    Prince Welch School Project
        (SDE#093-306, City No. 99-100-03)

Dear Mr. Harp:
This letter is submitted as a confirmation of our telephone conversation dated September 24, 2001.

It is my understanding that we will not be meeting on September 25, 2001, as requested to assess the status and progress of the design development documents. Your office began working on the design development phase during the week ending September 21, 2001. You will forward a four-month schedule outlining the execution of design development phase from start to finish. The schedule shall be sent via fax by end of day September 25, 2001.

You expressed concerns about getting paid in a timely manner. It is the position of the NHPS SCP that as long as AECI performs in compliance with it's Agreement and submits the required deliverables it shall be paid without delay.

In consideration of any past confusion, AECI is directed to submit the following:
1.  Letters from the AECI consultants, on their letterhead, certifying that the firm has received a fully executed Agreement from AECI for the design and construction phase services of this project.
2.  Provide a sample invoice format reflecting the various services outlined in Agreement and schedule of values.
3.  Provide a detailed schedule of values, which identifies the value of the consultant agreements by the applicable design and construction phase services.
4.  Provide a listing of the anticipated content of the four DD phase deliverables (based on four month schedule) and indicate what percentage complete each submission will represent.

I will follow up immediately upon receipt of your initial schedule. This information will be reviewed and incorporated in to the NHPS SCP project schedule.

File: 2445PrinceLtr 40

AECl, September 25, 2001, Page 2 of 2

During the DD phase there are three conditions that are applicable:
1. The SBBAC will be convened on a monthly basis (minimum) to review and comment on design. It shall also be allowed to participate in refining the space program.
2. The NHPS SCP will require validation that the project cost is within the budget as stated in the August 02, 2001, 'Notice to Proceed'.
3. I will attend weekly progress meetings in your office. Allow one hour for these meetings.

Contact me if you have any questions or need additional information. Your due diligence is required to meet program objectives.

Thank you in advance for your responsiveness and assistance.

Sincerely yours,

Claude E. Watt Jr.
Program Manager


Cc:        Paul Guidone
           Thomas Roger
           Ram Joglekar
           Ron Markiewicz
           Gina Wells, Welch Annex
           Ann-Marie DeGraffenreidt
           Mike Giordano, Giordano Construction

**EXHIBIT X**

**Watt Jr., Claude E.**                                                    INTER OFC /RW

⌐m:                     Roger, Thomas
⌐nt:                    Monday, October 15, 2001 1:39 PM
To:                     Watt Jr., Claude E.
Subject:                RE: MEP Consultant

I agree.

-----Original Message-----
From: Watt Jr., Claude E.
Sent: Monday, October 15, 2001 11:09 AM
To: Roger, Thomas
Cc: Paul Guidone (E-mail)
Subject: FW: MEP Consultant


Wendell Harp has failed to submit the requested certifications, which confirmed that
consultants have been contracted by AECI to provide the required professional design
services. These consultants would provide those services that are beyond the professional
capacity of AECI. Such services are required to produce buildable construction documents
and provide construction administrative services. These basic services include:

1.      Civil Engineering - Site Design (utilities, grading, site lighting, drainage,
landscape, fencing,
        parking, pedestrian circulation and so on)
2.      Mechanical Engineering - Heating, air conditioning, ventilation, fire protection,
and plumbing
3.      Electrical Engineering - Electrical power distribution, lighting, control wiring,
egrated
        telecommunication systems, telephone system, security, and life safety systems,
        Structural Engineering - Super structure, foundation systems, and miscellaneous
metal fabrications
5.      Surveyor - Existing site layout and A2 survey
6.      Geotechnical - Evaluation of existing site soil conditions and provides soil bearing
design
7.      Food Service Consultant - design and layout of kitchen and food service equipment
8.      Code Consultant - Evaluates design for compliance with governing codes and
regulations

My concern is that AECI is piece milling these services. If this assumption is correct the
Owner would receive a marginal quality of services, which would have an adverse impact on
the delivery of a buildable set of construction documents.

Initially, I requested that AECI submit an updated list of its consultants. Each
consultant was to submit on their letter head a written certification that they have been
commissioned to provide the aforementioned services.  I will continue to pursue AECI
compliance with this request.

The memo shown below from Giordano Construction reinforces my concern that AEIC is not
fully commissioning the required services.

To date AECI has responded as follows:
*       Agreed to forward a schedule, but has not done so;
*       Rejected the notion of meeting with the SBBAC for any input on design;
*       Rejected my request to meet with him at his office weekly to review the progress on
DD phase;
*       Refused to submit copies of consultant agreement;
        Met with the PM on Friday, 10/12/01, to review various program issues;
        Rejected the validity of the Schematic design estimates as prepared by Giordano and
⌐..bane;
*       AECI has not submitted any information that indicates how AECI intends reduce the
project cost overruns resulting from its design;

1

Recommendation:
1.   No payments are to be released to AECI until it provides the information certifying
le of consultants;
     Owner to inform AECI that meeting weekly with Program Manager is not optional;
     Owner to inform AECI that meetings with SBBAC is not optional;
4.   Require AECI to fully participate in the VE session, which will be conducted the end
of DD;
5.   Reduce the scope of service to be provided by AECI, such that, the Fixtures,
Furniture and Equipment be designed by a third party in lieu of AECI;
6.   Commission a third party to provide a coordination review of the 100% construction
documents prior to submitting them to SFU for PCT review; and
7.   Require that AECI address all coordination review comments and update CDs prior to
issuance to the SFU for PCT review.


-----Original Message-----
From: Mike Giordano [mailto:mfg@giordanomail.com]
Sent: Friday, October 12, 2001 4:53 PM
To: Watt Jr., Claude E.
Subject: MEP Consultant


I talked to Peter Case at Engineering Design Group today and he told me
that he does have a deal with Wendel for D/D drawings. He has not done
anything as of yet because he has no backgrounds from Wendel to work
with.