**EXHIBIT QQ**



School Construction Program

New Haven Public Schools
REBUILDING OUR SCHOOLS

# Transmittal

To:    A.E.C.I.
       300 Whaley Avenue
       New Haven , CT 06511

Date:            Thursday, April 24, 2003
GBCo JN:         2445
Project:         Prince Welch School
SDE No:          093-0306
Attention:       Wendell Harp, Architect
Prepared By: Claude E. Watt, Jr.,  Program Manager.

**We are sending the following items:**

- [x] Attached
- [ ] Shop Drawing
- [ ] Copy  of  Letter

- [ ] Under separate Cover
- [ ] Prints
- [ ] Change order

- [ ] Originals
- [ ] Specifications

- [ ] Samples
- [x] Agreement

New Haven Public
Schools
ool Construction
Program

54 Meadow Street
8th Floor
New Haven, CT 06519

Tel: 203/946-6808
Fax: 203/946-8920

| Copies | Date | Drawing No. / Spec. No. | Description |
|--------|------|-------------------------|-------------|
| 1 each | 2/03 | | DRAFT: new Standard Form of Agreement for Professional Design Services |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**These are transmitted as checked below**

- [ ] For approval
- [ ] As requested

- [x] For your use
- [ ] For review and comment

- [ ] Approved
- [ ] Incorporate notations

- [ ] Rejected
- [ ] Revise and resubmit

**Remarks:**  The attached document is presented for your review.  It represents the updated Form of Agreement Between the Owner and Architect. This document will replace and Supersede your current Agreement. Forward any questions and comments to my attention. I want to get this item on the May 5, 2003 BOE A&F Committee meeting agenda.

Xmittal#    22
File:   PRINCE WELCH

Copy to:    Thomas Roger
Susan Weisselberg, File

Signature:

## AGREEMENT BETWEEN OWNER AND ARCHITECT

AGREEMENT

made as of the        day of        in the year of 2003.

BETWEEN the New Haven Board of Education ("Owner")

and Architects Environmental Collaborative International, PC ("Architect")

The Project is the Prince Welch Pre-K8 School
(State Dept. of Education No. 093-0306 and City of New Haven No. 99-100-03)

The Construction Manager is Giordano Construction Company

The Program Manager is Gilbane Building Company

The Owner and the Architect agree as set forth below:

---

## DEFINITIONS

0.1        *Applicable Laws* shall mean all laws, ordinances, codes, statutes, rules, regulations, orders, rulings, and decisions of local, County, State, Federal and other authorities having jurisdiction, including the regulations and requirements of the Occupational Safety and Health Administration, and all provisions of any Federal, State, County, or municipal health, safety and building codes and environmental laws and regulations applicable to the performance of the Services and the Work.

0.2        *Construction Manager* shall mean the construction management firm or professional hired by the Owner to construct the Project pursuant to a separate agreement, and shall include all of the said Construction Manager's consultants and subcontractors. The Construction Manager is identified above, in the preamble to this Contract. The Owner reserves the right to change the Construction Manager.

0.3    *Construction Documents* shall mean the drawings, specifications and other documents, prepared by the Architect, which set forth in detail the information which the Architect deems necessary to construct the Work.

0.4    *Contract* shall mean this Contract, including all attachments and exhibits appended hereto and all other documents incorporated by reference herein, as may be amended from time to time.

0.5    *Contract Documents* shall mean the Contract, the Construction Documents, and any other documents incorporated therein by reference, as may be amended from time to time.

0.6    *Contractor* or *General Contractor* shall mean "Construction Manager".

0.7    *Day* shall mean calendar day unless specifically provided otherwise herein.

0.8    *Design Development Documents* shall mean those progress drawings, specifications and other documents, prepared by the Architect which set forth the information in less than complete detail but which are used during the design process to plan and develop the Construction Documents. These shall include, but are not limited to, Schematic and Design Development Phase documents.

0.9    *Educational Technology* shall mean data wiring, computers, servers, MCER/ICER rooms, projectors / smart boards, cable TV, cabling distribution, integrated communication systems and similar electronic mediums as outlined in the Standard Specifications attached here as Exhibit K.

0.10    *General Conditions* shall mean the General Conditions of the Contract for Construction attached hereto and expressly incorporated herein, as amended from time to time.

0.11    The term "Contract Sum", when used in the General Conditions with respect to this Contract, shall mean "Guaranteed Maximum Price".

0.12    *Owner* shall mean the party first identified above and includes its officers, employees, and agents.

0.13    *Program Manager* shall mean the party identified above who is the agent for the Owner and who manages the School Construction Program and this project.

0.14    *Project* shall mean that which is so identified above, the total construction of which the Work performed under the Contract Documents may be

the whole or a part, and which may also include construction performed by the Owner or by separate contractors.

0.15    *Project Representative* shall mean the Architect's project representative(s) who assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representative(s) shall be as set forth in an exhibit to be incorporated in the Contract Documents.

0.16    *Project Site* shall mean that area where the Project is to be constructed, as delimited in the Construction Documents.

0.17    *Project Team* shall mean the Owner, Construction Manager, and the Architect.

0.18    *Services of the Architect* shall mean all efforts, actions, and activities which are required of the Architect during the course of the Project.

0.19    *Work* shall mean all construction required by the Contract Documents, including all labor, materials, and equipment necessary therefor.

Except as expressly provided herein all other terms and conditions shall have the meaning as set forth in the General Conditions.

---

ARTICLE 1
ARCHITECT'S RESPONSIBILITIES

## 1.1    ARCHITECT'S SERVICES

1.1.1 The Architect's services consist of those services performed by the Architect, Architect's employees and Architect's consultants as enumerated in Articles 2 and 3 of this Agreement and any other services included in Article 12.

1.1.2 The Architect's services shall be provided in conjunction with the services of a Construction Manager as described in the Agreement Between Owner and Construction Manager.

1.1.3 Architect shall exercise the same degree of professional care and diligence in the rendition of all services under this Agreement as is exercised by architectural services firms which provide design services to schools located in

the State of Connecticut, and all of the Architect's services under this Agreement shall be performed as expeditiously as is consistent with said standards. The Architect shall submit for the Owner's approval and the Construction Manager's information a schedule for the performance of the Architect's services which may be adjusted as the Project proceeds, and shall include allowances for periods of time required for the Owner's and Construction Manager's review and for approval of submissions by authorities having jurisdiction over the Project. Time limits established by this schedule approved by the Owner shall not, except for reasonable cause, be exceeded by the Architect or Owner. Time limits for the Schedule of Basic Services shall be in compliance with Exhibit G (Schedule of Basic Services). Any adjustments to the schedule shall be void and of no force and effect until such adjustments are agreed to in writing by Owner and Architect.

1.1.4  The Services covered by this Agreement are subject to the time limitations contained in Subparagraph 11.5.1.

1.1.5  The Owner's designated representative is the Superintendent of Schools or his designee, who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization.

Day-to-day responsibilities for Owner's decisions on matters concerning estimates and schedules, construction budgets, and changes in the Work may be delegated by the Owner's designated representative to the Program Manager. To this end, the Owner has hired said Program Manager to assist with the implementation of the School Construction Program.

The Program Manager will be responsible, under the supervision of the Superintendent of Schools, or his designated representative, for managing and overseeing the activities of the Architect, the Construction Manager, and any Contractors or Consultants that will have responsibilities on or otherwise become engaged in the Project. For all matters under this Agreement, the Architect shall report and take direction from the Owner through either the Owner's designated representative or the Program Manager and its consultant staff. All changes to any of the services specified under this Agreement must be approved by Owner under the direction of either the Owner's designated representative or the Program Manager.

The Architect agrees to this relationship and shall cooperate with the Program Manager and the Construction Manager in good faith in an effort to promote the speedy and efficient construction of the Project. Architect agrees it has anticipated the cost of this relationship and shall not request additional compensation except as specifically provided herein.

## ARTICLE 2

## SCOPE OF ARCHITECT'S BASIC SERVICES

## 2.1    DEFINITION

2.1.1  The Architect's Basic Services consist of those described in Paragraphs 2.2 through 2.6 and any other services identified in Article 12 as part of Basic Services, and include normal structural, mechanical and electrical engineering services, plumbing, fire protection, educational technology, landscape design and site civil services. With the assistance of the Program Manager the Architect shall identify for the Owner all consultants required in connection with the Project.  All design work shall conform to the New Haven School Construction Program Design Standards referenced in section 12.12 and the New Haven School Construction Program Energy Policy referenced in section 12.13.  The Project will consist of separate Design Phases.  No work shall be undertaken by Architect hereunder in connection with either the Design Development Phase, Construction Documents Phase, Bidding or Negotiation Phase or Construction Phase until it receives written authorization to proceed with each such subsequent Design Phase from the Owner.  No termination penalties are to be payable in the event Owner does not proceed with any Phase. Refer to section 3.3.9 for phased submissions to SFU.

## 2.2    SCHEMATIC DESIGN PHASE

2.2.1  The Architect, in consultation with the Owner and any other persons or entities designated by Owner, shall ascertain the requirements of the Project and arrive at a mutual understanding of such requirements with the Owner.  The Architect shall attend the State Department of Education State Facilities Unit Preparatory Meeting and Plan Completion Test Meetings and the life cycle analysis if required by the State Department of Education School Facilities Unit.

2.2.2  The Architect shall review with the Owner and the Construction Manager proposed site use and improvements; selection of materials, building systems and equipment; and methods of Project delivery.  The Architect shall have prepared, for approval by the Owner, a survey as described in Paragraph 4.6.

2.2.3  The Architect shall review with the Owner and the Construction Manager alternative approaches to design and construction of the Project.

2.2.4  The Architect shall identify in writing as an Exhibit to this Agreement the key personnel  to be assigned by the Architect to this Project, including a Project Manager, Project Architect, and other key staff.  All individuals so listed shall remain in their respective assignments for the duration of the Project, unless their removal or change of duties is approved in advance by the Owner.

2.2.5 Based on the decisions of the Owner as to its program, schedule and construction budget requirements, the Architect shall prepare for approval by the Owner, Schematic Design Documents consisting of drawings and other documents illustrating the scale and relationship of Project components.  The

schematic design documents to be prepared in accordance with Exhibit H and shall include, but are not limited to the following: Site plan(s); Schedule of building types; scale plan of all buildings; wall systems and elevations; outline specifications; project site analysis of codes, ordinances and regulations; three dimensional line drawings; and reconciliation with program areas.

2.2.6 At intervals appropriate to the Progress of the Schematic Design Phase and as required by the Owner, the Architect shall provide schematic design studies for the Owner's review and the Construction Manager's information.

2.2.7 Where required, the Architect shall perform an analysis to determine if the project can achieve Renovation Status as specified in section 12.11 and under the Comparable to New Guidelines specified in Exhibit C. If the analysis determines that Renovation Status is not achievable, the Architect will establish and recommend to the Owner a strategy for minimizing the ineligible reimbursement costs on the project for approval by the Program Manager and the Owner.

2.2.8 In the further development of the drawings and specifications during this and subsequent phases of design, the Architect shall review any estimates of Construction Cost and Construction Schedule provided by the Program Manager and/or the Construction Manager under the Program Manager and/or the Construction Manager's agreements with the Owner. Any significant discrepancies perceived by the Architect (based on the information available and the Architect's experience with similar projects of this type) which constitute, in the opinion of the Architect, an obstacle to in meeting either the budgeted Construction Cost or the Construction Schedule based on the information available and the Architect's experience with similar projects of this type must be promptly reported to the Owner, with suggested modifications to enable the Project to meet the approved budget and schedule.

2.2.9 Upon completion of the Schematic Design Phase, the Architect shall provide drawings, outline specifications, a scale model if required by Owner and other documents for the Owner's approval and the Construction Manager's information. The architect may be asked to present the Schematic Design to an Owner sponsored peer review panel for evaluation and assessment. The specific documentation required to be submitted to the Owner for Approval to satisfy the milestone for the completion of Schematic Design Phase is detailed in Exhibit H (Design Documentation Standards), attached hereto and incorporated herein.

2.3    DESIGN DEVELOPMENT PHASE

2.3.1 Based on the approved Schematic Design Documents and any adjustments authorized by the Owner in the program schedule or construction budget, the Architect shall prepare Design Development Documents for the Program Manager and Construction Manager's review and the Owner's approval.  The Design Development Documents shall be based upon data and estimates prepared by the

Program Manager and Construction Manager and shall consist of drawings and other documents that establish and describe the size and character of the Project including, without limitation, all architectural, structural, mechanical and electrical systems, materials and such other elements as may be appropriate. Specific deviation from any city standard shall be identified for approval at this stage, see section 12.12.1.

2.3.2 As and when requested by the Owner, the Architect shall provide drawings and other documents which depict the current status of design development for the Owner's review and the Construction Manager's information.

2.3.3 In order to complete the Design Development Phase, the Architect shall provide drawings, outline specifications and other documents for the Owner's approval and the Construction Manager's information and review. At the Owner's option, the architect shall present the Design Development to an Owner sponsored peer review panel for evaluation and assessment. The specific documentation required to be submitted to the Owner for Approval to satisfy the milestone for the completion of Design Development is detailed in Exhibit H (Design Documentation Standards), attached hereto and incorporated herein. Reasonable changes suggested by this review will be incorporated at no cost to the Owner.

2.4    CONSTRUCTION DOCUMENTS PHASE

2.4.1 Based on the approved Design Development Documents and any further adjustments authorized by the Owner in the scope or quality of the Project or in the construction budget, the Architect, utilizing data and estimates prepared by the Construction Manager, shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project. The Construction Documents shall comply with all applicable laws, statutes, ordinances, codes, rules and regulations. Such compliance shall include consultation with the local building officials regarding local interpretations of building codes, ordinances, etc. The Architect shall also be responsible for and shall advise the Owner regarding, compliance with all requirements of the Connecticut State Department of Education School Facilities Unit, including without limitation, compliance with the Connecticut State Department of Education School Construction Grants Manual, Procedures for Local Education, Agencies (April, 1987; revised).

2.4.2 As and when requested by the Owner, the Architect shall provide Drawings and Specifications for the Owner's and the Construction Manager's review. This shall include coordination of the Independent Document Review as specified in section 12.14 and Exhibit M.

2.4.3 Upon completion of the Construction Documents Phase, the Architect shall provide Construction Documents for the Owner's approval and the Construction Manager's information.

2.4.4 The Architect shall assist the Owner and Construction Manager in the preparation of the necessary bidding information, bidding forms, the Conditions of the Contracts, and the forms of Agreement between the Owner and the Contractors. The Architect shall assist the Construction Manager in issuing bidding documents to bidders and conducting pre-bid conferences with prospective bidders. The Architect, with the assistance of the Construction Manager, shall respond to questions from bidders, and shall issue addenda. As part of Basic Services, the Architect shall assist the Construction Manager in developing individual bid packages.

2.4.5 The Architect shall advise the Owner and Construction Manager of all requirements for filing documents for the approval of governmental authorities having jurisdiction over the Project and will assist the Owner in filing all applications required for such approvals.

2.4.6 In connection with the securing of permits and approvals, the Architect shall provide such testimony and copies of documents (the Architect being compensated for such copies as a Reimbursable Expense pursuant to Article 10 hereof) and information developed by it and its consultants as may be necessary or appropriate for the purpose of assisting the Owner in securing such permits and approvals, all as part of the Architect's fee for Basic Services.

2.5    BIDDING OR NEGOTIATION PHASE

2.5.1 The Architect, following the Owner's approval of the Construction Documents and of the Construction Manager's latest estimate of Construction Cost, shall assist the Construction Manager in obtaining bids or negotiated proposals and assist in preparing contracts for construction including preparation of information for reasonable bid alternates. Refer to section 3.3.9 for phased submissions of bidding packages to SFU.

2.6    CONSTRUCTION PHASE—ADMINISTRATION
        OF THE CONSTRUCTION CONTRACT

2.6.1 The Architect's responsibilities to provide Basic Services for the Construction Phase under this Agreement commences with the award of the Contract for construction and terminates at the earlier of the issuance to the Owner of the final Project Certificate for Payment or 90 days after the date of Substantial Completion of the Work *and* the Owner's written acceptance of the completed Project or written notice from the Owner that services are no longer required.

2.6.2   The Architect will be responsible for assisting the Program Manager in the administration of the Contract for construction in all matters pertaining to interpretation of the Design Documents and other services under this Agreement.

2.6.3 Duties, responsibilities and limitations of authority of the Architect shall not be restricted, modified or extended without written agreement of the Owner and Architect.

2.6.4 The Architect shall be a representative of and shall advise and consult with the Owner (1) during construction until final payment to the Contractors is due and the Owner has accepted the completed Project in writing, and (2) as an Additional Service at the Owner's direction from time to time during the correction period described in the Contracts for Construction.  The Architect shall have authority to act on behalf of the Owner only to the extent provided in this Agreement.

2.6.5 The Architect shall visit the construction site at least weekly to become familiar with the progress and the quality of the work and to determine if the work is being performed in accordance with the Contract Documents and approved Contract Schedule. The Architect shall coordinate scheduling of site visits with the Construction Manager and all architect contacts with trade contractors shall be through the Construction Manager. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work.  On the basis of on-site observations as an architect, the Architect shall keep the Owner informed of the progress and quality of the Work, and shall endeavor to guard the Owner against defects and deficiencies in the Work. (*More extensive site representation may be agreed to as an Additional Service as described in Paragraph 3.2.1.*)  The Architect shall promptly advise the Owner of any work which the Architect believes is not in conformity with the Contract Documents.

2.6.5.1     To the extent that any Contract Document or Specification is defective due to Architect's negligence as determined through application of the provisions of Article 7, it will be promptly corrected by Architect at no cost to the Owner, and the Architect will promptly reimburse the Owner, up to the limits of the Architect's insurance policy, for all direct damages, if any, resulting from the use of such defective Contract Document or Specification. The Owner's approval, acceptance, use of or payment for all or any part of the Architect's services hereunder or of the Project itself shall in no way alter the Architect's obligations or the Owner's rights hereunder.

2.6.6 The Architect shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are the Contractor's responsibility under the Contracts for Construction. Although the Architect shall not be responsible for the Contractors'

schedules or failure to carry out the Work in accordance with the Contract Documents, the Architect shall have the responsibility to report any such failure or suspected failure to Owner immediately upon discovery. The Architect shall not be responsible for the performance by the Construction Manager of the services required by the Construction Manager's agreement with the Owner. The Architect shall not have control over or charge of acts or omissions of the Contractors, Subcontractors, or their agents or employees, or of any other persons performing services or portions of the Work, but shall nonetheless have the responsibility promptly to report same to the Owner on discovery or reasonable suspicion.

2.6.7  The Architect shall at all times have access to the Work wherever it is in preparation or progress.

2.6.8  Project communications to the Owner by and with the Architect's consultants shall be through the Architect.

2.6.9  The Architect will be responsible for review and approval of the Construction Manager's monthly invoices for payment. In accordance with the Contract Documents or when requested by the Program Manager, the Architect will inspect the work, evaluate the progress and certify the trade contractor's monthly invoices.

2.6.9.1    The Architect's certification for payment shall constitute a representation to the Owner, based on the Architect's observations at the site provided in Subparagraph 2.6.5, on the recommendations of the Construction Manager and on the data comprising the Contractors' Applications for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents, to results of subsequent tests and inspections, to minor deviations from the Contract Documents correctable prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment shall further constitute a representation that the Contractor is entitled to payment in the amount certified.

2.6.9.2    The issuance of a Certificate of Payment shall not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) exhaustively or continuously reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment other than the existence of appropriate lien waivers from the Contractor and Subcontractors or (4) ascertained how or for what

purpose the Contractor has used money previously paid on account of the Contract Sum.

2.6.10 The Architect shall have authority, after notification to the Construction Manager, to reject Work which does not conform to the Contract Documents and shall have the responsibility to reject Work which does not conform to the design concept expressed in the Contract Documents. Whenever the Architect considers it necessary or advisable for implementation of the intent of the Contract Documents, the Architect will have the authority, upon written authorization from the Owner, to require additional inspection or testing of the Work in accordance with the provisions of the Contract Documents, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Construction Manager, Contractors, Subcontractors, material and equipment suppliers, their agents or employees or other persons performing portions of the Work.

2.6.11 The Architect shall review and approve or take other appropriate action upon Contractors' submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents, and determining whether Work, if completed in accordance with such Shop Drawings, Product Data and Samples, will be materially in conformance with the design concept expressed in the Contract Documents. The Architect's action shall be taken with such reasonable promptness as to cause no delay in the Contractors' Work or in construction by the Owner's own forces, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities or for substantiating instructions for installation or performance of equipment or systems designed by the Contractors, all of which remain the responsibility of the Contractors to the extent required by the Contract Documents.

The Architect's review shall not constitute approval of jobsite safety precautions or, unless otherwise specifically stated by the Architect, of construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component. When professional certification of performance characteristics of materials, systems or equipment is required by the Contract Documents, the Architect shall be entitled to rely upon such certification to establish that the materials, systems or equipment will meet the performance criteria required by the Contract Documents.

2.6.12 The Architect shall review and sign or take other appropriate action on Change Orders and Construction Change Directives prepared by the Construction Manager for the Owner's approval and execution in accordance with the Contract Documents.

2.6.13 The Architect may authorize minor changes in Work not involving an adjustment in a Contract Sum or an extension of a Contract Time which are not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order issued through the Construction Manager.

2.6.14 The Architect, assisted by the Construction Manager, shall conduct inspections to determine the date or dates of Substantial Completion and the date of final completion. The Architect shall generate a "punch list", as needed and requested by the Program or Construction Manager, of all outstanding items of work to assist and facilitate the completion of the Project by the Construction Manager. The Architect shall forward to the Owner warranties and similar submittals required by the Contract Documents which have been received from the Construction Manager. The Architect shall issue a final Project Certificate for Payment upon compliance with the requirements of the Contract Documents.

2.6.15 The Architect shall interpret and decide matters concerning performance of the Owner and Contractor under the requirements of the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests shall be made with reasonable promptness and within any time limits agreed upon.

2.6.16 Interpretations and decisions of the Architect shall be consistent with the intent of and reasonably inferable from the Contract Documents and shall be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect shall endeavor to secure faithful performance by both Owner and Contractors, shall not show partiality to either, and shall not be liable for results of interpretations or decisions so rendered in good faith and in the absence of negligence.

2.6.17 The Architect shall render written decisions within a reasonable time on all claims, disputes or other matters in question between the Owner and Contractors relating to the execution or progress of the Work as provided in the Contract Documents.

2.6.18 The Architect and sub-consultants will participate in the commissioning of the project and startup process and assist any third party commissioning agents engaged by the Owner for such purposes.


ARTICLE 3

ADDITIONAL SERVICES

3.1    GENERAL

3.1.1  The services described in this Article 3 are not included in Basic Services unless so identified in Article 12 or required due to the fault of the Architect or the Architect's failure to perform in accordance with the terms of this Agreement. The services provided in this Article 3 deemed to be outside Basic Services shall be paid for by the Owner as provided in this Agreement in addition to the compensation for Basic Services. The services described under Paragraphs 3.2, 3.3 and 3.4 shall be provided only if authorized or confirmed in writing by the Owner. If services described under Contingent Additional Services in Paragraph 3.3 are required due to circumstances beyond the Architect's control, the Architect shall notify the Owner prior to commencing such services. If the Owner deems that such services described under Paragraph 3.3 are required, the Owner shall give prompt written notice to the Architect. If the Owner indicates in writing that all or part of such Contingent Additional Services are not required, the Architect shall have no obligation to provide those services. Notwithstanding anything to the contrary in this Agreement, the Owner shall not be responsible to pay and the Architect shall not be entitled to receive compensation for any services contemplated under Paragraphs 3.2, 3.3 or 3.4 unless authorized in writing by the Owner.

3.2    PROJECT REPRESENTATION
       BEYOND BASIC SERVICES

3.2.1  If more extensive representation at the site than is described in Subparagraph 2.6.5 is required, the Architect shall provide one or more Project Representatives to assist in carrying out such additional on-site responsibilities.

3.2.2  Project Representatives shall be selected, employed and directed by the Architect, and the Architect shall be compensated therefore as agreed by the Owner and Architect.

3.2.3  Through the observations by such Project Representatives, the Architect shall use its best efforts to provide further protection for the Owner against defects and deficiencies in the Work.

3.3    CONTINGENT ADDITIONAL SERVICES

3.3.1  Making major revisions in Drawings, Specifications or other documents when such revisions are:

   (1)  inconsistent with approvals or instructions previously given by the Owner, including revisions made necessary by adjustments in the Owner's program or Project budget.

(2)    required by the enactment or revision of codes, laws or regulations subsequent to the preparation of such documents; or

(3)    due to changes required as a result of the Owner's failure to provide direction within ten (10) business days after the Architect has given the Owner notice of the fact that a decision is required or, in the event of an emergency, within such reasonable shorter period of time after the Architect has given Owner notice that such emergency condition exists and that an earlier response is required, which decision if not rendered within that time frame, will give rise to additional costs.

Architect will advise Owner in writing prior to making any such revisions subject to this Subparagraph whether such revisions are minor or major revisions.

3.3.2  Providing services required because of significant changes in the Project, including, but not limited to, changes in size, quality, complexity, the Owner's or Construction Manager's schedule.

3.3.3  Preparing Drawings, Specifications and other documentation and supporting data, evaluating Contractor's proposals and providing other services in connection with Change Orders and Construction Change Authorizations, unless such Change Orders or Construction Change Authorizations were required or are appropriate by reason of an oversight, error or deficiency in the Drawings, Specifications or other documentation and supporting data prepared by the Architect.

3.3.4  Providing services in connection with evaluating substitutions proposed by Contractors, and making subsequent revisions to Drawings, Specifications and other documentation resulting there from.

3.3.5  Providing consultation concerning replacement of Work damaged by fire or other cause during construction, and furnishing services required in connection with the replacement of such Work.

3.3.6  Providing services made necessary by the termination or default of the Construction Manager or a Contractor, by major defects or deficiencies in the Work of a Contractor, or by failure of performance of either the Owner or a Contractor under a Contract for Construction.

3.3.7  Providing services in evaluating an extensive number of claims submitted by a Contractor or others in connection with the Work.

3.3.8  Providing services in connection with a public hearing, or legal proceeding except where the Architect is party thereto or, where such hearing or legal proceeding is based upon a decision of the Architect rendered hereunder or relates to the application for permit or approval required for the completion of the Work, provided, however, that to the extent that a hearing or proceeding is based upon a decision of the Architect and a judgment or decision is rendered validating or approving the Architect's decision, the Architect shall be entitled to additional compensation for such services.

3.3.9  Preparing documents for alternate, separate or sequentially phased submissions to SFU beyond three construction and two FF & E phases (five total) to facilitate phased bidding and construction may be considered an additional service.

3.4     OPTIONAL ADDITIONAL SERVICES

3.4.1  Providing financial feasibility or other special studies.

3.4.2  Providing planning studies, site evaluations or comparative studies of prospective sites.

3.4.3  Providing special surveys or environmental studies.

3.4.4  Providing services relative to future facilities, systems and equipment.

3.4.5  Providing coordination of construction performed by the Owner's own forces and coordination of services required in connection with construction performed and equipment supplied by the Owner.

3.4.6  If requested by the Owner, providing services in connection with the work of separate consultants retained by the Owner and not identified in this contract.

3.4.7  Providing estimates of Construction Cost.

3.4.8  Providing detailed quantity surveys or inventories of material and equipment.

3.4.9  Providing interior design and other similar services required for or in connection with the selection, procurement or installation of furniture, furnishings and related equipment.

3.4.10 Providing services for planning tenant or rental spaces.

3.4.11 Making investigations, inventories of materials or equipment, or valuations and detailed appraisals of existing facilities.

3.4.12 Providing assistance in the utilization of equipment or systems such as testing, adjusting and balancing, preparation of operation and maintenance manuals, training personnel for operation and maintenance, and consultation during operation.

3.4.13 Providing services after issuance to the Owner of the final Project Certificate for Payment, or in the absence of a final Project Certificate for Payment, more than 90 days after the date of Substantial Completion of the Work.

3.4.14 Providing services of consultants for other than architectural, structural, mechanical and electrical engineering, plumbing, fire protection, landscape design, and site civil services portions of the Project provided as a part of Basic Services.

3.4.15 Providing any other services not otherwise included in this Agreement or not customarily furnished in accordance with generally accepted architectural practice.

ARTICLE 4

OWNER'S RESPONSIBILITIES

4.1     The Owner shall consult with the Architect regarding requirements for the Project, including a program which shall set forth the Owner's objectives, schedule constraints and criteria, including space requirements and relationships, flexibility, expandability, special equipment, systems, and site requirements.

4.2     The Owner shall establish and update an overall budget for the Project based on consultation with the Construction Manager and the Architect, which shall include the Construction Cost, the Owner's other costs and reasonable contingencies related to all of these costs.

4.3     If requested by the Architect, the Owner shall furnish evidence that financial arrangements have been made to fulfill the Owner's obligations under this Agreement.

4.4     The Owner shall designate a representative authorized to act on the Owner's behalf with respect to the Project.   The Owner or such authorized representative shall render decisions in a timely manner pertaining to documents submitted by the Architect in order to avoid unreasonable delay in the orderly and sequential progress of the Architect's services and the Project.

4.5    The Owner shall retain a construction manager to build the Project. The Architect shall not be responsible for actions taken by the Construction Manager.

4.6    The Owner shall identify the Project site area and the Architect shall provide the site survey for the Owner's approval under Subparagraph 2.2.2. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures, adjacent drainage, rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data pertaining to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a Project benchmark.

4.7    The Architect shall furnish the services of geo-technical engineers when such services are requested by the Owner. Such services may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, and ground corrosion and resistivity tests, including necessary operations for anticipating subsoil conditions, with reports and appropriate professional recommendations.

   4.7.1 The Owner may, at its discretion, furnish the services of other consultants when such services are reasonably required by the scope of the Project. If required, the Owner shall be responsible for the following consultants and services at Owner's expense: hazardous materials testing and abatement consultant, special inspection, construction testing. The Architect shall coordinate the preparation by one or more consultants and contractors of the specifications for any asbestos, lead paint removal or any other third party consultant required in connection with the Project and shall integrate such specifications into the Drawings and Specifications for the Project

4.8    The Owner shall furnish structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents.

4.9    The Owner shall furnish all legal, accounting and insurance counseling services as may be necessary at any time for the Project, including auditing services the Owner may require to verify the Contractor's Application for Payment or to ascertain how or for what purposes the Contractor has used the money paid by or on behalf of the Owner. In the event Architect has knowledge that any of such services or advice rendered in connection therewith is or may be erroneous or is premised upon an incorrect assumption, Architect shall immediately so advise Owner.

4.10   The services, information, surveys and reports required by Paragraphs 4.7 through 4.9 shall be furnished at the Owner's expense, absent the negligence of the Architect. The Owner will provide such, and other, information as is in its control or custody regarding the Project which is reasonably necessary to enable the Architect to satisfy the Architect's obligations under this Contract. The furnishing of such information by the Owner to the Architect shall be for the limited purpose of providing the Architect with information which is in the Owner's possession, and shall in no way constitute a warranty by the Owner of the completeness or accuracy of any such documentation, or otherwise release in whole or in part any obligation of the Architect under this Contract, or create any liability on the part of the Owner for any error or inconsistency or mistake which may later be found in such documentation.

4.11   Prompt written notice shall be given by the Owner to the Architect and the Construction Manager if the Owner becomes aware of any fault or defect in the Project or non-conformance with the Contract Documents. However, the furnishing of such information by the Owner to the Architect shall be for the limited purpose of providing the Architect with information which is in the Owner's possession, and shall in no way constitute a warranty by the Owner of the completeness or accuracy of any such information, or release in whole or in part any obligation of the Architect under this Contract, or create any liability on the part of the Owner for any error or inconsistency or mistake which may later be found in such information.

4.12   The proposed language of certificates or certifications requested of the Architect or Architect's consultants shall be submitted to the Architect for review and approval at least 14 days prior to execution.  The Owner shall not request certifications that would require knowledge or services beyond the scope of this Agreement.

4.13   The Owner shall furnish the required information and services and shall render approvals and decisions as expeditiously as is reasonably necessary for the orderly progress of the Architect's services and the Project.


ARTICLE 5

CONSTRUCTION COST

5.1    DEFINITION

5.1.1  The Construction Cost shall be the total cost or estimated cost to the Owner of all elements of the Project designed or specified by the Architect.

5.1.2  The Construction Cost shall include the cost at current market rates of labor and materials furnished by the Owner and equipment designed, specified,

selected or specially provided for by the Architect, plus a reasonable allowance for the Contractors' overhead and profit. In addition, a reasonable allowance for escalation shall be included for market conditions at the time of bidding and for changes in the Work during construction.

5.1.3 Construction Cost does not include the compensation of the Architect and Architect's consultants, the costs of the land, rights-of-way, financing or other costs which are the responsibility of the Owner as provided in Paragraphs 4.1 through 4.4 and 4.6 through 4.14.

## 5.2   RESPONSIBILITY FOR CONSTRUCTION COST

5.2.1 The Architect will review the Owner's Project budget and preliminary estimates of Construction Cost and detailed estimates of Construction Cost prepared by the Construction Manager. Any significant discrepancies perceived by the Architect (based on the information available and the Architect's experience with similar projects of this type) which constitute, in the opinion of the Architect, an obstacle to meeting the Owner's Project Budget must be promptly reported to the Owner, with the Architect's suggestions for modification to the Project to enable it to meet the Project Budget.

5.2.2 The Architect acknowledges that the Agreement between Owner and Construction Manager with respect to the Project contains a budget. This budget may be subject to adjustment to reflect Change Orders issued by Owner during the course of the Project. In the event that such total Construction Costs exceed such budget, Architect shall consult with Owner promptly following a determination of such projected excess, to recommend changes in the Project necessary to reduce the total Construction Costs to meet such budget.   The budget of construction cost is exclusive of the project's general conditions and job site management costs, and the Construction Manager's fee.

5.2.3 In the event that the Construction Manager's estimate or the lowest bona fide bid or negotiated proposal received by the Owner exceeds the Owner's budget for reasons other than those described in Paragraph 3.3, the modification of Contract Documents to meet the budget, as required in section 12.2, shall be the limit of the Architect's responsibility.   The Architect shall be entitled to compensation in accordance with the Agreement for services performed whether or not the Construction Phase is commenced.

## ARTICLE 6

## USE OF ARCHITECT'S DRAWINGS, SPECIFICATIONS AND OTHER DOCUMENTS

6.1    All Drawings and Specifications produced by Architect under this Agreement are the property of Owner. In the event Owner uses the Drawings and Specifications in connection with renovations or addition to the Project or for any other purposes other than that contemplated by this Agreement, the Architect shall have no liability to the Owner for any such reuse of the construction documents without the Architect's written adaptation of these documents for such purposes, and Owner agrees to indemnify and hold Architect harmless from and against any and all damages caused by or arising out of such reuse by Owner. The Drawings, Specifications and other documents prepared by the Architect for this Project are instruments of the Architect's service, intended for use solely with respect to this Project and, unless otherwise provided, the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright.

6.1.1 The Architect's Drawings, Specifications or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

6.2    Submission or distribution of documents to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the Architect's reserved rights.

ARTICLE 7

DISPUTE RESOLUTION

7.1    Should any claim, dispute or other matter between the Architect and the Owner arising out of or relating to this Agreement or the breach thereof, except as provided in paragraph 2.6.17 with respect to the Architect's decisions on matters relating to artistic effect or aesthetic effect, and except for claims which have been waived by the making or acceptance of final payment, such matters shall be decided as follows:

7.1.1 The matter, upon written request of either the Architect or the Owner, shall be referred immediately to the designated representatives of the Owner and the Architect for settlement.  Each party will be represented by one individual who has no direct responsibility for the matters contemplated by this Agreement or the matters involved in the dispute, but who is authorized to settle the matter involved in the dispute (collectively, the "Representatives.") The representatives shall meet promptly in a good faith effort to resolve the dispute.

7.1.2 If the Representatives are unable to reach a resolution within fifteen (15) calendar days of referral of the matter to them (or such other time as may be

agreed to between the Representatives based upon the issues involved and the complexity of the matters related thereto), the matter may be submitted by either party to voluntary non-binding mediation through the American Arbitration Association or such other third party mediation service as may be jointly agreed upon between the parties. The submission by either party to mediation is neither mandatory nor is the result thereof binding upon either party; however, should one party submit the matter to mediation, the other party shall be bound to proceed with the mediation process. Any such mediation shall be completed within thirty (30) days of submission and each of the parties shall cooperate in the process. Both parties may agree to extend the process depending upon the issues involved and the complexity of the matters therein. Matters relating to information to be provided in any mediation proceeding, the schedule for exchange of documentation, the location for proceeding and similar matters shall be as prescribed by the selected mediator. In the event that the parties are unable to agree upon a specific mediator or mediators, depending upon the rules of the mediation body selected by the party requesting mediation, the mediator(s) shall be selected by the body chosen, or if none has been chosen, by the Representative. Once the mediator has issued a finding with respect to the matters, the parties may agree to abide by the same, or either party may commence or continue litigation with respect to matters which are the subject of the mediation in the manner provided for herein.

7.1.3 Any claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof which are not resolved pursuant to the procedures called for in Subparagraphs 7.1.1 and 7.1.2 above shall be resolved in the courts of the State of Connecticut.

7.1.4 Each of the parties shall bear its respective costs incurred in connection with the procedures called for in Subparagraphs 7.1.1 and 7.1.2 above, except that the parties shall share equally in any fees or expenses of the mediator(s)

7.1.5 The parties agree that no court proceedings may commence during the procedures called for in Subparagraphs 7.1.1 or 7.1.2 above until the earlier of the occurrence of one of the following:

(a) The mediation procedures have been concluded or the time period called for in the mediation procedure has passed; or

(b) Any date after which the commencement of litigation would be barred by any applicable Statute of Limitations shall be imminent. Notwithstanding the foregoing, it is agreed that the parties will, despite the commencement of court proceedings, make reasonable efforts to continue the process described in Subparagraphs 7.1.1 and 7.1.2 above.

7.2    The parties recognize that all procedures provided for in Subparagraphs 7.1.1 and 7.1.2 are conducted for the purpose of settlement or compromise of a dispute, and the parties agree, with the execution of this Agreement, to keep confidential all aspects of any proceeding called for in Subparagraphs 7.1.1 or 7.1.2 above, including without limitation, all written, prepared or oral presentations, statements of any mediator or any other person hired as an expert with respect to such proceedings, and that the same shall remain confidential as to all other persons and shall be inadmissible as evidence in any pending or later filed civil action directly or indirectly involving the parties or subject matter, and inadmissible for any other purpose by virtue of the agreement of the parties and the principles expressed in Rule 408 of the Federal Rules of Evidence.

7.3    The parties agree that any proceeding commenced under Subparagraphs 7.1.1 and 7.1.2 and any court proceedings commenced with respect to this Agreement or the Project may, to the extent permitted by law, be expanded by any party through consolidation or joinder or in any other appropriate manner to include resolution of disputes with any other party involved in the Project, which disputes arise out of a common question of facts or law and if the presence of such party is desirable or required to accord complete relief. The intent of this provision is to allow a single opportunity for resolution of disputes relating to the same fact or events. This agreement to utilize consolidation or joinder or other appropriate procedure to include all parties shall be specifically enforceable in any court having jurisdiction.

7.4    Unless otherwise agreed in writing, the Architect shall continue to carry out its services as provided in this Agreement and maintain its progress during any proceedings undertaken pursuant to this Article, and the Owner shall continue to make payments to the Architect in accordance with this Agreement, except for matters specifically relating to the dispute.

7.5    The provisions of this Article 7 shall be incorporated in any agreements or contracts entered into by Architect and its sub-consultants with respect to the Project, including the provisions of Paragraph 7.3 providing for consolidation or joinder.

ARTICLE 8

TERMINATION, SUSPENSION, ABANDONMENT

8.1    This Agreement may terminate by either party upon not less than ten business days written should the other party fail substantially to perform in accordance with of this Agreement through no fault of the party initiating the termination. the event this Agreement is terminated due to the fault of the Architect. Architect's election to voluntarily terminate this

Agreement (without fault of Owner or the occurrence of a force majeure event), the Architect shall not be entitled to receive any unpaid compensation for Basic and Additional Services allegedly due or for any Reimbursable Expenses allegedly incurred to date.

8.2    In the event this Agreement is terminated due to the fault of the Owner or Owner's election to voluntarily terminate this Agreement (without fault of Architect), the Architect shall be entitled to receive compensation for the portion of its fee then earned and all substantiated Reimbursable Expenses incurred as of the date of termination. As a condition of final payment, Architect shall deliver all Drawings and Specifications to Owner produced as of the date of termination.

8.3    This Agreement may be terminated by the Owner upon not less than seven days written notice to the Architect in the event that the Project is permanently abandoned. If the Project is abandoned by the Owner for more than ninety (90) consecutive days, either party may terminate this Agreement by giving written notice.

8.4    Failure of the Owner to make payments to the Architect in accordance with this Agreement shall be considered substantial nonperformance and cause for termination. Notwithstanding the foregoing, the Owner's failure to make payments in accordance with this Agreement shall not be considered substantial nonperformance and cause for termination unless and until the Owner fails to make payment in accordance with this Agreement on more than three (3) occasions or on two occasions during a continuous period of more than ninety (90) days. No such termination for nonpayment shall be effective unless the Architect provides written notice to the Owner of the default and in such writing grants to the Owner an additional forty-five (45) days in which to cure said nonpayment.

8.5    If the Owner fails to make payment when due to the Architect for services and expenses, the Architect may, ten (10) business days after Owner's actual receipt of written notice, suspend performance of services under this Agreement. Unless payment in full is received by the Architect within seven days Owner's actual receipt of the notice, the suspension shall take effect without further notice. In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services.

8.6    In the event of termination not the ... of the Architect, the Architect shall be compensated for services performed ... rior to termination, together with Reimbursable Expenses then due

8.7    Except as set forth in Subparagraph 1 hereof, if this Agreement is terminated by either the Owner or the Architect, the Architect shall be compensated for all Basic Services and Additional Services satisfactorily

23 of 57

performed prior to the date of termination in accordance with this Agreement and Reimbursable Expenses.

## ARTICLE 9

### MISCELLANEOUS PROVISIONS

9.1    This Agreement shall be governed by the law of the State of Connecticut.

9.2    Terms in this Agreement shall have the same meaning as those in the General Conditions of the Contract for Construction.

9.3    Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion, or the date of issuance of the final Project Certificate for Payment for acts or failures to act occurring after Substantial Completion.

9.4    The Owner and Architect waive all rights against each other and against the Construction Manager, Contractors, and the consultants, agents and employees of any of them for damages, but only to the extent of any actual recovery of any insurance proceeds. The Owner and Architect each shall require similar waivers from their Construction Manager, Contractors, consultants, agents, and persons or entities awarded separate contracts administered under the Owner's own forces.

9.5    The Owner and Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns, and legal representatives of such other party with respect to all covenants of this Agreement. Neither Owner nor Architect shall assign this Agreement without the written consent of the other.

9.6    This Agreement represents the entire and integrated agreement between the Owner and Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

9.7    Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

9.8    Unless otherwise provided in this Agreement, the Architect and Architect's consultants shall have no responsibility for the discovery, presence, handling,

removal or disposal of or exposure of persons to hazardous materials in any form at the Project site, including but not limited to asbestos, asbestos products, polychlorinated biphenyl (PCB) or other toxic substances.

9.9     The Architect shall have the right to include representations of the design of the Project, including photographs of the exterior and interior, among the Architect's promotional and professional materials.  The Architect's materials shall not include the Owner's confidential or proprietary information if the Owner has previously advised the Architect in writing of the specific information considered by the Owner to be confidential or proprietary.   The Owner shall provide professional credit for the Architect on the construction sign and in the promotional materials for the Project.

9.10   When written notice or other formal notice required pursuant to Articles 7, 8 or 9 shall be required by this Agreement or is otherwise appropriate, notice to the Architect shall be deemed to have been duly delivered if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party receiving notice. If to the Owner, written notice shall be deemed to have been duly served if sent by registered or certified mail to the Superintendent of Schools, New Haven Public Schools, 54 Meadow Street, New Haven, Connecticut 06519.

9.11   The Architect shall provide the Owner with a certificate of insurance and a copy of the policy prior to the commencement of the services herein, evidencing insurance coverage for not less than the limits of liability as follows:

| Types of Insurance | Limits of Liability |
|---|---|
| Workers' Compensation Employer's Liability | $Statutory $100,000 per accident $100,000 bodily injury per disease $500,000 policy by disease |
| Comprehensive General (Bodily Injury and Property Damage) | $2,000.000 General Aggregate |
| Comprehensive Automobile (Bodily Injury and Property Da   ge) | $1,000,000 Each Occurrence $1,000,000 Each Accident |
| Professional Liability (Errors and Omissions) | $1,000 000 Each Person $1,000 000 General Aggregate |

Such policies shall provide   .t they may not be canceled, materially changed or allowed to expire until a    thirty (30) days prior written notice to Owner.  In addition, the Owner, the    am Manager and their agents shall be named as an