UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WENDELL HARP and | : | |
| ARCHITECTS ENVIRONMENTAL | : | |
| COLLABORATIVE INTERNATIONAL, P.C. | : | |
| | : | |
| VS. | : | NO. 3:03CV977(CFD) |
| | : | |
| JOHN DeSTEFANO, | : | |
| CITY OF NEW HAVEN and | : | |
| NEW HAVEN BOARD OF EDUCATION | : | MARCH 5, 2006 |

**<u>BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT</u>**

The plaintiff Wendell Harp is the sole owner of the plaintiff Architects

Environmental Collaborative International, P.C.  His wife is a Connecticut State

Senator.  He earned a substantial part of the family income from architecture work he

did for the defendants on various school projects over a period of many years.  These

projects included a new high school and, at the time relevant to this lawsuit, a new

elementary school.

The Prince-Welch Elementary School was intended to occupy a substantial

stretch of Congress Avenue in the Hill Neighborhood of New Haven.  The project itself

was controversial because it was intended by the defendants to displace a large

number of neighborhood residences and small businesses.  During the time the

plaintiffs were working on this project, in 1991, Senator Harp endorsed the defendant

1

DeStefano for re-election in a campaign where he was being challenged by her Senatorial colleague, Martin Looney.

During the entire second half of 2002, the Prince-Welch project was stalled by litigation brought in this court by neighborhood residents who believed the construction of the school was detrimental to the neighborhood.  That litigation ended in December 2002 and the project was slated to resume.  However, defendant DeStefano, in response to the neighborhood concerns demonstrated in the litigation, decided to downsize the construction project substantially.  That decision required a redesign of the project.  The plaintiffs were selected to do that project and, as late as May 13, 2003, were involved in the exchange of final drafts of the contract.

On May 14, 2003, however, Senator Harp endorsed defendant DeStefano's prospective opponent in that year's mayoral primary.  The opponent opened her headquarters in a building owned by the plaintiffs.  These events were perceived by defendant DeStefano's campaign manager as emanating from the plaintiff Wendell Harp and he so stated to the New Haven Register that day.

Two days after that announcement, defendant DeStefano's principal representative on school construction projects contacted a firm of New York architects about taking over the plaintiffs' Prince-Welch contract.  At about the same time, DeStefano asked the Superintendent of Schools whether it wasn't time to think about canceling the plaintiffs' contract.  Thirteen days after the announcement, a special meeting of the construction committee of the Board of Education was convened.

Defendant DeStefano, his attorney, and his principal aides all attended.  The committee voted unanimously to cancel the plaintiffs' contract and give it instead to the New York architects at a fee almost twice that which was going to be paid to the plaintiffs.

The plaintiffs then instituted this lawsuit, contending that the actions described above constituted retaliation for the exercise of protected First Amendment rights.  The defendants now have moved for summary judgment.  Essentially, they seem to argue that it was Senator Harp, rather than the plaintiffs, who endorsed the mayor's primary opponent and that therefore the plaintiffs have no standing.  They further argue that they had legitimate non-retaliatory reasons for terminating the contract.  They argue that Mayor DeStefano was merely one lone vote out of many in favor of the termination.  And they argue that the law was unclear in 2003 whether it was permissible to retaliate against the holder of a municipal contract for supporting an opponent of the mayor.

"The standards governing summary judgment are well-settled.  Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of,

the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary

judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor.  Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party.  So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied.  In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution.  R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997).  "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the

moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v.
Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods.
Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

      "A dispute regarding a material fact is genuine 'if the evidence is such that a
reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, '[i]f, as to the issue on which summary
judgment is sought, there is any evidence in the record from which a reasonable
inference could be drawn in favor of the opposing party, summary judgment is
improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d
Cir. 1997).  Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

      "[T]he Second Circuit has cautioned that, in cases where motive, intent or state
of mind are at issue, summary judgment should be used sparingly." Ruscoe v. Housing
Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003) (Nevas, J.),
citing Dister v. Continental Group, Inc., 859 F.2 1108, 1114 (2nd Cir. 1988).

      Contractors who have well-established ongoing contractual relationships with
municipalities enjoy the same First Amendment rights as do municipal employees,
including the right not to have contracts either terminated or not renewed in retaliation
for their or their principals' exercise of free speech rights.  Board of County Commis-
sioners v. Umbehr, 518 U.S. 668 (1996); O'Hare Truck Service, Inc. v. City of Northla-
ke, 518 U.S. 712 (1996); McClintock v. Eichelberger, 169 F.3d 812 (3d Cir. 1999); Black-
burn v. City of Marshall, 42 F.3d 925 (5th Cir. 1995); Lucas v. Monroe County, 203

F.3d 964 (6th Cir. 2000); Gable v. Lewis, 201 F.3d 769 (6th Cir. 2000); Francisco Jose Rivero v. City and County of San Francisco, 316 F.3d 857 (9th Cir. 2002); Mangieri v. DCH Healthcare Authority, 304 F.3d 1072 (11th Cir. 2002); The Brooklyn Institute of Arts and Sciences v. The City of New York, 64 F. Supp. 2d 184 (E.D.N.Y. 1999). Accordingly, the usual analysis undertaken in cases involving termination of public employees applies to the instant case.

"[A] public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." Connick v. Myers, 461 U.S. 138, 140 (1983). A public employee challenging discipline imposed because of his speech "must initially demonstrate...that: (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999); Hale v. Mann, 219 F.3d 61, 70 (2d Cir. 2000); Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000).

How does one know that the adverse employment action is retaliatory? The Ninth Circuit lists "three ways in which a plaintiff can show that retaliation was a substantial or motivating factor behind a defendant's adverse employment actions." First is a "proximity in time between the protected action and the allegedly retaliatory employment decision". "Second, a plaintiff can introduce evidence that his employer expressed opposition to his speech, either to him or to others." Third, the plaintiff can

show that "his employer's proffered explanations for the adverse employment action were false and pretextual."  Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003) (holding that there was sufficient proximity in time when the adverse employment actions followed the exercise of protected speech by eight months, five months and three months).

"The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."  Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001).  Cases finding sufficient circumstantial evidence of causation from the timing of an adverse employment action include Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (discharge less than two months after plaintiff complained to management and ten days after she filed complaint with state human rights office established *prima facie* case of causal relationship); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001) (discharge less than three months after complaint filed and less than one month after service upon employer established *prima facie* case); Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (terminated "immediately" after engaging in protected activity); Stegall v. Citadel Broadcasting Co., 350 F.3d 1061 (9th Cir. 2003) (nine days); Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (adverse employment actions followed protected activity by less than three months); Constantine v. Rectors, George Mason Univ., 411 F.3d 474, 501 (4th Cir. 2005) (four months). "Although a short period of time between the filing of a charge of discrimination and an

allegedly retaliatory action is rarely enough by itself to create a triable issue,...the timing of events 'is often an important evidentiary ally of the plaintiff.'...Close temporal proximity provides evidence of causation,...and may permit a plaintiff to survive summary judgment provided that there is also other evidence that supports the inference of a causal link." Lang v. Illinois Dept. of Children and Family Services, 361 F.3d 416, 419 (7th Cir. 2004).  Quoting Lalvani v. Cook County, 269 F.3d 785, 790 (7th Cir. 2001).  "Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." Bell v. Clackamas County, 341 F.3d 858, 865 (9th Cir. 2003).

Typically, the circumstantial case that an adverse employment action was motivated by the plaintiff's exercise of a protected right consists of a combination of timing of the retaliatory action and the falsity of the employer's explanation. *E.g.*, Nethersole v. Bulger, 287 F.3d 15, 19 (1st Cir. 2002); Love-Lane v. Martin, 355 F.3d 766, 780 (4th Cir. 2004); Fabela v. Socorro Independent School Dist., 329 F.3d 409 (5th Cir. 2003); Taylor v. Keith, 338 F.3d 639 (6th Cir. 2003); Settlegoode v. Portland Public Schools, 371 F.3d 503, 511 (9th Cir. 2004); Allen v. Iranon, 283 F.3d 1070, 1975 (9th Cir. 2002); Aquavia v. Goggin, 208 F. Supp. 2d 225 (D. Conn. 2002).  "Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable." United States v. Andrino, 501 F.2d 1373, 1378 (9th Cir. 1974).  Even criminal convictions "can rest solely on circumstantial evidence, which is intrinsically as probative as direct evidence." United States v. Young, 568 F.2d 588, 589 (8th Cir.

1978).  In cases involving prohibited discrimination, circumstantial evidence almost always must be relied upon to prove a plaintiff's case.  Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997).  *Cf.* Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) ("An employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent.").  "We have often acknowledged the utility of circumstantial evidence in discrimination cases....The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted.  'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'  Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508 n. 17 (1957)."  Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 2154 (2003).

"[A] plaintiff alleging First Amendment retaliation must prove by a preponderance of the evidence that his or her protected activity was a motivating factor in the defendant's retaliatory action.  To clarify, a motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions....Once the plaintiff proves that an improper purpose was a motivating factor, the burden shifts to the defendant...to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct."  Spiegla v. Hull, 371 F.3d 928, 942-43 (7th Cir. 2004).  *Cf.*, Nethersole v. Bulger, 287 F.3d 15, 19 (1st Cir. 2002).

10

In this case, the two plaintiffs have a complete identity between them. The defendants, as their own documents attest, consistently treated the corporation as Wendell Harp and vice versa. The evidence further proves conclusively that the plaintiffs had a relationship of very long standing with the defendants, which produced substantial income for the plaintiffs. The plaintiffs had every reason to view this relationship as a close and continuing one. Although the defendants now claim to have been unhappy with the plaintiffs' work for a long time, the record establishes that any alleged unhappiness did not in any way interfere with issuance of new contracts to the plaintiffs. Indeed, as late as one day before Senator Harp's May 14, 2003, announcement the plaintiffs and defendants were ironing out the details of a new contract worth over $700,000 to the plaintiffs. Yet within 48 hours of Senator Harp's announcement, Attorney Weisselberg was negotiating with an out-of-state firm to replace the plaintiffs at what turned out to be twice the cost to the defendants. Thirteen days later, the plaintiffs were terminated and five days after that the New York firm was hired at double the plaintiffs' rate. The combination of proximity in time and the apparent falsity of the defendants' explanations for their actions is more than sufficient to permit a jury to find that the Harps' endorsement of Mayor DeStefano's primary opponent was one of the motivating factors in the contract termination.

The defendants' claim that the termination decision was made by disinterested third parties uninfluenced by the Mayor is incredible on its face. The evidence shows the Mayor mentioning termination to the Superintendent of Schools promptly after the

11

Harp announcement, shows the Mayor's aide rather than the supposed committee negotiating a contract with the New York firm and doing so before the committee had taken its vote, and shows the Mayor and his staff all attending the committee meeting where the vote was taken. There is more than sufficient evidence here to permit a jury inference that the decision came from the Mayor and served his personal agenda.

The argument that only Senator Harp had endorsed the Mayor's opponent is contrary to the facts. The evidence shows that the Mayor's campaign manager announced publicly, on May 14, 2003, his belief and that of the campaign that the plaintiff was behind his wife's actions. Moreover, even if he were not, the plaintiff has standing to sue for retaliation based on his First Amendment right of intimate association with his wife if the jury decides that the retaliation was based on the actions of Senator Harp and not those of the plaintiff. Adler v. Pataki, 185 F.3d 35 (2d Cir. 1999); Sowards v. Loudon County, 203 F.3d 426 (6th Cir. 2000); Sutton v. Village of Valley Stream, 96 F. Supp. 2d 189 (E.D.N.Y. 2000) (Wexler, J.).

Finally, the defendant DeStefano's argument that the law was not clearly established in 2003 that he couldn't retaliate against a government contractor for supporting his primary opponent falls in the face of all the many pre-2003 cases cited above. The law certainly was clearly established then, as it is now, that what was done to the plaintiffs in this case was blatantly unlawful and a First Amendment violation.

The motion for summary judgment must be denied.

Respectfully submitted:


_____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX:  203/776-9494
E-Mail: jrw@johnrwilliams.com
Plaintiffs' Attorney


CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Attorney Jennifer C. Vickery, Assistant Corporation Counsel, 165 Church Street, New Haven, CT 06510 [E-Mail: jvickery@newhavenct.net]; and Attorneys Carolyn W. Kone and Rowena A. Moffett at Brenner, Saltzman & Wallman LLP, 271 Whitney Avenue, New Haven, CT 06511 [E-Mails: ckone@bswlaw.com; rmoffett@bswlaw.com]


_____
JOHN R. WILLIAMS