UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WENDELL HARP, et al.,<br>　　　Plaintiffs, | :<br>:<br>: |
| v. | :　　CASE NO: 3:03CV977(CFD)<br>: |
| JOHN DeSTEFANO, et al.,<br>　　　Defendants. | :<br>:　　MAY 5, 2006<br>: |

**DEFENDANTS' REPLY TO PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Defendants, John DeStefano, City of New Haven and New Haven Board of Education, have moved for summary judgment in this First Amendment retaliation case on several grounds, including standing, causation, lack of proximate cause, qualified immunity, and on their defense that the architectural contract at issue in this case would have been terminated even in the absence of an impermissible motive, because of the poor performance of Plaintiff Architects Environmental Collaborative International, P.C. ("AECI") under the contract. As set forth below, Plaintiffs, AECI and Wendell Harp ("Harp"), have failed to point to any evidence that would create a genuine issue of material fact that Defendants are not entitled to summary judgment. In fact, as stated herein, most of the "facts" relied on by Plaintiffs to defeat Defendants' Motion find no support in the record. Accordingly summary judgment should be granted in favor of Defendants.[1]

I.　　DISCUSSION

　　A.　　There Are No Material Issues of Fact that Plaintiffs Lack Standing to Prosecute this Action

　　　　1.　　AECI's contract termination did not directly injure Harp

Defendants argue in support of their Motion for Summary Judgment that both Plaintiffs lack standing. Defendants maintain that Harp lacks standing, because the injury claimed in this case was to his corporation, AECI, and not to him directly, and that AECI lacks standing, because it did not exercise any First Amendment rights. Rather, the facts are undisputed that only Harp's wife, Mrs. Harp, engaged in protected speech. (Defendants' Brief,

---

[1] In addition, because Plaintiffs have not complied with D. Conn. L. Civ. R. 56(a) 2 and 3, none of Defendants' statements of fact should be deemed disputed. For each fact that Plaintiffs have denied, Plaintiffs have not followed such denial with a specific citation to an affidavit of a witness or to admissible evidence. In addition, Plaintiffs have failed to include in their D. Conn. L. Civ. R. 56(a)2 Statement a section entitled "Disputed Issues of Material Fact" listing each issue to which Plaintiffs contend there is a genuine issue to be tried as required by D. Conn. L. Civ. R. 56(a)2, although Plaintiffs have included a section entitled "Plaintiffs' Statement of Material Facts."

pp. 27-35.)[2] Plaintiffs respond, without citing any evidence, that "the two plaintiffs have a complete identity between them." (Plaintiffs' Brief, p. 11.) In fact, the undisputed evidence is to the contrary.

At his deposition, Harp testified that AECI is a Connecticut corporation incorporated around 1997. (See Harp Depo-Vol. I, p. 61, ln. 22-p. 62, ln. 1, Ex. A to Kone Decl.) He further testified that the contract for the design of the Prince-Welch School was at all times with AECI and not with him personally. (Id. at p.62, lns. 2-8.) Harp produced: (1) an annual report of AECI filed with the Secretary of State; (2) a Directors' Consent authorizing (i) the bylaws for AECI, (ii) legal services for AECI, (iii) Fleet Bank as the depository for AECI, (iv) a stock plan under § 1244 of the Internal Revenue Code, and (v) an election by AECI under § 1372(a) of the Internal Revenue Code to be treated as a small business; (3) an Incorporator's Consent for AECI; (4) the bylaws of AECI; (5) an Application for Employer Identification Number to the Internal Revenue Service ("IRS") by AECI; (6) an Application for Tax Registration Number to the IRS by AECI; (7) an Election by a Small Business Corporation to the IRS by AECI; (8) a receipt from the Connecticut Secretary of State for the filing of AECI's Certificate of Incorporation; and (9) federal tax returns filed by AECI for the years 2000-2003. (See Harp Depo.-Vol. II, p. 316, ln. 17 – p. 320, ln. 3, attached as Ex. B to Kone Supp. Decl.; Harp Depo. Vol. IV, p. 604, ln. 20 – p. 605, ln. 25 and p. 608, lns. 6-13 attached as Ex. C to Supp. Kone Decl.; Harp Dep. Exs. 27-30 attached as Exs. F-K respectively to Kone Supp. Decl.) Harp also produced his personal tax returns for the years 2000-2003. (See Harp Depo-Vol. IV, p. 665, lns. 4-9 attached as Ex. C to Kone Supp. Decl.) Accordingly with respect to Plaintiffs' relationships with the State of Connecticut and the IRS, Plaintiffs themselves have consistently indicated that they have independent legal identities.[3]

In Domino's Pizza, Inc. v. McDonald, 126 S. Ct. 1246 (2006), recently decided by the United States Supreme Court, the plaintiff, an African American who was the sole shareholder and president of a construction

---

[2] Plaintiffs also state that Mayor DeStefano's primary opponent, Sherri Killins ("Killins"), "opened her headquarters in a building owned by plaintiffs." (Plaintiffs' Brief, p. 2.) In fact, there is no evidence that AECI had any ownership interest in the building in which Killins opened her headquarters. See, e.g., Plaintiff's Damage Analysis dated August 22, 2005, where Plaintiffs list as an expense for AECI "Facilities Use/Rent/Utilities et al "of $48,000/year." (Ex. F to Kone Decl., Ex. C, p. 4 of 4). Plaintiffs have also produced no evidence that Harp owned the building.

[3] Plaintiffs also argue, without citing any evidence, that Defendants' own documents consistently treated AECI as Harp and Harp as AECI. (Plaintiffs' Brief, p. 11.)This is simply not true. The Board of Education's documents treated the architect for the Prince Welch school project at all times as AECI. (See, e.g., Ex. A to Roger Decl., Exs. A, H, J, and K to Weisselberg Decl.; Exs. K- M to Kone Decl.; Exs. D-F, H-P, T-AA, HH-KK, OO, QQ, SS, WW to Watt Decl.)

business, sued Domino's claiming that it had violated 42 U.S.C. § 1981 by breaching its contract with his corporation and that such breach had been motivated by racial animus. Id. at 1073, 1074. McDonald claimed that he had suffered monetary damages and damages for emotional distress as a result of the breach. Id. at 1074. In finding that the owner could not state a claim under § 1981 for breach of his corporation's contract, the Supreme Court wrote:

> [I]t is fundamental corporation and agency law – indeed, it can be said to be the whole purpose of corporation and agency law – that the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts. . . . The corporate form and the rules of agency protected [McDonald's] assets, even though he 'negotiated, signed, performed, and sought to enforce' contracts for [his corporation]. The corporate form and the rules of agency similarly deny him rights under those contracts.

Id. at 1076-77. Similarly, here, Harp has no standing under § 1983 to assert rights based upon the termination of his corporation's contract.

> 2. Harp has no standing based upon his claim that the Mayor's campaign manager perceived that Harp was behind Mrs. Harp's support of Killins

Harp claims that he has standing to bring this action, because the Mayor's campaign manager stated in a newspaper article that she perceived Harp to be behind Mrs. Harp's endorsement of Killins. (Plaintiffs' Brief, pp. 2, 12.) This claim misstates the contents of the newspaper article.[4] Moreover, any alleged perception of Harp's responsibility for Mrs. Harp's endorsement does not confer standing on Harp, because he has produced no evidence of any direct injury as a result of his allegedly being perceived as the impetus for Mrs. Harp's endorsement of Killins. (See Defendants' Brief, pp. 32 – 34.) As stated above, the injury in this case was to AECI and not to Harp.

Additionally, "perceived support" of another individual who has exercised First Amendment rights is not "speech" and therefore cannot form the basis for a § 1983 retaliation claim. See Ambrose v. Township of Robinson, Pennsylvania, 303 F.3d 488, 495 (3rd Cir. 2002) and cases cited therein (perceived support of a fellow officer who filed a lawsuit against the town was not protected by the First Amendment, because the First Amendment only protects actual conduct). Accordingly, because Harp has not produced any evidence of a direct injury to himself as a result of his perceived support of Mrs. Harp and Killins and because perceived support of a protected activity is

---

[4] The newspaper article referenced by Plaintiffs states that the campaign manager suggested that Mrs. Harp's endorsement of Killins was a "reflection" of political ambitions shared by Mrs. Harp and her husband, who have been positioning themselves to run for Mayor. (See Exs. I and J to Kone Decl.)

inadequate as a matter of law to constitute a First Amendment violation, Harp both lacks standing and cannot make out a prima facie case of retaliation for exercising First Amendment rights.[5]

        3.      Harp has no standing based upon the First Amendment right of intimate association

Harp claims that he has standing to sue for retaliation based upon his First Amendment right to intimate association. (Plaintiffs' Brief, p. 12.) However, just as Harp has no standing to assert a First Amendment speech retaliation case, because he has suffered no direct injury, he likewise lacks standing to assert a First Amendment right to intimate association, because of such lack of a direct injury.

Further, Harp cannot make out a prima facie case of a violation of his First Amendment right to intimate association. In Adler v. Pataki, 185 F.3d 35, 44 (2d Cir. 1999), the Second Circuit recognized that when a husband was fired in retaliation for his wife's discrimination lawsuit, the husband could maintain an action under § 1983 for violation of his First Amendment right of intimate association. However, an essential element of this claim is that the defendants have taken an adverse action against the plaintiff. Sowards v. Loudon County, Tennessee, 203 F.3d 426, 434 (6th Cir. 2000). Here, no adverse action was taken by any Defendant against Harp, and, therefore, he cannot make out a prima facie case of a violation of his right to intimate association. Id. Accordingly, Defendants are entitled to summary judgment against Harp on the basis of lack of standing and failure to make out an essential element of a claim based upon a violation of the First Amendment right to intimate association.

    B.    <u>There are no Material Issues of Fact that Mrs. Harp's Support of Killins was not a Motivating Factor in DeStefano's and the Board of Education's Conduct with Respect to the Termination of AECI's Contract</u>

In Defendants' brief, they argued that Mrs. Harp's support of Killins was not a substantial factor in DeStefano's conduct with respect to the termination of AECI's contract but rather that DeStefano was motivated by the fact that the AECI had balked at complying with the redesign criteria and timeline for the redesign of the school. Defendants further maintain that the Board of Education members voted for the termination of AECI's contract, because of their own knowledge (independent from information provided by DeStefano) of AECI's unsatisfactory performance of the contract. (See Defendants' Brief, pp. 35-38, 43.) Plaintiffs claim that Defendants' reasons are false, because Defendants continued to issue "new contracts" to AECI, although they claim that they were unhappy

---

[5] Because Harp has not engaged in protected speech, AECI does not have third party standing to assert Harp's First Amendment rights.

for a long time with Plaintiffs' work and because one day prior to Senator Harp's announcement of her support for Mayor DeStefano's primary opponent, "the plaintiffs and defendants were ironing out the details of a new contract worth over $700,000 to plaintiffs." (Plaintiffs' Brief, p. 12.) Plaintiffs cite no evidence to support these factual propositions, and, in fact, none exists.

There is no evidence that Defendants continued to issue "new contracts" to AECI, despite their unhappiness with its performance. The initial 1997 contract with AECI for the design of the new Prince Welch School was superseded by a March 27, 2000 agreement, because the Board of Education desired to make AECI's contract more similar to those of other architects with whom the Board of Education had contracted. (See Defendants' Local Rule 56(a)1 Statement ("R. 56(a)1 Stmt."), ¶¶ 18-21.) The 2000 contract with AECI was not for new work and was issued prior to the time when the vast majority of the problems with AECI's work on the school surfaced. (See R. 56(a)1 Stmt., ¶¶ 25-28, 31-37, 39-48, 50-55, 60, 63- 67, 69, 73.)

It is further undisputed that as early as June 2002, almost one year prior to Killins' announcement of her candidacy, the School Construction Program asked AECI to submit a proposal to reduce the scope of its work to only two phases of the architectural services for the school, because the School Construction Program was dissatisfied with AECI's performance. (R. 56(a)1 Stmt., ¶¶ 69,71.) Moreover, it is not contested that School Construction staff – Claude Watt, Tom Rogér and Susan Weisselberg – as well as Mayor DeStefano and John Prokop, the Chair of the Board of Education's Administration and Finance Committee ("A&F Committee") and a member of the Board, advocated changing the architect for the project in late 2002 and early 2003 (long prior to the May 14, 2003 announcement of Ms. Killins' campaign), because of their understanding of AECI's poor performance. AECI was only considered for the redesign work because Dr. Mayo urged that it be given the chance to perform the contract and because the Superintendent assured that he would guarantee AECI's satisfactory performance. (See R. 56(a)1 Stmt., ¶¶ 79, 81- 85; DeStefano Supp. Dec. ¶ 2.) Finally, far from "ironing out the details of the redesign contract on May 13, 2003", the facts are undisputed that on that date, Mayo and Harp were discussing the essence of the new agreement – that AECI would redesign the school in the manner and in the timeframe that the School Construction Program desired – requirements that AECI balked at. (See R. 56(a)1 Stmt., ¶¶ 114- 117, 120–121.) Accordingly,

there is no evidence that Defendants were granting new contracts to Plaintiffs despite their satisfaction with AECI's work, as claimed by Plaintiffs.

The only other "fact" that Plaintiffs point to as demonstrating the "falsity" of Defendants' explanation for the termination of AECI's contract is that Weisselberg, the Program Coordinator for the School Construction Program, negotiated with an out-of-state firm to replace AECI within two days of Mrs. Harp's announcement of her support for Killins, at, according to Plaintiffs, "twice the cost." (Plaintiffs' Brief at 11.)[6] The timing of Weisselberg's call to Davis Brody Bond does not prove that the reasons provided by Defendants for terminating the AECI contract were false. The timing of Weisselberg's call to Davis Brody Bond was a reflection of the fact that Harp's meeting with the Superintendent occurred on May 13, 2003. The School Construction Program was anxious to secure a replacement architect for the project as soon as it became clear that AECI would not abide by the redesign guidelines. The school had been stalled for 6 years, and the Construction Program wanted the new architect to meet with School Building Based Advisors Committee (the "SBBAC") before the school year ended so that design work could begin immediately. (See R. 56(a)1 Stmt., ¶¶ 118-121, 123-127.)

Moreover, there is no factual support for Plaintiffs' statement that the Davis Brody Bond contract was for "twice the cost" of AECI's contract. The contract with Davis Brody Bond recommended for approval by the A&F Committee to the Board of Education was for $1,374,500. (See Ex. H to Weisselberg Decl.) As Harp testified at his deposition, this same amount – $1,374,500 – was the sum that AECI had negotiated with Watt for the redesign work for the School. (See Harp Depo-Vol. I, p. 50 lns. 9-20 attached as Ex. A to Kone Supp. Decl.; Harp Depo-Vol. II, p. 229, ln. 15 – p. 230, ln. 9 attached as Ex. B to Kone Supp. Decl.; Harp Depo-Vol. III, p. 452, ln. 16 – p. 453, ln. 12, p. 493, lns. 13-17; Harp Depo. Ex. 5 (a portion thereof); Harp Depo. Ex. 11 and Harp Depo. Ex. 87 (p. 2), attached as Exs. D, E and L respectively to Supp. Kone Decl.; Weisselberg Decl. ¶13 and Ex. F. thereto; Watt Supp. Decl. ¶ 3.)

In sum, Plaintiffs' case of retaliatory motive rests solely on the timing of the termination of AECI's contract. As explained above, the evidence is undisputed that this timing was a function of Harp's meeting with the Superintendent on May 13, 2003 at which time Harp expressed his reluctance to follow the School Construction

---

[6] Tom Rogér, the Program Director and Head of the School Construction Program, had contacted Davis Brody Bond on two prior occasions - May 2002 and March 2003 - about taking over the deign work for the Prince Welch School from AECI long before Killins' May 14, 2003 announcement. (See R. 56(a)1 Stmt., ¶¶ 72, 80.)

Program's requirements for the redesign of the school rather than Mrs. Harp's announcement of her support for Killins.

### C. There is No Material Issue of Fact that DeStefano's Actions with Respect to the AECI Contract Were Not the Proximate Cause of the Termination of the Contract

Defendants argue that any discriminatory animus of DeStefano was not the proximate cause of the termination of AECI's contract, because four other members of the Board of Education voted to terminate AECI's contract for permissible reasons. (Defendants' Brief, pp. 38-42.) Plaintiffs do not dispute the Board members' evidence of non-discriminatory intent but rather claim that this argument must be rejected, because the Mayor "mentioned" to the Superintendent terminating the AECI contract shortly after Killins' announcement. (Plaintiffs' Brief, pp. 11-12.)

This discussion between the Mayor and the Superintendent, which Plaintiffs have mischaracterized[7] (see Mayo Depo, p. 24, ln. 22 – p. 26, ln. 14, attached as Ex. N to Kone Decl.), does not create any issue of fact as to the nondiscriminatory reasons given by four members of the Board of Education (which Board does not include the Superintendent), who voted for the termination of AECI's contract. Moreover, as a matter of law, suggesting an adverse action is inadequate to constitute discriminatory conduct, if the board members who voted for the action had nondiscriminatory reasons for their votes. Jeffries v. Harleston, 52 F.3d 9,14 (2d Cir. 1995).

Plaintiffs also claim that Defendants' proximate cause argument should be rejected, because the facts show the "Mayor's aide rather than the supposed committee negotiating a contract with the New York firm and doing so before the committee had taken its vote and shows the Mayor and his staff all attending the committee meeting where the vote was taken." (Plaintiffs' Brief, p. 12.) Again, these alleged "facts" do not create any question of material fact regarding the nondiscriminatory reasons given by the members of the Board of Education for their votes to terminate AECI's contract. Further, there is no evidence to support these "facts". Weisselberg was not the "Mayor's

---

[7] In their Brief, Plaintiffs also state, "At about the same time, DeStefano asked the Superintendent of Schools whether it wasn't time to think about canceling the plaintiffs' contract." (Plaintiffs' Brief, p. 2). Both of Plaintiffs' descriptions of DeStefano's question to the Superintendent about terminating AECI's contract seriously mischaracterize the Superintendent's testimony about this question.

aide", but rather was the Coordinator of the School Construction Program, and one of her responsibilities was to oversee the construction of the new Prince Welch School. (See Weisselberg Decl., ¶ 2.) [8]

Plaintiffs' statement that Weisselberg "rather than the supposed committee" negotiated the Davis Brody Bond contract implies that the A&F Committee should have been involved in the negotiation of the Davis Brody Bond contract rather than staff from the School Construction Program. Notwithstanding whether Weisselberg or the A&F Committee negotiated the replacement contract is irrelevant to the issue of the nondiscriminatory reasons of the Board of Education members who voted to terminate AECI's contract, Plaintiffs' argument also fails because they cite no evidence to support their position that the A&F Committee was the proper party to initiate discussion with Davis Brody Bond about replacing AECI. In fact, the uncontested evidence establishes that the School Construction Program staff had the responsibility for negotiating architects' contracts. As Watt testified, the responsibility for reviewing and amending AECI's contract for the redesign work rested with the School Construction Program staff with the assistance of the Corporation Counsel, and after the contract was negotiated, such contract would have been presented to the A&F Committee for a recommendation and then to the Board of Education for final approval. (Watt Depo, p. 27, ln. 20 – p. 28, ln. 4 attached as Ex. J to Kone Supp. Decl.) (See also R. 56(a)1 Stmt. ¶ 104.) With respect to AECI's original contract, Susan Whetstone, a member of the Board of Education, stated in her declaration that she had served as Coordinator for the School Construction Program from 1995 through part of 1997 and that she had negotiated AECI's contract for the design of the Prince Welch School. (See Whetstone Decl. ¶ 8.) As stated supra, at 6 n.6 long before Killins' announcement, Rogér had contacted Davis Brody Bond twice about taking over AECI's contract. Accordingly, Plaintiffs have presented no evidence that Weisselberg's contacting Davis Brody Bond about redesigning the School was a departure from standard procedures.

Plaintiffs also urge that Weisselberg's contact with Davis Brody Bond to replace AECI before the A&F Committee terminated AECI's contract is circumstantial evidence that the Board's vote was not the proximate cause of the termination of the AECI contract. The timing of the School Construction Program's call to the replacement architect with respect to the Committee's vote is not circumstantial evidence of any lack of independent purpose by

---

[8] Plaintiffs' Brief, p. 2 also states without citation to any evidence, "Two days after that announcement, defendant DeStefano's principal representative on school construction projects contacted a firm of New York architects about taking over the plaintiffs' Prince-Welch contract." There is no evidence anywhere in the record that Weisselberg is DeStefano's "principal representative on school construction projects."

the Board members and is explained by the fact that, as stated above, the School Construction Program was anxious to obtain approval for the new architect so that the design process could proceed as soon as possible after having been delayed for so long. (See Weisselberg Decl., ¶ 15.) (See also DeStefano Depo. p. 35, lns. 11-16, attached as Ex. O to Kone Decl., stating that in May 2003, there was "[a] sense of urgency about delivering the project.").

Finally, Plaintiffs claim that the "Mayor and his staff all attend[ed]" the A&F Committee meeting at which the Committee recommended that AECI's contract be terminated and that such attendance is circumstantial evidence that the Committee did not act independently. (Plaintiffs' Brief, pp. 11-12.) Not only is such attendance irrelevant to whether the full Board's vote was nondiscriminatory, but there is not a shred of evidence that the Mayor's staff attended this meeting. Plaintiffs do not identify who among the attendees at the A&F Committee meeting Plaintiffs consider to be the Mayor's staff.[9] To the extent that Plaintiffs are referring to the attendance by the Corporation Counsel at the meeting, under the City's charter, the Corporation Counsel is counsel to all officers and departments of the City, including the Board of Education. (City of New Haven Charter §§ 17 and 18, attached as Ex. K to Kone Supp. Decl.; Weisselberg Supp. Decl., ¶ 6). As stated above, the Corporation Counsel is involved in the negotiation and approval process for architects' contracts with the School District, and, certainly, his attendance at a meeting to give advice about the termination of an architect's contract was appropriate.

D.   There Are No Material Issues of Disputed Fact that DeStefano is Entitled to Qualified Immunity

Plaintiffs argue that DeStefano is not entitled to qualified immunity, because the law was clearly established in 2003 that DeStefano "couldn't retaliate against a government contractor for supporting his primary opponent." (Plaintiffs' Brief, p. 12.) However, there is not a scintilla of evidence in the record in this case that the government contractor here – AECI - ever supported the Mayor's primary opponent. Accordingly, there was no retaliation against a government contractor for supporting a primary opponent.

Rather, Defendant DeStefano's qualified immunity defense argues that the law was not clearly established in May 2003 or even today that retaliation against a contractor because of its owner's wife's political speech or even because of its owner's perceived support for his wife's protected speech violates the First Amendment. (See

---

[9] In another section of their brief, Plaintiffs write that "Defendant DeStefano, his attorney, and his principal aides all attended" the Administration and Finance Committee meeting at which the Committee voted to cancel AECI's contract. (Plaintiffs' Brief, pp. 2-3.)

Defendants' Brief, pp. 46-48; see also pages 3-4 infra.) Plaintiffs offer no argument or facts to rebut this defense. Further, DeStefano has also argued that he is entitled to qualified immunity, because the law was not clearly established in May 2003 that the actions he took with respect to the termination of AECI's contract "tainted" the Board of Education's decision to end the contract. (See Defendants' Brief, pp. 47-49.) Plaintiffs point to only two actions of DeStefano (for which there is any evidentiary support) which they claim "influenced" the termination decision – DeStefano's initiation of the question of whether AECI should be terminated with the Superintendent and his appearance at the A&F Committee meeting at which the contract termination was recommended to the Board of Education. (Plaintiffs' Brief, pp. 11-12.) Whether such actions were adequate to "taint" the full Board of Education's vote to terminate AECI's contract was certainly not clearly established in this Circuit or anywhere in May 2003 or even today. See Id.

      E.      <u>Defendants Should Be Granted Summary Judgment on their Arguments that the Board and the City are Not Liable for DeStefano's Actions and on their Defense that Even in the Absence of any Retaliatory Motive, AECI's Contract Would Have Been Terminated</u>

Plaintiffs do not even attempt to address Defendants' argument that summary judgment should be granted in favor of the Board of Education and the City, because these Defendants cannot be liable for Mayor DeStefano's conduct, since DeStefano is not the highest policymaker regarding architectural contracts in the City, as such authority rests with the Board of Education. (See Defendants' Brief, pp. 44-45.) Accordingly, any opposition to this argument by Plaintiffs must be deemed to have been waived. See Kaltman-Glasel v. Dooley, 228 F. Supp. 2d 101, 110 n.10 (D. Conn. 2002), aff'd on other grounds, 82 Fed. Appx. 244 (2d. Cir. 2003). Further, Plaintiffs do not challenge Defendants' claim that all of the Defendants are entitled to summary judgment on their defense that even in the absence of a retaliatory motive, the Board of Education would have terminated AECI's contract, because of their knowledge of AECI's poor performance. (See Defendants' Brief, pp. 45-46.) Accordingly, Plaintiffs should be deemed to have also waived any opposition to this argument. See id. Therefore, Defendants' Motion for Summary Judgment should be granted.

II.      <u>CONCLUSION</u>

For the foregoing reasons and those stated in Defendants' initial brief, Defendants' Motion for Summary Judgment should be granted.

DEFENDANTS,

JOHN DESTEFANO, CITY OF NEW HAVEN and NEW HAVEN BOARD OF EDUCATION

By: *[signature]*
Carolyn W. Kone (ct06207)
Rowena A. Moffett (ct19811)
BRENNER, SALTZMAN & WALLMAN LLP
Their Attorneys
271 Whitney Avenue
New Haven, CT  06511
Tel. (203) 772-2600
Fax (203) 772-4008
Email: ckone@bswlaw.com
Email: rmoffett@bswlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2006, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].

*Carolyn W. Kone*
Carolyn W. Kone