UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WENDELL HARP and<br>ARCHITECTS ENVIRONMENTAL<br>COLLABORATIVE INTERNATIONAL, P.C., | : | |
| | : | |
| | : | CASE NO: 3:03CV977(CFD) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN DeSTEFANO,<br>CITY OF NEW HAVEN and<br>NEW HAVEN BOARD OF EDUCATION, | : | |
| | : | |
| Defendants. | : | |
| | : | February 9, 2007 |

## MOTION FOR PERMISSION TO FILE CORRECTED
## LOCAL RULE 56(a)1 STATEMENT NUNC PRO TUNC

Defendants' respectfully requests permission to file a Corrected Local Rule 56(a)1
Statement to correct the following clerical errors to the original Local Rule 56(a)1 Statement, dated
January 18, 2006 (the "Original Statement"):

1.      Paragraph 97 of the Original Statement incorrectly references excerpts from
Volume II of the deposition of Wendell Harp, dated May 27, 2005 as being attached as Exhibit A to
the Original Declaration of Carolyn W. Kone, Esq., (the "Original Declaration"); however, the
excerpts from Volume II of Mr. Harp's are attached as Exhibit B to the Original Declaration.

2.      Paragraph 98 of the Original Statement incorrectly references excerpts from
Volume II of the deposition of Wendell Harp, dated May 27, 2005 as being attached as Exhibit A to
the Original Declaration of Carolyn W. Kone, Esq., (the "Original Declaration"); however, the
excerpts from Volume II of Mr. Harp's are attached as Exhibit B to the Original Declaration.

Attached hereto is a Corrected Statement of Carolyn W. Kone, Esq. incorporating the
corrections listed above.

9T7282.DOC

DEFENDANTS,
JOHN DESTEFANO, CITY OF NEW
HAVEN and NEW HAVEN BOARD OF
EDUCATION

By:          *s/Carolyn W. Kone*
Carolyn W. Kone (ct06207)
Rowena A. Moffett (ct19811)
BRENNER, SALTZMAN & WALLMAN LLP
Their Attorneys
271 Whitney Avenue
New Haven, CT  06511
Tel. (203) 772-2600
Fax (203) 772-4008
Email:  ckone@bswlaw.com
Email:  rmoffett@bswlaw.com

9T7282.DOC

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2007, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].

_____*s/Carolyn W. Kone*_____
Carolyn W. Kone

9T7282.DOC

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| WENDELL HARP and<br>ARCHITECTS ENVIRONMENTAL<br>COLLABORATIVE INTERNATIONAL, P.C.,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN DeSTEFANO,<br>CITY OF NEW HAVEN and<br>NEW HAVEN BOARD OF EDUCATION,<br><br>Defendants. | :<br>:<br>:<br>:  CASE NO: 3:03CV977(CFD)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:  February 9, 2007 |

## CORRECTED DEFENDANTS' LOCAL RULE 56(a)1 STATEMENT

| | STATEMENT | CITATION |
|---|---|---|
| 1. | Harp, who is African American, is an architect. Harp is the sole owner of AECI, an architectural services firm, its Sole Director and President. | Declaration of Reginald Mayo ("Mayo Dec.") ¶ 7; Transcript of the 05/27/05 deposition testimony of Wendell Harp ("Harp Depo-Vol. I"), p. 61 ln. 19 – p. 62 ln. 18, attached as Ex. A to Declaration of Carolyn W. Kone ("Kone Dec."); Complaint ¶ 3. |
| 2. | Harp's spouse, Toni. Harp, who in addition to serving as a State Senator, works at the Hill Health Center, does not have any ownership of, is not employed by, does not perform any services for AECI and is not in any way connected with AECI. | Harp Depo-Vol. I, p. 64 lns. 9-22, attached as Ex. A to Kone Dec.; Ex. 1 to Declaration of Jennifer Peschell ("Peschell Dec."). |
| 3. | From at least 1989 to date, Harp has been active in New Haven politics. Harp supports candidates for the | Harp Depo-Vol. I, p. 185 ln. 12, p. 198 ln. |

|   | | |
|---|---|---|
| | Democratic Town Committee, aldermen, state representatives and senators and the Mayor and works to defeat other candidates by raising money, making telephone calls, attending meetings, and appearing at the polls. | 10, attached as Ex. A to Kone Dec.; Transcript of the 7/14/05 deposition testimony of Wendell Harp ("Harp Depo-Vol. II"), p. 278 ln. 20 – p. 309 ln. 5, attached as Ex. B to Kone Dec. |
| 4. | Harp supported DeStefano's opponent for the Democratic nomination for Mayor, John Daniels in 1989. | Harp Depo-Vol. I, p. 192, lns. 9-15, attached as Ex. A to Kone Dec. |
| 5. | In 1993, Harp supported Artis Yopp, who was running against DeStefano for the Democratic nomination for Mayor. | Harp Depo-Vol. I, p. 185, ln. 21- p. 188 ln. 16, attached as Ex. A to Kone Dec. |
| 6. | DeStefano was elected Mayor in 1993 and began serving as Mayor in January 1994. | Transcript of the 7/21/05 deposition testimony of John DeStefano ("DeStefano Depo"), p. 11, lns. 8-9, attached as Ex. O to Kone Dec. |
| 7. | Harp was awarded a multimillion contract to redesign the Hill Career School. | Mayo Dec. ¶3. |
| 8. | In 1996, the Citywide School Building Committee recommended to the Board of Education that it hire AECI to design the new Prince Welch School. DeStefano is chair of the Citywide School Construction Committee. | Declaration of Susan Weisselberg ("Weisselberg Dec.") ¶4 and Ex. A thereto; DeStefano Depo, p. 9 ln. 1 –p. 10. ln. 12, attached as Ex. O to Kone Dec. |
| 9. | Funding for the new Prince Welch School from the State of Connecticut was approved by the Connecticut Legislature in 1996. | Weisselberg Dec. ¶3. |
| 10. | AECI was one of five architecture firms selected at that time to design new and renovated New Haven public schools. DeStefano noted at the Citywide School Building Committee meeting at which AECI was recommended for the Prince Welch School project that | Weisselberg Dec. ¶4 and Ex. A thereto. |

|     |                                                                                                                                                                                                                                                                                                                                                                                                    |                                                                                                              |
| --- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------ | ------------------------------------------------------------------------------------------------------------ |
|     | he and the Superintendent of Schools, Mayo had discussed the need to look at minority architecture firms for these projects.                                                                                                                                                                                                                                                                          |                                                                                                              |
| 11. | In 1997, the Board of Education's Administration and Finance Committee recommended approval of an agreement with AECI to the Board of Education, which it approved.                                                                                                                                                                                                                                    | Weisselberg Dec.¶4 and Ex. A thereto.                                                                        |
| 12. | On February 10, 1997, the New Haven School District and AECI entered into a contract for the design of the New Prince Welch School.                                                                                                                                                                                                                                                                   | Harp Depo-Vol. II, p. 262 lns. 7-23, attached as Ex. B to Kone Dec.; Exhibit K to Kone Dec.                  |
| 13. | From 1997-March 2000, little progress was made on the design of the Prince Welch School. Education specifications, which are a list of the requirements for the new school, were developed by AECI and delivered to the Board of Education in February 1998.                                                                                                                                            | Watt Dec. ¶4 and Ex. C thereto.                                                                              |
| 14. | In March 1998, Gilbane Building Company ("Gilbane"), was hired by the Board of Education to serve as the Program Manager for the School Construction Program. The School Construction Program is the program of the Board of Education that oversees the construction and renovation of the New Haven public schools.                                                                                    | Watt Dec. ¶3 and Ex. B thereto.                                                                              |
| 15. | Claude Watt, an employee of Gilbane, was appointed program manager for the Prince Welch School.                                                                                                                                                                                                                                                                                                       | Watt Dec. ¶3 and Ex. A thereto.                                                                              |
| 16. | On August 17, 1999, Watt directed AECI to revise the educational specifications for the school to reflect that the school would now be a pre-kindergarten through eighth grade school rather than a pre-K though fifth grade school, as originally planned, and to proceed with site analysis and planning.                                                                                             | Watt Dec. ¶5 and Exhibit D thereto.                                                                          |
| 17. | The School Based Building Advisory Committee for the new Prince Welch School (the "SBBAC") is a committee of the principals of the schools, teachers, parents, the Alderman for the ward in which the school is located, and representatives from neighboring institutions. It is constituted to advise the School Construction Program about the plans for the new school. In 1999, it expressed concern about the lack of progress in the design and construction of the new school. | Watt Dec. ¶6.                                                                                                |
| 18. | On March 27, 2000, the Board of Education, approved a new contract with AECI                                                                                                                                                                                                                                                                                                                          | Watt Dec. ¶7.                                                                                                |
| 19. | On that date, the New Haven School District and AECI                                                                                                                                                                                                                                                                                                                                                 | Watt Dec. ¶7; Ex. L                                                                                          |

| | | |
|---|---|---|
| | entered into a new contract for the design of the Prince Welch School. | to Kone Dec. |
| 20. | The Board of Education desired a new contract with AECI in order to make AECI's contract more similar to those of other architects with whom the Board of Education had contracted and to make other changes. | Harp Depo–Vol II, p, 262 lns.11-14, attached as Ex. B to Kone Dec.; Watt Dec. ¶7. |
| 21. | The 2000 Contract superseded the 1997 Contract between the parties. Paragraph 8.1.2 of the 2000 Contract provided that the 2000 Contract could be terminated by the New Haven School District at any time for the convenience of the District by the District providing notice to AECI. | Harp Depo–Vol. II, p 262, lns. 11-14, 24 -p. 263 ln. 18 attached as Ex. B to Kone Dec.; Ex. L to Kone Dec. |
| 22. | On March 31, 2000, Watt provided AECI with a notice to proceed on the Schematic Design Phase of the project. | Watt Dec. ¶8 and Ex. E thereto. |
| 23. | AECI delivered preliminary schematic design documents in June and July 2004 to the School Construction Program. | Watt. Dec. ¶9 and Ex. F thereto. |
| 24. | On August 2, 2000, Watt met with Harp and Gina Wells, the principal of the Welch Annex School to discuss a written critique of the drawings prepared by Watt. | Watt Dec. ¶9 and Exhibit G thereto. |
| 25. | Harp and Watt were unable to discuss the critique, and Wells left the meeting and reported her distress to Mayo. | Watt Dec. ¶10 and Exhibit G thereto. |
| 26. | Tom Roger ("Roger"), the Program Director, Head of School Construction and Watt's supervisor, was required to intervene. Both Watt and Roger expressed to Harp their concern that AECI was not involving the appropriate consultants in the initial design work, for example, a site surveyor, geotechnical consultant and code consultant. | Watt Dec. ¶11 and Exhibit G thereto; Declaration of Tom Roger ("Roger Dec.") ¶3. |
| 27. | Watt was also concerned that AECI was not properly staffed to provide the services required for the Project and requested on several occasions that AECI provide him with information about which AECI employees would be working on the project. | Watt Dec. ¶12 and Exhibit G thereto. |
| 28. | On August 7, 2000, Watt wrote to AECI stating that it was imperative to find a solution to the recurring challenge of his being unable to contact AECI. | Watt Dec. ¶13 and Ex. H thereto. |
| 29. | On that day, Watt also sent AECI a list of meetings with various City agencies, a description of the role of the SBBAC in the design process and a "special note" stating that no drawings were to be submitted to any groups or individuals without providing them to Watt | Watt Dec. ¶14 and Ex. I thereto. |

| | | |
|---|---|---|
| | two days prior to any presentation. | |
| 30. | A community meeting to present the early design of the school and the site to residents of the neighborhood was held on August 30, 2000. | Watt Dec. ¶15; Weisselberg Dec. ¶15. |
| 31. | Watt and Weisselberg, the Program Coordinator for the School Construction Program, attended the meeting at which AECI presented the preliminary design plans. The plans were essentially for the audience but were difficult for the audience to see. | Watt Dec. ¶15; Weisselberg Dec. ¶7. |
| 32. | On August 31, 2000, Watt wrote to AECI stating that AECI's presentation at the community meting "did not demonstrate the level of professionalism or progress that reflects effort, value or respect" and further stating "[t]he community and the Owner deserved better." The letter noted that although AECI had been instructed not to present the June 2000 schematic design drawings at the community meeting and to provide the school construction staff with the drawings that would be presented at the meeting prior to the meeting, AECI had failed to abide by either of these instructions. Finally, Watt's letter listed the documents that AECI that had been requested to produce and had failed to deliver to the School Construction Program and stated that the Program had no idea when the design would be completed and therefore could not assign its staff for scheduling and estimating. | Watt Dec. ¶16 and Ex. J thereto. |
| 33. | Subsequently, two SBBAC meetings to review AECI's educational specifications and/or schematic drawings scheduled for September 13, 2000 and September 27, 2000 had to be cancelled because Harp either showed up late for the meeting or did not show up at all. | Watt Dec. ¶17 and Exs. K and L thereto. |
| 34. | Additionally, Harp did not attend a November 21, 2000 SBBAC meeting to review schematic design drawings. | Watt Dec. ¶18 and Ex. M thereto. |
| 35. | At the same time, the New Haven Historic District Commission and the City Plan Department expressed concern that AECI's proposed design for the school, which called for a modern one and two story above ground structure, did not contribute to the urban streetscape where it was to be located. | Watt Dec. ¶19 Ex. N thereto. |
| 36. | On October 27, 2000, Watt provided AECI with a written critique of AECI's October 24, 2000 schematic design plans, noting the sprawling nature of the first floor plan and the use of skylights and a flat roof which was inconsistent with the Board of Education's wishes. | Watt Dec. ¶12 Ex. O thereto. |
| 37. | Watt believed that in response to comments from the SBBAC about AECI's drawings, AECI had made only | Watt Dec. ¶21. |

| | | |
|---|---|---|
| | minor changes and then only when Harp felt that the SBBAC's comments had merit. | |
| 38. | On November 30, 2000, Watt prepared a written critique of the schematic design drawings, which had been submitted to date. The critique included comments by the SBBAC at the November 21, 2000 meeting which Harp did not attend. | Watt Dec. ¶22 and Ex. P thereto. |
| 39. | On December 3, 2000, Watt and Harp met to discuss these comments. Watt perceived that Harp initially the comments as intrusive and inappropriate. Following the meeting, Watt wrote a memo to Paul Guidone, the Chief Operating Officer of the Board of Education, stating that in comparison with other architectural firms, "the quality of services received to date is not commensurate with payments", "the quality of services has been more reactive than proactive," and "[t]he actual conditions reflect a foot dragging reluctance on the part of the design team, where it appears that the needs of the client have become secondary to the designer's vision." | Watt Dec. ¶¶23, 24 and Ex. Q thereto. |
| 40. | On January 3, 2001, Harp presented AECI's design response to Watt's November critique. Watt perceived that in its response to his critique, AECI had addressed only one item of the critique and did not make any other changes requested including relocating the major functions of the school. | Watt Dec. ¶25 and Ex. R thereto. |
| 41. | Watt thereafter wrote to Guidone expressing his concern that AECI had ignored the concerns raised by the School Construction Program and the SBBAC, including concerns about the use of different exterior wall systems, flat roofs and skylights. | Watt Dec. ¶26 and Ex. S thereto. |
| 42. | On February 7, 2001, Watt wrote to Guidone outlining his concerns about the design of the building and AECI's apparent failure to employ necessary outside consultants. | Watt Dec. ¶27 and Ex. T thereto. |
| 43. | Harp complained to Mayo that his sense of design creativity was different from the "sense of regimentation" that Watt had. | Harp Depo-Vol. II, p. 365, lns. 10-18, attached as Ex. B to Kone Dec. |
| 44. | Harp told Mayo that he believed that there was "not a great sense of design appreciation or perhaps even design talent within the administration structure that was over [him]." Harp felt that Watt had a lack of appreciation of Harp's artistic, creative or design needs. | Transcript of the 11/1/05 deposition testimony of Wendell Harp ("Harp Depo-Vol. V"), p. 701 ln. 12 – p. 702 ln. 8, p. 714, |

| | | ln. 24 – p. 715, ln. 7, attached as Ex. E to Kone Dec. |
|---|---|---|
| 45. | Harp requested that Watt be removed as the Program Manager for the Prince Welch School. Mayo denied this request. | Harp Depo-Vol. II. p. 364 ln. 18 – p. 366 ln. 15; Harp Depo–Vol V. ,p. 698 ln. 1-19, p. 700 ln. 19-p. 702 ln. 12 attached as Ex. E to Kone Dec. |
| 46. | In January 2001, the New Haven Historic District Commission wrote to the Mayor, in his capacity as chair of the Citywide School Building Committee, expressing concern about the design of the new Prince Welch School and the demolition of three apartment buildings known as the Three Sisters to make room for the school. The letter noted that although the Commission had requested that the architect for the school show the surrounding neighborhood in its drawings, it has failed to do so unlike other architects for the schools who had appeared before the Commission. | Watt Dec. Ex. N. |
| 47. | On August 2, 2001, Watt gave AECI a written notice to proceed with the Design Development phase of the Project. The Notice to Proceed noted that two independent cost estimates based upon the schematic design documents for the project had been prepared which indicated that the costs of the project would significantly exceed the budget and that AECI had rejected these estimates. The Notice to Proceed also stipulated that AECI upon receipt of the Notice was required to provide the Board of Education with a schedule for the completion of Design Development documents. | Watt Dec. ¶28 Ex. U thereto. |
| 48. | On September 20, 2001, Watt wrote to AECI stating that there had been no progress on the Design Development documents, AECI had failed to submit a schedule for completion of the documents as requested and that there would be 'severe programmatic and financial impacts "if the project were delayed any further." | Watt Dec. ¶29 Ex. V thereto. |
| 49. | On September 25, 2001, Watt wrote to AECI directing AECI to provide letters from AECI's consultants certifying that they had fully executed agreements with AECI, invoices that reflected the services outlined in the 2000 Contract, a listing of the amount of | Watt Dec. ¶30 and Ex. W thereto. |

| | | |
|---|---|---|
| | consultants' contracts by phase, and a list of the contents of the Design Development documents to be delivered over a four month schedule. The letter also stated that the SBBAC would meet monthly to review comments on design and refine the space program, AECI would be required to provide validation that the cost of the school was within the budget and Watt would attend weekly progress meetings in AECI's office. | |
| 50. | On October 15, 2001, Watt sent an e-mail to Roger stating that AECI had failed to submit the requested certifications from its consultants. Watt was concerned that AECI had not engaged the required consultants, which would result in "a marginal quality of services" and have "an adverse impact on the delivery of a buildable set of construction documents." Watt also noted that AECI had not forwarded a schedule of when it would be submitting Design Development documents an that it had rejected Watt's requests that AECI meet with the SBBAC for input on design and that Watt meet with AECI at its office weekly to review progress on the Design Development documents. The email also stated that AECI had refused to submit copies of consultant agreements, rejected the estimates prepared by Giordano and Gilbane Construction Company, Inc. ("Giordano"), the construction manager and had not submitted information about how AECI intended to reduce cost overruns. Watt made a number of recommendations to Roger including that payments not be released to AECI until consultant information was provided and that the scope of services that AECI was to provide for the school be reduced. | Watt Dec. ¶31 and Ex. X thereto. |
| 51. | On November 20, 2001, Watt wrote to AECI stating that AECI had not fully complied with his requests for information, that the SBBAC had not been given the opportunity to comment on the Design Development documents and that Watt had not been given the opportunity to attend weekly progress meetings. Watt stated that AECI had put him "in a position of reporting to the Owner that there exists no substantive evidence that the Architect is preceding with the design development phase or is in compliance with the requirements of its Agreement with the Owner." | Watt Dec. ¶32 and Ex. Y thereto. |
| 52. | On November 20, 2001, Watt reported to Guidone that AECI "has not demonstrated the required due diligence to complete the design phase of the project in a timely | Watt Dec. ¶33 and Ex. Z thereto. |

| | manner." | |
|---|---|---|
| 53. | In a letter dated November 26, 2001, Watt wrote to AECI: "[a]s the assigned Architect, you appear to have chosen to ignore the Owner's stipulation that there shall be Owner, User and Public input into the design solution and development t. . . . Even though, I respect your desire to produce an edifice that reflects your creative inspiration. It must also satisfy the Owners programmatic intentions, the User's operational activities, serve the community and be constructed within the available budget." | Watt Dec. ¶34 and Ex. AA thereto. |
| 54. | AECI had been unwilling to show the SBBAC the design development documents that were in progress, because the manner in which Harp designed the building was in Harp's words: "one, both reflecting their requirements but also one of just inspiration of design and something such as design creativity without purely mechanical functions and that [I] would often go through a series of designs and a series of presentations not satisfying myself and therefore be unwilling – not satisfy [me] creatively and therefore not be willing to present it to the board simply to meet their design time frame, and . . . that [we] would meet the criteria of meeting within that four-month time frame but not necessarily on a weekly basis or several weekly basis". | Harp Depo–Vol. V, p. 796 ln. 18 – , 797 ln. 12, attached as Ex. E to Kone Dec. |
| 55. | On or about December 3, 2001, AECI submitted to the School Construction Program a set of Design Development documents for estimating the costs of construction of the school. Ram Joglekar ("Joglekar"), the estimator for Gilbane, wrote to Watt on December 17, 2001 stating that the documents were not adequate for estimating purposes and that "very little progress (if any) has been made in the last one year." | Watt Dec. ¶55 and Exhibit BB thereto. |
| 56. | In January 2002, the Board of Education commenced an arbitration against Harp alleging malpractice and breach of contract in connection with the design of the Hill Career High School. | Weisselberg Dec. ¶8. |
| 57. | The Board of Education had been sued by contractors and subcontractors who claimed delay damages as a result of Harp's architectural work on the high school. | Weisselberg Dec. ¶8. |
| 58. | On January 28, 2002 a meeting was held with Mayo about the quality of the design documents and service to the Prince Welch School. | Watt Dec. ¶36 and Ex. CC thereto. |
| 59. | On January 31, 2002, AECI presented a new set of Design Development documents. | Watt Dec. ¶37 Ex. DD thereto. |
| 60. | Joglekar began to review the documents in order to | Watt Dec. ¶38 and |

| | | |
|---|---|---|
| | provide an estimate of the cost of constructing the school. He determined that they were "inadequate, incomplete and far short of the requirements to complete this task." | Ex. EE thereto. |
| 61. | The Design Development Documents were returned to AECI for revision. | Watt Dec. ¶39. |
| 62. | AECI submitted revised drawings on February 20, 2002. | Watt Dec. ¶40 and Ex. DD thereto. |
| 63. | Both Joglekar and Giordano Construction, requested information about items that needed more detail or were missing information. | Watt Dec. ¶41 and Exs. DD and FF thereto. |
| 64. | In early April 2002, Joglekar and Watt met with AECI and its consultants about the lack of information in the drawings. Harp stated that revised drawings would be provided after May 1, 2002 but would not commit to a date when they would be submitted. | Watt Dec. ¶42 and Ex. GG thereto. |
| 65. | In mid May 2002, AECI submitted revised Design Development documents, which it characterized as 25% Construction Documents, a characterization that Watt rejected. | Watt Dec.¶43 and Ex. HH thereto. |
| 66. | Because information was still missing, Joglekar's estimate included allowances to cover the unanswered questions. | Watt Dec ¶43 and Ex. HH thereto. |
| 67. | On May 8, 2002, the Historic District Commission met. There were a number of negative comments about the design of the school, particularly its modern suburban look, white brick façade and long windows. The Historic District Commission again requested that AECI provide drawings of the school in the context of the neighborhood. | Watt Dec. ¶44. |
| 68. | On May 19, 2002, the New Haven Register ran an editorial describing the school as a "design turkey." | Peschell Dec. ¶ 9. |
| 69. | On May 20, 2002, Roger wrote to Guidone and others, including the Mayor, Mayo and Weisselberg, stating that there was a possibility that the school would have to be redesigned because a parcel of land belonging to a church might not be available for purchase. Roger suggested that if the school were to be redesigned in view of AECI's "poor performance . . . on meeting its' contractual responsibilities and a serious concern (i.e. based on their performance on previous project assignments) that AECI will be unable to produce a complete and coordinated set of documents in a timely manner" that the Board of Education consider retaining AECI as a designer only to perform schematic designs for the redesigned school. Roger recommended that | Roger Dec. ¶4 and Ex. A thereto. |

|  | another firm be retained to be the architect of record and to produce the design development and construction documents and to perform construction administration. |  |
|---|---|---|
| 70. | On June 4, 2002, Watt requested that AECI provide a proposal for the redesign work, which would address the criticisms of the Historic District Commission. | Watt Dec. ¶45 and Ex. II thereto. |
| 71. | On June 19, 2002, Watt amended his prior letter in view of news that the Church property would be available for purchase. Watt requested that AECI provide two proposals: (1) a proposal to redesign the school and a (2) proposal to provide the design work for the schematic design and the design development phases with the construction document phase work and the construction administration work being awarded to another architectural firm. | Watt Dec. ¶46 and Ex. JJ thereto. |
| 72. | In May 2002, Roger, contacted two other architectural firms—Davis Brody Bond, a minority owned firm located in New York, and Ken Boroson—and requested that they submit proposals to do the redesign work for the Prince Welch School. | Roger Dec. ¶5. |
| 73. | On May 29, 2002, Harp wrote to Mayo again requesting that Watt be removed as Program Manager for the Prince Welch School. | Ex. M to Kone Dec.; Harp Depo-Vol. V, p. 700 lns. 4-24, attached as Ex. E to Kone Dec. |
| 74. | Mayo was aware that Watt had made requests for documents that AECI had not responded to in a timely fashion, that Harp "was stubborn" about the input Watt gave him about the design or certain pieces of the design and that Watt was not getting design details from AECI. | Transcript of the deposition testimony of Dr. Reginald Mayo ("Mayo Depo") p. 10 ln. 22 – p. 12 ln. 22 attached as Ex. N to Kone Dec. |
| 75. | In June 2002, certain neighborhood residents, business owners and institutions filed an action Court entitled <u>Batiste, et al. v. City of New Haven, et al.</u>, Civil Action No. 3:02 CV 983 (SRU), to enjoin the condemnation of their properties for the new Prince Welch School. On July 3, 2002, Watt notified AECI that its design efforts would be put on hold until further notice. | Watt Dec. ¶47 and Ex. KK thereto. |
| 76. | On December 20, 2002, this Court (Underhill, J.) entered judgment in favor of the defendants in the <u>Batiste</u> case. See <u>Batiste v. City of New Haven</u>, 239 F. Supp. 2d 213 (D. Conn. 2002). | <u>Batiste v. City of New Haven</u>, 239 F. Supp. 2d 213 (D. Conn. 2002). |
| 77. | Following the decision in <u>Batiste</u>, the School | Watt Dec. ¶48 and |

| | | |
|---|---|---|
| | Construction Program and DeStefano considered various options concerning the new Prince Welch School, including altering the site configuration, redesigning the school and proceeding with a new architect. | Ex. LL thereto; DeStefano Depo, p. 20 ln 13 - p.25 ln. 28, p. 27 lns. 25 – p. 28 ln. 25, attached as Ex. O to Kone Dec. |
| 78. | In February –March, 2003, the School Construction Program, DeStefano and Mayo decided to recommend to the Citywide School Building Committee that the site be reduced in order to retain the Three Sisters Apartment buildings and that the school be redesigned to make it more traditional. | DeStefano Depo, p. 20 ln 13- p. 23 ln. 25, p. 26 ln. 11 – p. 28 ln. 25 attached as Ex. O to Kone Dec. |
| 79. | In late 2002 to early 2003, Watt, Roger and Weisselberg advocated changing the architect as did DeStefano. | Watt Dec. ¶49 and Ex. MM thereto; Roger Dec. ¶6; Weisselberg Dec.¶6; Mayo Dec. ¶5; Mayo Depo, p. 13 ln.12- p. 14 ln.16, attached as Ex. N to Kone Dec. |
| 80. | On March 5, 2003, Roger called Davis Brody and Bond to talk to them about taking over as architects for the Prince Welch School. | Roger Dec. ¶7. |
| 81. | Both Weisselberg and Watt prepared draft memoranda which explained the need for a change in architect. | Watt Dec. ¶49 and Ex. MM thereto; Ex. D to Weisselberg Dec. |
| 82. | Additionally, John Prokop ("Prokop"), the chair of the Board's Administration and Finance Committee, urged Mayo and DeStefano to engage another architect for the redesign work. | Prokop Dec. ¶2. |
| 83. | At the end of March 2003, at Mayo's urging, AECI was given one last change to serve as architect for the school. | Mayo Depo, p. 13 ln. 12 – p. 14 ln. 12, attached as Ex. to N Kone Dec. |
| 84. | Mayo sought to retain AECI, because AECI was the only local minority owned architecture firm working in the School Construction Program and the New Haven public schools are over 80 % minority. Additionally Mayo had a personal relationship with Harp. | Mayo Dec. ¶7. |
| 85. | Mayo promised that he would ensure that AECI would abide by the redesign timelines, the design criteria and other requirements requested by the School Construction Program. | Mayo Depo, p. 13 ln. 1 – p. 14 ln. 25, attached as Ex. N to Kone Dec. |
| 86. | Mayo, DeStefano, certain employees of Gilbane and possibly some members of the Board of Education's | DeStefano Depo, p.26 ln. 11 – 20, |

|    | Administration and Finance Committee verbally agreed amongst themselves that AECI would be retained to redesign the Prince Welch School provided that AECI agree to the School Construction Program's design, timeline and other criteria. | attached as Ex. O to Kone Dec.; Mayo Depo, p.16 lns. 11-19, p. 23 ln. 19 – p. 24 ln. 8., attached as Ex. N to Kone Dec. |
|---|---|---|
| 87. | At this time, DeStefano was aware that Harp and Mrs. Harp were supporting Killins as the Democratic candidate for Mayor in the election in the fall of 2003. DeStefano first became aware that Mrs. Harp would be supporting Killins as a challenger for mayor in October 2002 when the Board of Directors of Empower New Haven held a meeting before Killins' employment with Empower New Haven was terminated at DeStefano's request. | DeStefano Depo, p. 35 ln.17 – p. 36 ln.9, attached as Ex. O to Kone Dec. |
| 88. | At that meeting Killins was sitting next to Mrs. Harp. | DeStefano Depo, p. 36 lns. 5-7, attached as Ex. O to Kone Dec. |
| 89. | DeStefano interpreted such support as a sign that Killins would be the challenger for the Democratic nomination for mayor in the next election and told Mayo of his prediction. | DeStefano Depo, p. 36 lns. 5-9, attached as Ex. O to Kone Dec.; Mayo Depo, p 38 ln. 11 – p. 39 ln. 4, attached as Ex. N to Kone Dec. |
| 90. | On March 10, 2003, before DeStefano had acquiesced to Mayo's request that AECI be retained for the Prince Welch project, an article appeared in the <u>New Haven Register</u>, which stated that Democrats for the Future, a predominantly black political action committee "often associated with city architect Wendell Harp" is said to be seeking a candidate to mobilize the minority electorate and take on DeStefano. | Peschell Dec. Ex. 2. |
| 91. | On March 13, 2003, an article appeared in the <u>New Haven Advocate</u> that reported that Killins had said that she had been approached "by powerbroker Wendell Harp who's on the outs" with the mayor to run as a Democrat in a primary against DeStefano. | Peschell Dec. Ex. 3. |
| 92. | In addition, during the first week of April 2003, Harp met with Mayo and told Mayo that he and Mrs. Harp would be supporting Killins for the Democratic nomination for Mayor. | Mayo Depo, p. 48 lns. 6- p. 49 ln. 4 attached as Ex. N to Kone Dec.; Harp Depo-Vol. I, p. 142 lns., 18-19 attached as Ex. A to Kone |

| | | |
|---|---|---|
| | | Dec.; Harp Depo.-Vol. II p. 273 ln. 11 – p. 275 ln. 20 |
| 93. | Mayo relayed this conversation to DeStefano. | Mayo Depo, p. 48 lns. 6-24, attached as Ex. N to Kone Dec. |
| 94. | During 2002, Harp and Mrs. Harp had consistently opposed DeStefano on a number of political issues. | DeStefano Depo, p. 34 ln. 3 – p. 35 ln. 10, attached as Ex. O to Kone Dec. |
| 95. | From January - March 2002, DeStefano, Harp and Mrs. Harp supported opposing candidates for Chair of the Democratic Town Committee. | DeStefano Depo, p. 32 ln. 12– p.33 ln. 14, attached as Ex. O to Kone Dec.; Harp Depo–Vol. II, p.288 ln. 15- p. 292 ln. 14, p. 304 lns. 15-24 attached as Ex. B to Kone Dec. |
| 96. | Additionally, the Mayor had supported a revision to the Charter of the City that would provide that mayoral elections would be held every four years rather than every two years as currently provided in the Charter. | DeStefano Depo, p. 34 ln.25 – p. 35 ln. 10 attached as Ex. O to Kone Dec. |
| 97. | Harp and Mrs. Harp worked successfully to defeat this proposed revision in the November 2002 election. | Harp Depo–Vol. II, p. 301 ln. 24, - p. 304 ln. 14 attached as Ex. B to Kone Dec.; DeStefano Depo, p. 34 ln.19 –p. 35 ln. 10, attached as Ex. O to Kone Dec. |
| 98. | Moreover, in the September 2002 primary for the 95th State Representative district seat, Harp and Mrs. Harp supported one candidate who opposed the Prince Welch school location, while DeStefano supported his opponent. | DeStefano Depo, p. 34 ln. 21 p. 35 ln. 10 attached as Ex. O to Kone Dec.; Ex. 4 to Peschell Dec.; Harp Depo–Vol. II, p. 296 ln. 21- p. 301 ln. 23 attached as Ex. B to Kone Dec. |
| 99. | As stated above, in late March 2003, it was decided that AECI would be retained to redesign the Prince Welch School. It was further decided that Mayo would negotiate the redesign contract with AECI. On April 2, 2003, at Mayo's request Watt provided Mayo with information concerning the redesign criteria for the | Watt Dec. ¶50 and Ex. NN thereto. |

| | | |
|---|---|---|
| | School for Mayo to provide to AECI. | |
| 100. | On April 7, 2003, Mayo met with Harp to request a proposal from AECI for the redesign of the school. | Watt Dec. ¶51 and Ex. OO thereto. |
| 101. | On April 8, 2003, Watt sent AECI a letter directing it to restart the design phase. | Watt Dec. ¶51 and Ex. OO thereto. |
| 102. | On April 8, 2003, AECI submitted a cost proposal for the redesign of the school. | Watt Dec. ¶ 5 and Ex. PP thereto. |
| 103. | On April 10, 2003, the Citywide School Building Committee approved the redesign of the school, including locating the school on a smaller lot. | Weisselberg Dec. ¶11 and Ex. E thereto. |
| 104. | On April 24, 2003, Watt sent AECI a new form of Architect's agreement which was to replace and supersede the 2000 Contract. | Watt Dec. ¶53 and Ex. QQ thereto. |
| 105. | AECI wrote to Watt asking if it should proceed or wait until the Corporation Counsel acted, and requested that Watt let AECI know or send a notice to proceed. | Watt Dec. ¶54 and Ex. RR thereto. |
| 106. | On April 28, 2003, Watt provided AECI with a verbal Notice to Proceed with land use studies. | Watt Dec. ¶54 and Ex. RR thereto. |
| 107. | On April 27, 2003, the New Haven Register ran an editorial calling AECI's design for the Prince Welch School "an architectural atrocity" and stating that "City Hall . . . should never again hire Wendell Harp as the architect of a city school." | Peschell Dec. ¶ 7 and Ex. 6 thereto. |
| 108. | On May 1, 2003, Watt drafted a Notice to Proceed with Land Use Concept Study to be sent to AECI. | Watt Dec. ¶55 and Ex. SS thereto. |
| 109. | Mayo became upset with Watt for doing so and told Watt not to send it to AECI. | Watt Dec. ¶55. |
| 110. | Mayo wanted AECI to agree in writing to parameters for the design for the building and performance and timeline standards before AECI began work. | Mayo Depo, p. 17 ln. 18- p. 18 ln. 7, attached as Ex. N to Kone Dec. |
| 111. | On May 1, 2003, Watt left a message with AECI that no work was to be performed until further notice. | Watt Dec. ¶56 and Ex. TT thereto. |
| 112. | Watt was told that AECI was not to proceed with the contract until there was an amendment to AECI's contract. | Watt Depo, p.17 ln. 23 – p. 20 ln. 2, attached as Ex. P to Kone Dec. |
| 113. | Watt spoke to Harp on May 6, 2003 and reconfirmed that AECI was not to proceed with the project. | Watt Dec. ¶57 and Ex. UU thereto. |
| 114. | Thereafter, Mayo instructed Watt to draft a set of design criteria that would reflect the concerns of the historic preservation community about AECI's design and to draft a written set of expectations and timelines. | Mayo Depo, p. 17 ln. 18 – p. 18 ln. 24, attached as Ex. P to Kone Dec.; Watt Depo, p. 18 lns. 3-12 |
| 115. | Watt subsequently drafted an Exhibit to the Architect Agreement entitled "Supplemental Conditions for the | Watt Dec. ¶58 and Ex. VV thereto. |

| | | |
|---|---|---|
| | Redesign" which provided that the school would be three floors above grade, would incorporate the use of red brick and modular windows including discreet punched window openings for repetitive glass sizes of neutrally tinted glass, would not have undifferentiated long ribbon windows and spandrels, would have a setback that was compatible with the pattern of adjacent blocks and would "rely heavily on rectilinear forms" (the "Supplemental Conditions"). The Supplemental Conditions also included time frames for performance, including that conceptual designs be provided by AECI by July 23, 2003, schematic drawings be completed by October 9, 2003 and Design Development documents be submitted by October 22, 2003. | |
| 116. | Mayo provided the Supplemental Conditions to Harp on a date between May 9, 2003 - May 13, 2003. | Harp Depo–Vol. I, p. 174 ln. 22 – p. 181 ln. 11, attached as Ex. A to Kone Dec.; Mayo Depo, p. 18 ln. 11-24e, attached as Ex. N to Kone Dec. |
| 117. | Harp called Mayo and asked to meet with Mayo about the Supplemental Conditions. | Mayo Depo, p. 18 ln. 25 – . 19 ln. 22, attached as Ex. N to Kone Dec. |
| 118. | On May 13, 2003, Harp met with Mayo at Mayo's office. | Mayo Depo, p. 19 lns.1-25, attached as Ex. N to Kone Dec.; Harp Depo–Vol. I, p. 178 lns. 2-19, p. 179 ln. 17 – p. 181 ln. 14 attached as Ex. A to Kone Dec., Harp Depo-Vol. II, p. 309 lns. 14-19, attached as Ex. B to Kone Dec. |
| 119. | **At that meeting Harp provided Mayo with a cover sheet and marked-up version of the Supplemental Conditions. On a cover sheet to the Supplemental Conditions, Harp wrote that he had two concerns – "timeliness and design." With respect to the design requirements, Harp wrote, "The requirements spelled out in the letter almost dictate a box with "punched window openings . . . What is the purpose** | Mayo Depo, p. 21 ln. 12 – p. 22 ln. 1, attached as Ex. N to Kone Dec.; Harp Depo–Vol. I, p. 174 ln. 22 – p. 181 ln. 24; Harp Depo–Vol. II p. 309 ln. 12-20, |

| | | |
|---|---|---|
| | of such a meaningless and terrible looking criteria? Revise please." (emphasis added). On page 3 of the Supplemental Conditions, Harp wrote "These design limitations create a box' why!!" (emphasis added). He also wrote, "why the requirement to make a box like school?" (emphasis added). Mayo and Harp discussed Harp's concerns. Harp told Mayo that he was concerned was that he was being forced to draw a box. | attached as Ex. B to Kone Dec.; Ex. H to Kone Dec. |
| 120. | Mayo told Harp that Harp would have to work it out with Watt. | Harp Depo– Vol. I p. 181 lns. 15-24, attached as Ex. A to Kone Dec.; Mayo Depo, p. 22 ln. 4 – p. 25 ln. 18, attached as Ex. N to Kone Dec. |
| 121. | Harp agreed that he would try to work out his differences with Watt. | Mayo Depo, p. 2 ln. 19 – p. 25 ln. 19, attached as Ex. N to Kone Dec. |
| 122. | One day after Harp's meeting with Mayo, on May 14, 2003, an article appeared in the New Haven Register that stated that Killins was running for the Democratic mayoral nomination and that Mrs. Harp was supporting her. There was no mention of Harp's support for Killins in the article, and the newspaper reported that the reporter was unable to contact Harp for his comments on Killins' candidacy. Although the article mentioned that Killins' headquarters were located in a building owned by Harp's company, Harp rents space in his buildings to political candidates whom he does not support. | Exs. I, J to Kone. Dec. |
| 123. | Several days after his meeting with Harp, Mayo told DeStefano about his meeting with Harp about the design criteria. | Mayo Depo, p. 24 ln. 9 – p. 25 ln. 18, attached as Ex. N to Kone Dec.; DeStefano Depo, p. 27 ln. 8 – p. 28 ln. 10, attached as Ex. O to Kone Dec. |
| 124. | Mayo told DeStefano that Harp had reluctantly agreed to work out his differences with Watt. | Mayo Depo, p. 24 ln. 13 – p. 25 ln. 18, attached as Ex. N to Kone Dec. |
| 125. | Mayo told DeStefano that he did not think that Harp and Watt could work together, that he was concerned | De Stefano Depo, p. 27 ln. 13-20, |

| | | |
|---|---|---|
| | that AECI would not comply with the redesign criteria and the performance standards that the School Construction Program staff were requiring and that he thought that Harp wanted more creativity. | attached as Ex. O to Kone Dec.; Mayo Depo, p. 24 ln. 9 – p. 26 ln. 14, attached as Ex. N to Kone Dec. |
| 126. | DeStefano asked Mayo if he thought that AECI's contract should be continued, and Mayo told DeStefano that he thought that the contract should be terminated. | Mayo Depo, p. 24 ln. 9 – p. 26 ln. 14, attached as Ex. N to Kone Dec.; DeStefano Depo, p. 27 ln. 6 – p. 28 ln. 21, attached as Ex. O to Kone Dec. |
| 127. | DeStefano believed that it was not in the best interest of the project to continue the relationship with AECI and that the Board of Education was not going to get the project done with AECI. | DeStefano Depo, p. 27 ln. 6 – p. 28 ln. 25, attached as Ex. O to Kone Dec. |
| 128. | On May 16, 2003, Weisselberg spoke to Chris Grabe ("Grabe"), one of the principals of Davis Brody Bond, about taking over the Prince Welch design work. | Weisselberg Dec.¶12 |
| 129. | (Weisselberg faxed Grabe the Supplemental Conditions and portions of the proposed revised contract with AECI on May 20, 2003 | Weisselberg Dec. ¶13 and Ex. F thereto. |
| 130. | Davis Brody Bond agreed to take over the project and to adhere to the Supplemental Conditions | Weisselberg Dec. ¶13. |
| 131. | On May 23, 2003, the Administration and Finance Committee of the Board of Education considered the termination of AECI's contract at a Special Meeting. The Special Meeting was called to consider the approval of a Food Service Workers' Contract, the termination of AECI's contract and the hiring of Davis Brody Bond to redesign the new Prince Welch School. | Weisselberg Dec. ¶14 and Ex. G thereto. |
| 132. | The termination of AECI's contract and the hiring of Davis Brody Bond were considered at a special meeting rather than waiting for the regular meeting of the Administration and Finance Committee so that these items could appear on the next regularly scheduled meeting of the full Board of Education, which was scheduled for May 27, 2003. The School Construction Program was anxious to obtain approval for the new architect so that the design could proceed as soon as possible after having been delayed for so long.  The project schedule anticipated that construction would begin in 2004 and be completed in the Spring 2006.  The School Construction Program also wanted the SBBAC to meet with the new architect | DeStefano Depo, p.35 lns. 11-16, attached as Ex. N to Kone Dec.; Weisselberg Dec. ¶15 and Exs. G, H thereto. |

| | | |
|---|---|---|
| | before the school year ended so that design work could begin as quickly as possible. | |
| 133. | The Administration and Finance Committee is comprised of three members of the Board of Education. At that time, the members of the Committee were Prokop, its chair, Richard Abbatiello ("Abbatiello") and Frances Padilla. | Prokop Dec. ¶4. |
| 134. | These members present at the May 23rd meeting. Also present at the meeting in order to discuss this item were DeStefano, Mayo, Tom Ude, the Corporation Counsel, Roger, Weisselberg, and Watt. | Ex. H to Weisselberg Dec |
| 135. | At the meeting, there was a discussion about whether AECI would deliver the school that the School Construction Program wanted in the time frame requested. | Prokop Dec. ¶5. |
| 136. | The members of the Administration and Finance Committee were very familiar with AECI's performance with respect to the Prince Welch School and the Hill Career High School. | Prokop Dec. ¶6; Abbatiello Dec. ¶4. |
| 137. | On several occasions, following other Administration and Finance Committee meetings at which Watt, Roger and/or Weisselberg were present, Prokop had asked them about how the Prince Welch project was proceeding. | Prokop Dec. ¶7; Abbatiello Dec. ¶5. |
| 138. | During these conversations, the members of the Administration and Finance Committee learned that Harp had not shown up at SBBAC meetings, Harp was concerned more with his "vision" as to what he wanted the school to look like than the concerns of the School Construction Program and the SBBAC and that although Harp would say that AECI would make design changes requested by the School Construction Program and the SBBAC, in fact, the designs would not be altered. | Prokop Dec. ¶8; Abbatiello Dec. ¶5. |
| 139. | In addition, the members of the Committee knew from the School Construction Program staff that Harp was unresponsive to requests from Watt for information, was generally uncooperative with the staff and that there were delays in his producing useable drawings. | Prokop Dec. ¶9; Abbatiello Dec. ¶6. |
| 140. | In Prokop's view, terminating AECI's contract was long past due, and if the contract were not terminated, there would be increased losses and expenses to the Board of Education. | Prokop Dec. ¶10. |
| 141. | At Prokop's recommendation, the Administration and Finance Committee recommended to the Board of Education that AECI's contract be terminated and that | Prokop Dec. ¶11; Ex. H to Weisselberg Dec. |

|  | Davis Brody Bond be hired to redesign the Prince Welch School. |  |
|---|---|---|
| 142. | At the May 23rd Administration and Finance Committee meeting, Prokop requested that Weisselberg supply him with bullet points concerning Harp's and AECI's performance problems at Hill Career High School and the Prince Welch School for him to use at the full Board of Education meeting the following Tuesday, which she did. | Prokop Dec. ¶11; Weisselberg Dec. ¶17 and Ex. I thereto. |
| 143. | He also requested that Watt send him documents regarding AECI's performance problems at Prince Welch, which Watt did on May 27, 2003. | Watt Dec. ¶59; Prokop Dec. ¶12. |
| 144. | Included in the items sent to Prokop were Watt's memo to Guidone dated December 12, 2000, Watt's memo to Guidone dated August 3, 2000, Watt's letter to AECI dated August 31, 2000, and Watt's letter to AECI dated November 26, 2001. | Watt Dec. ¶59 and Ex. WW thereto. |
| 145. | On May 27, 2003, a regular meeting of the Board of Education was held. The Board members in attendance at the meeting were Dr. Carlos Torre, the President of the Board ("Torre"), Prokop, Susan Whetstone ("Whetstone"), Dr. Brian Perkins ("Perkins"), Abbatiello, and DeStefano. | Weisselberg Dec. ¶18 and Ex. J thereto. |
| 146. | DeStefano does not recall having spoken to any of the members about the proposed termination of AECI's contract before the meeting, but that he may have asked Dr. Mayo to do so. | DeStefano Depo. p. 31 lns. 3-12, attached as Ex. O to Kone Dec. |
| 147. | The Board unanimously voted to terminate AECI's contract and to hire Davis Brody Bond. | Ex. K to Weisselberg Dec. |
| 148. | Torre voted to terminate AECI's contract, because he understood that AECI was balking at the design criteria in the proposed redesign contract, and, in his view, this was "the straw that broke the camel's back." | Torre Dec. ¶4. |
| 149. | Torre, as President of the Board of Education, spoke frequently to the Superintendent – approximately 2-3 times each week. In addition, he would often speak to Prokop, as Prokop was chair of the Administration/Finance Committee, and both were employed by the Southern Connecticut State University. | Torre Dec. ¶5. |
| 150. | Torre as President of the Board would on occasion attend Administration and Finance Committee meetings. He understood that AECI had not followed the requirements of the School Construction Program, that the Hill Career High School had been plagued by delays and other problems and that Harp was difficult | Torre Dec. ¶6; Exhibit E to Weisselberg Dec. |

| | | |
|---|---|---|
| | to work with. He was also a member of the Citywide School Building committee. | |
| 151. | Torre felt that it was not going to work to have AECI redesign Prince Welch. | Torre Dec. ¶7. |
| 152. | Torre did not know that Harp or his wife were supporting Sherri Killins for Mayor and just learned of this fact in the past two weeks in connection with this lawsuit. | Torre Dec. ¶8. |
| 153. | Whetstone voted to terminate AECI's contract because she understood that there were artistic differences between what the Mayor and the Superintendent wanted the school to look like, on the one hand, and what Harp wanted the school to look like, on the other hand, which could not be resolved. | Whetstone Dec. ¶6. |
| 154. | Whetstone had served as Coordinator for the School Construction Program from 1995 through part of 1997. | Whetstone Dec. ¶7. |
| 155. | Whetstone had negotiated AECI's 1997 contract for the design of the Prince Welch School and had supervised AECI's contract for a period of time. | Whetstone Dec. ¶8. |
| 156. | Whetstone knew that Harp could be difficult to work with, as she had to push him to meet deadlines, was strong minded about his vision of what the school should look like, and insisted on going things his own way. | Whetstone Dec. ¶9. |
| 157. | Whetstone had found Harp more difficult to work with than other architects in getting agreement on a contract, developing a building program and meeting deadlines. | Whetstone Dec. ¶10. |
| 158. | Whetstone does not remember if when she voted to terminate AECI's contract that Harp and his wife were supporting Sherri Killins for Mayor, but she does recall that Harp's and/or his wife's support for Killins did not factor into her decision to vote to terminate AECI's contract. | Whetstone Dec. ¶11. |
| 159. | Perkins voted to terminate AECI because he was not in favor of AECI redesigning Prince Welch as he was dissatisfied with AECI's performance designing the Hill Career High School and because he understood that AECI had not incorporated into its design for the Prince Welch School the ideas that the School Construction Program wanted. | Perkins Dec. ¶4. |
| 160. | As a professor, Perkins sometimes used classrooms at Hill Career High School during the summer and found that it functioned poorly as a school. He found that classrooms were not well designed, particularly computer labs where students could not see projectors or the board, that storage areas and closets were not | Perkins Dec. ¶5. |

| | | |
|---|---|---|
| | well placed and the entrances and exits to the auditoriums were not well situated. | |
| 161. | Perkins also understood that the relationship between the School Construction Program and AECI was not going well. | Perkins Dec. ¶6. |
| 162. | Perkins does not read the <u>New Haven Register</u> and did not know that Harp and his wife supported Killins' candidacy for Mayor when he voted to terminate the AECI contract. | Perkins Dec. ¶7. |
| 163. | Abbatiello voted to terminate AECI's contract because Harp had been resistant to input by the School Construction Program and the SBBAC on his design for the Prince Welch School, wanted 100% control over the design and had an attitude of "this is my building – take it or leave it." | Abbatiello Dec. ¶7. |
| 164. | He understood that Harp had balked at redesigning the school in the manner requested by the School Construction Program. | Abbatiello Dec. ¶7. |
| 165. | In addition, Abbatiello knew that Watt could not get the information that he needed from AECI, that Watt felt that AECI was not doing what it should be doing under its contract with the Board of Education and that Harp was argumentative and uncooperative. | Abbatiello Dec. ¶8. |
| 166. | Additionally, Abbatiello knew that Harp had made many mistakes in the design of the Hill Career High School and that there were cost overruns for that project. | Abbatiello Dec. ¶9. |
| 167. | He believed that the relationship between AECI and the Board of Education was not working. He did read in the <u>New Haven Register</u> that Mr. and Mrs. Harp were supporting Killins for Mayor, but this information did not factor into his decision to vote to terminate AECI's contract with the Board of Education. | Abbatiello Dec. ¶¶10, 11. |
| 168. | Prokop voted to terminate AECI's contract because, as stated above, he had urged Mayo and DeStefano not to retain AECI for the redesign of the Prince Welch School. | Prokop Dec. ¶13. |
| 169. | Prokop felt that AECI had not been cooperative with the requests of the School Construction Program and the SBBAC, had been unwilling to make design changes although it had promised to do so and had delayed the delivery of acceptable drawings. | Prokop Dec. ¶14. |
| 170. | Harp had not shown up for SBBAC meetings, had made life unbearable for Watt, and in Prokop's view "would still try to put his signature on the school no matter what the Board was asking for." | Prokop Dec. ¶14. |

| | | |
|---|---|---|
| 171. | Prokop had visited the Hill Career School while it was in construction and knew of the problems with the school. He knew of the expenses that Hill Career had cost the Board of Education and did not want to see the problems with Hill repeated with the Prince Welch School. | Prokop Dec. ¶15. |
| 172. | Prokop did not know that Killins' candidacy for Mayor was supported by Harp or his wife and does not read the New Haven Register. | Prokop Dec. ¶16. |
| 173. | On May 28, 2003, a letter was hand delivered and mailed to AECI signed by Torre terminating the 2000 Contract pursuant to Section 8.1.2. | Weisselberg Dec. ¶19 and Ex. K thereto. |
| 174. | Davis Brody Bond has redesigned the new Prince Welch School in a manner satisfactory to the School Construction Program and the historic preservation community, and construction of the new school is anticipated to be completed in Spring/Summer 2006. | Weisselberg Dec. ¶20. |

DEFENDANTS,
JOHN DESTEFANO, CITY OF NEW
HAVEN and NEW HAVEN BOARD OF
EDUCATION

By:    _____/s/ Carolyn W. Kone_____
Carolyn W. Kone (ct 06207)
Rowena A. Moffett (ct19811)
BRENNER, SALTZMAN & WALLMAN LLP
Their Attorneys
271 Whitney Avenue
New Haven, CT 06511
Tel. (203) 772-2600
Fax (203) 772-4008
Email: ckone@bswlaw.com
Email: rmoffett@bswlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2007, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].

_____*s/Carolyn W. Kone*_____
Carolyn W. Kone